UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH STRYCHASZ, SANDRA | : | CIVIL ACTION |
| STRYCHASZ and MIDLAND FIRE | : | NO.: 3:01CV2063 (PCD) |
| PROTECTION COMPANY | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| VS. | : | |
| | : | |
| MARON CONSTRUCTION, CO., INC. | : | |
| and RONALD DEFRANCESCO | : | |
| | : | |
| Defendants | : | DECEMBER 12, 2003 |

## SECTION C TRIAL PREPARATION ORDER COMPLIANCE

I.  The attorneys that will try this case are as follows:

> Edward J. Gavin, Esq.
> Richard T. Meehan, Jr., Esq.
> Michael T. Meehan, Esq.
> Meehan, Meehan & Gavin
> 76 Lyon Terrace, Bridgeport, Connecticut  06604
> (203) 333-1888

II.  This case is a jury case.

III.  The plaintiff would estimate that the evidence in this case would last approximately two to three weeks.

IV.  The parties have not agreed to have the case tried by United States Magistrate Judge Joan G. Margolis, and furthermore, have not agreed to have United States Magistrate Judge Joan G. Margolis enter final judgment.

V.  The plaintiff is scheduled to complete the deposition of the defendants' expert.  In addition, the named defendants have recently withdrawn their third party complaints against the United States Government, and the architects and engineers involved in this matter. Plaintiff's counsel anticipated the disclosure of the third party experts.  The plaintiff reserves

the right to request permission of the Court to disclose its own expert subsequent to the completion of the deposition of the defendants' expert.

VI.  Settlement – The parties definitely would benefit from an assisted settlement conference.  The parties have appeared before United States Magistrate Judge William I. Garfinkel on at least two occasions jointly and on other occasions separately.  Undersigned counsel has contacted Judge Garfinkel's scheduling assistant, Gloria, on Tuesday, December 9, 2003 and she is in the process of scheduling another joint settlement conference.  The underlying dispute that has been an obstacle in resolving this case has been a coverage issue between the defendants' insurance carriers.  The two competing carriers have been at odds in regard to which carrier is primary for coverage purposes.  The carriers have instituted a declaratory judgment action in the State of Rhode Island which has greatly complicated settlement discussions.  Both counsel for the plaintiff and the defendants have attempted to resolve the matter but the coverage issue has been the obstacle.  It appears that the carriers have come to an agreement to resolve the underlying case first and litigate the coverage issue second, so the matter appears ripe for settlement.

VII.  **Position of the Intervening Plaintiff, Midland Fire Protection Company**:

THE INTERVENING PLAINTIFF, MIDLAND FIRE PROTECTION COMPANY, HEREBY ADOPTS THE PLAINTIFF'S POSITION AND EVIDENCE AS SET FORTH IN SECTION C. THE INTERVENING PLAINTIFF WILL HAVE NO SUBSTANTIVE INDEPENDENT EVIDENCE TO OFFER IN ADDITION TO THAT OFFERED BY THE PLAINTIFF EXCEPT FOR WHATEVER ADDITIONAL EVIDENCE MAY BE REQUESTED BY THE PARTIES AND/OR THE COURT IN ORDER TO FURTHER SUBSTANTIATE THE INTERVENING PLAINTIFF'S STATUTORY LIEN.

IT IS THE INTERVENING PLAINTIFF'S UNDERSTANDING THAT BOTH THE PLAINTIFF AND THE DEFENDANT IN THIS CASE ARE SATISFIED THAT ALL NECESSARY INFORMATION SUBSTANTIATING THE INTERVENING PLAINTIFF'S LIEN HAS BEEN PRODUCED.  IF ADDITIONAL INFORMATION IS SUBSEQUENTLY REQUESTED OR REQUIRED, THE INTERVENING PLAINTIFF RESPECTFULLY REQUESTS APPROPRIATE TIME TO PRODUCE WHATEVER ADDITIONAL INFORMATION AS MAY BE REQUESTED OR REQUIRED.


**SECTION C COMPLIANCE WITH OPPOSING PARTY'S SUBMISSION**

1.    **Plaintiffs' Response to Proposed Stipulations**:

**DEFENDANTS' §B1 PROPOSED STIPULATED FACTS**:

**§B1-1**:  At the time he fell, Joseph Strychasz was an employee acting within the scope of his employment for Midland Fire Protection Company.

**PLAINTIFFS' RESPONSE**:

     **§C1-1:  Agreed**.

**§B1-2**:  Midland Fire Protection Company was an independent subcontractor installing a fire sprinkler system at Roland Hall.

**PLAINTIFFS' RESPONSE**:

     **§C1-2:  Agreed**.

**§B1-3**:  The defendants did not have actual knowledge of the inadequacy of the transite panel to support the weight of a worker and his equipment before plaintiff fell through it.

**PLAINTIFFS' RESPONSE**:

     **§C1-3:  Disagree** – The defendants may have had actual knowledge of the inadequacy of the transite panel to hold the weight of a worker.  At the very least, the defendants were aware of the architectural and engineering drawings for the Roland Hall renovation project

prepared by Einhorn, Yaffee, Prescott Engineers. The drawings specifically contemplated replacing the transite panel with permanent air vents.

Ronald DeFrancesco, as Superintendent and Safety Officer of the defendant, Maron, knew that the ventilation holes in the floor of the cell area had been replaced by the transite roofing boards, which were incapable of holding an adult person's weight. As Safety Officer, he failed to secure the coverings for the outside openings, when he knew that the plaintiff, and other subcontractor employees, would be working in the cell area. As Safety Officer, he failed to provide for a safe entrance and exit to the cell area from the gymnasium floor, when he knew that Midland's four employees were required to work in the cell area in the vicinity of these unsafe coverings on the ventilation holes. As Safety Officer, Mr. DeFrancesco knew that during the demolition that Midland employees, and other subcontractor employees, used these openings in the gymnasium floor to enter and exit the cell area, requiring them to stand on transite coverings. As Safety Officer, he failed to make periodic safety inspections of the job-site everyday as required under the contract and safety plan submitted by Maron. As Safety Officer, Mr. DeFrancesco failed, during his inspections of work areas, to observe areas of all subcontractors and take appropriate action to correct the unsafe conditions, as soon as possible, pursuant to the agreement with U.S.C.G. As Safety Officer, Mr. DeFrancesco failed to make regular and frequent inspections over the entire site at least daily; and, at least once each week, jointly with trade contractor representatives, as required under the agreement with the U.S.C.G. As Safety Officer, he failed to acquaint the plaintiff with the possibility of a fall and the hazards that could be expected in the cell area. As Safety Officer, he failed to provide

sufficient ladders for entrance and exit into the cell area with safe coverings, when he knew, or in the exercise of reasonable care, should have known that the employees were utilizing the various openings to the cell area for purposes of their work.

The plaintiff will rely on the following evidence as previously listed in Section A2 of the Plaintiff's Trial Preparation Order.

Specification of Supporting Evidence – The plaintiffs will rely on the following evidence (see attached Exhibit Numbers) to support this proposed finding of fact:

**Depositions**:

1. 09/20/02 – Ronald DeFrancesco
2. 09/20/02 – Thomas Maron
3. 10/07/02 – Gary Crakes, Ph.D.
4. 10/22/02 – Peter Gravel
5. 10/23/02 – James Gerou
6. 10/29/02 – Dr. Trafton
7. 10/30/02 – Dr. DiGiovanni
8. 11/06/02 – David Munroe
9. 11/07/02 – Sandra Strychasz
10. 11/07/02 – Joseph Strychasz
11. 11/08/02 – Lee Archibald
12. 11/13/02 – Wanda Coresini
13. 11/13/02 – Walter Stampfl
14. 11/20/02 – Dr. Jonathan Bolton
15. 11/25/02 – Dr. DiGiovanni Continued Depo
16. 11/25/02 – Dr. Trafton Continued Depo
17. 07/17/03 – Dean Koutsoubis
18. 08/13/03 – Ronald DeFrancesco Continued Depo
19. 08/13/03 – Thomas Maron Continued Depo

**Architectural and Engineering Diagrams**:

20. Two volume set of architectural and engineering drawings for the Roland Hall renovation project prepared by Einhorn, Yaffee Prescott Engineers.

21.  Midland Fire Protection as built drawings, 8 sheets.

22.  Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 1 of 2**).

23.  Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 2 of 2**).

**Contracts**:

24.  Contract between the U.S. Coast Guard and Einhorn, Yaffee, Prescott dated April 29, 1996.

25.  Solicitation Offer and Award to Maron Construction Company August 7, 1996.

26.  Subcontract Agreement between Maron Construction and Midland Fire Protection executed November 4, 1996.

27.  Amendment of Solicitation/Modification of Contract dated April 14, 1997 (asbestos abatement).

28.  Contract Modification executed by Maron Construction dated June 17, 1997 with attachments, 10 pages.

**Roland Hall Renovation Contracts**:

29.  Contract Amendment/Modification dated August 7, 1996.

30.  Three large blueprints of Roland Hall Renovations.

31.  List of Subcontractors for Roland Hall renovation project.

32.  Two large blueprints of Einhorn, Yaffee, Prescott Architectural, pages 30 and 31.

**Photographs/Video**:

33.  90 photographs of various locations inside and outside of the Roland Hall Gymnasium taken by Dean Koutsoubis on November 15, 2002 – currently in possession of the defendants.

34.  20 pages of Roland Hall accident site photographs.

**Investigatory Reports**:

101.  October 11, 1996 Safety Plan from David Maron to the Coast Guard Contracting Division designating Ronald DeFrancesco as Safety Officer.

102.  May 12, 1997 2-page letter from Thomas Maron to Midland Fire Protection.

103.  May 12, 1997 Daily Construction Report executed by Ronald DeFrancesco.

104.  Investigatory report of Chief Warrant Officer Eric Stemmler dated May 28, 1997 with attachments, 15 pages.

105.  Job Site Weekly Safety Meetings reports.

**State Court Depositions**:

108.  Deposition of Steven Shotteck – October 22, 1999
109.  Deposition of Eric Stemmler – December 13, 1999
110.  Deposition of Ronald Foster – April 4, 2000

**Request for Admissions**:

111.  Defendants, Maron Construction, Inc. & Ronald DeFrancesco's response to Request for Admissions dated January 6, 2003.

**List of Proposed Witnesses to Support Proposed Finding of Fact**:

1.      Thomas J. Maron, President
        Maron Construction Company, Inc.
        180 Mancini Drive, Providence, RI  02909
        Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

2.      David Maron
        Maron Construction Company, Inc.
        180 Mancini Drive, Providence, RI  02909
        Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

3.      Jane M. Mardo, Vice President

Maron Construction Company, Inc.
180 Mancini Drive, Providence, RI  02909
Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

4.    David B. Munroe, Midland Fire Protection Company
6 Grandview Street, Coventry, RI  02810
Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

5.    Donna Munroe
6 Grandview Street, Coventry, RI  02810
Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

6.    Jack DeMers, Midland Fire Protection
6 Grandview Street, Coventry, RI  02810
Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

7.    Robert Fontaine, Midland Fire Protection
6 Grandview Street, Coventry, RI  02810
Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

8.    Ronald DeFrancesco, Superintendent
Maron Construction Company
180 Mancini Drive, Providence, RI  02909
Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

9.    C.W.O. Eric Stemmler, U.S. Coast Guard Academy
New London, Connecticut
Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

10.    Walter Stampfl, U.S. Coast Guard Academy
New London, Connecticut
Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

11.    Lee Archibald, U.S. Coast Guard Academy
        New London, Connecticut
        Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland
Hall rehabilitation project.

12.    Greg Carabine, Assistant Facilities Engineer,
        Coast Guard Academy, New London, Connecticut
        Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland
Hall rehabilitation project.

13.    Ronald Foster
        52 Maple Street, Attleboro Falls, MA
        Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

14.    Steven Shotteck
        61 Pine Street, Seekonk, MA  02771
        Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

15.    Randall Draughn
        He has been assigned to work for Midland on a project in North Carolina.  He lives
        at 5A Severna Court, Durham, NC  27704
        Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

16.    Joseph Strychasz
        165 Memorial Drive, Pawtucket, RI  02861
        Plaintiff.

17.    Sandra Colicci
        2218 Putnam Pike, Chepachet, RI
        Plaintiff.

18.    Joshua Strychasz
        2218 Putnam Pike, Chepachet, RI
        Son of plaintiffs.

19.    Alison L. Wood, Investigator
        Williams Investigative Services
        Conducted initial investigation of fall at Roland Hall.

20.     Ms. Victoria Worrell, Contract Specialist
        Facilities Design & Construction Center Atlantic
        5505 Robin Hood Road, Norfolk, VA  23513-2431
        Brief Description of Testimony – Coast Guard employee responsible for the issuance of
the contract between the United States Coast Guard and Maron Construction for the
renovation of Roland Hall.  Responsible for contract compliance.

21.     Mr. Wayne C. Webster, Project Manager for Roland Hall renovation
        Facilities Design & Construction Center Atlantic
        Norfolk, Virginia
        Brief Description of Testimony – Coast Guard employee responsible for the issuance of
the contract between the United States Coast Guard and Maron Construction for the
renovation of Roland Hall.  Responsible for contract compliance.

22.     Wanda Coresini, U.S. Coast Guard Academy
        Norfolk, Virginia
        Brief Description of Testimony – Coast Guard employee responsible for the issuance of
the contract between the United States Coast Guard and Maron Construction for the
renovation of Roland Hall.  Responsible for contract compliance.

23.     James Gerou
        Einhorn, Yaffee, Prescott Architecture & Engineering
        P.O. Box 617, Albany, NY  12201
        Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the
architecture and engineering of the Roland Hall renovation project.

24.     Peter Gravel
        45 Hyvue Drive, Newburgh, NY  12550
        Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the
architecture and engineering of the Roland Hall renovation project.

2.      **Plaintiff's Response to Proposed Findings of Fact**:

**DEFENDANTS' §B2 PROPOSED FINDINGS OF FACT**

**§B2-1**:  The defendants did not have actual knowledge of the inadequacy of the transite panel to support the weight of  a worker and his equipment before plaintiff fell through it.

**SUPPORTING WITNESSES, DOCUMENTS, PLEADINGS & TANGIBLE EVIDENCE**:

At this juncture, it is anticipated that this proposed finding will be premised upon:

DEFENDANTS' EXHIBITS (identified in §B4, Proposed Exhibits):

A, B, C, D, E, F, G and H.

PLAINTIFFS' EXHIBITS (identified in §B4, Proposed Exhibits):

The defendants hereby incorporate herein all of the plaintiffs' proposed exhibits which were identified in plaintiffs' §A2 Proposed Finding of Facts as the premise for each of the fifteen liability facts proposed by plaintiffs.  Those exhibits are as follows: 1-34, 101-105, 108-111.

DEFENDANTS' WITNESSES (identified in §B5, Proposed Witnesses):

Gregory Carabine.

Commander Matthew Ruckert.

Personnel and Representatives of the United States Coast Guard Academy Public Works Department.

Personnel and representatives of the United States Coast Guard Academy Athletic Department and of the United States Coast Guard Academy personnel and cadets.

Dean Koutsoubis, P.E.

PLAINTIFFS' WITNESSES (identified in §B5, Proposed Witnesses):

The defendants hereby incorporate all of the plaintiffs' proposed witnesses which were identified in plaintiffs' §A5 Proposed Witnesses as the premise for each of the fifteen liability facts proposed by plaintiffs.  Those witnesses are as follows:

Thomas J. Maron, President, Maron Construction Company, Inc.

David Maron, Maron Construction Company, Inc.

Jane M. Mardo, Vice-President, Maron Construction Company, Inc.

David B. Munroe, Midland Fire Protection Company.

Donna Munroe, Midland Fire Protection Company.

Jack DeMers, Midland Fire Protection Company.

Robert Fontaine, Midland Fire Protection Company.

Ronald DeFrancesco, Maron Construction Company, Inc.

C.W.O. Eric Stemmler, U.S. Coast Guard Academy.

Walter Stampfl, U.S. Coast Guard Academy.

Leigh Archibold, U.S. Coast Guard Academy.

Greg Carabine, U.S. Coast Guard Academy.

Ronald Foster, employee of Midland Fire Protection Company.

Steven Shotteck, employee of Midland Fire Protection Company.

Randall Draughn, employee of Midland Fire Protection Company.

Joseph Strychasz, plaintiff.

Sandra Collici, plaintiff.

Joshua Strychasz, son of plaintiffs.

Allison L. Wood, investigator.

Victoria Worrell, Contract Specialist, Facilities Design and Construction Center, Atlantic Center.

Wayne C. Webster, Project Manager for Roland Hall renovation facilities design and construction, Atlantic Center.

Wanda Coresini, U.S. Coast Guard Academy.

James Gerou, Einhorn Yaffee Prescott Architecture and Engineering.

Peter Gravel, Einhorn Yaffee Prescott Architecture and Engineering.

**PLAINTIFFS' RESPONSE**:

**§C2-1:  Disagree** – The defendants may have had actual knowledge of the inadequacy of the transite panel to hold the weight of a worker.  At the very least, the defendants were aware of the architectural and engineering drawings for the Roland Hall renovation project prepared by Einhorn, Yaffee, Prescott Engineers.  The drawings specifically contemplated replacing the transite panel with permanent air vents.

Ronald DeFrancesco, as Superintendent and Safety Officer of the defendant, Maron, knew that the ventilation holes in the floor of the cell area had been replaced by the transite roofing boards, which were incapable of holding an adult person's weight.  As Safety Officer, he failed to secure the coverings for the outside openings, when he knew that the plaintiff, and other subcontractor employees, would be working in the cell area.  As Safety Officer, he failed to provide for a safe entrance and exit to the cell area from the gymnasium floor, when he knew that Midland's four employees were required to work in the cell area in the vicinity of

these unsafe coverings on the ventilation holes.  As Safety Officer, Mr. DeFrancesco knew that during the demolition that Midland employees, and other subcontractor employees, used these openings in the gymnasium floor to enter and exit the cell area, requiring them to stand on transite coverings.  As Safety Officer, he failed to make periodic safety inspections of the job-site everyday as required under the contract and safety plan submitted by Maron.  As Safety Officer, Mr. DeFrancesco failed, during his inspections of work areas, to observe areas of all subcontractors and take appropriate action to correct the unsafe conditions, as soon as possible, pursuant to the agreement with U.S.C.G.  As Safety Officer, Mr. DeFrancesco failed to make regular and frequent inspections over the entire site at least daily; and, at least once each week, jointly with trade contractor representatives, as required under the agreement with the U.S.C.G.  As Safety Officer, he failed to acquaint the plaintiff with the possibility of a fall and the hazards that could be expected in the cell area.  As Safety Officer, he failed to provide sufficient ladders for entrance and exit into the cell area with safe coverings, when he knew, or in the exercise of reasonable care, should have known that the employees were utilizing the various openings to the cell area for purposes of their work.

The plaintiff will rely on the following evidence as previously listed in Section A2 of the Plaintiff's Trial Preparation Order.

Specification of Supporting Evidence – The plaintiffs will rely on the following evidence (see attached Exhibit Numbers) to support this proposed finding of fact:

**Depositions**:

1. 09/20/02 – Ronald DeFrancesco

2.  09/20/02 – Thomas Maron
3.  10/07/02 – Gary Crakes, Ph.D.
4.  10/22/02 – Peter Gravel
5.  10/23/02 – James Gerou
6.  10/29/02 – Dr. Trafton
7.  10/30/02 – Dr. DiGiovanni
8.  11/06/02 – David Munroe
9.  11/07/02 – Sandra Strychasz
10.  11/07/02 – Joseph Strychasz
11.  11/08/02 – Lee Archibald
12.  11/13/02 – Wanda Coresini
13.  11/13/02 – Walter Stampfl
14.  11/20/02 – Dr. Jonathan Bolton
15.  11/25/02 – Dr. DiGiovanni Continued Depo
16.  11/25/02 – Dr. Trafton Continued Depo
17.  07/17/03 – Dean Koutsoubis
18.  08/13/03 – Ronald DeFrancesco Continued Depo
19.  08/13/03 – Thomas Maron Continued Depo

## Architectural and Engineering Diagrams:

20.  Two volume set of architectural and engineering drawings for the Roland Hall renovation project prepared by Einhorn, Yaffee Prescott Engineers.

21.  Midland Fire Protection as built drawings, 8 sheets.

22.  Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 1 of 2**).

23.  Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 2 of 2**).

## Contracts:

24.  Contract between the U.S. Coast Guard and Einhorn, Yaffee, Prescott dated April 29, 1996.

25.  Solicitation Offer and Award to Maron Construction Company August 7, 1996.

26.  Subcontract Agreement between Maron Construction and Midland Fire Protection executed November 4, 1996.

27.  Amendment of Solicitation/Modification of Contract dated April 14, 1997 (asbestos abatement).

28.  Contract Modification executed by Maron Construction dated June 17, 1997 with attachments, 10 pages.

**Roland Hall Renovation Contracts**:

29.  Contract Amendment/Modification dated August 7, 1996.

30.  Three large blueprints of Roland Hall Renovations.

31.  List of Subcontractors for Roland Hall renovation project.

32.  Two large blueprints of Einhorn, Yaffee, Prescott Architectural, pages 30 and 31.

**Photographs/Video**:

33.  90 photographs of various locations inside and outside of the Roland Hall Gymnasium taken by Dean Koutsoubis on November 15, 2002 – currently in possession of the defendants.

34.  20 pages of Roland Hall accident site photographs.

**Investigatory Reports**:

101.  October 11, 1996 Safety Plan from David Maron to the Coast Guard Contracting Division designating Ronald DeFrancesco as Safety Officer.

102.  May 12, 1997 2-page letter from Thomas Maron to Midland Fire Protection.

103.  May 12, 1997 Daily Construction Report executed by Ronald DeFrancesco.

104.  Investigatory report of Chief Warrant Officer Eric Stemmler dated May 28, 1997 with attachments, 15 pages.

105.  Job Site Weekly Safety Meetings reports.

**State Court Depositions**:

108.  Deposition of Steven Shotteck – October 22, 1999
109.  Deposition of Eric Stemmler – December 13, 1999
110.  Deposition of Ronald Foster – April 4, 2000

**Request for Admissions**:

111.  Defendants, Maron Construction, Inc. & Ronald DeFrancesco's response to Request for Admissions dated January 6, 2003.

**List of Proposed Witnesses to Support Proposed Finding of Fact**:

1.     Thomas J. Maron, President
       Maron Construction Company, Inc.
       180 Mancini Drive, Providence, RI  02909
       Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

2.     David Maron
       Maron Construction Company, Inc.
       180 Mancini Drive, Providence, RI  02909
       Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

3.     Jane M. Mardo, Vice President
       Maron Construction Company, Inc.
       180 Mancini Drive, Providence, RI  02909
       Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

4.     David B. Munroe, Midland Fire Protection Company
       6 Grandview Street, Coventry, RI  02810
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

5.     Donna Munroe
       6 Grandview Street, Coventry, RI  02810
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

6.     Jack DeMers, Midland Fire Protection
       6 Grandview Street, Coventry, RI  02810

Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

7.     Robert Fontaine, Midland Fire Protection
       6 Grandview Street, Coventry, RI  02810
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

8.     Ronald DeFrancesco, Superintendent
       Maron Construction Company
       180 Mancini Drive, Providence, RI  02909
       Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

9.     C.W.O. Eric Stemmler, U.S. Coast Guard Academy
       New London, Connecticut
       Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

10.    Walter Stampfl, U.S. Coast Guard Academy
       New London, Connecticut
       Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

11.    Lee Archibald, U.S. Coast Guard Academy
       New London, Connecticut
       Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

12.    Greg Carabine, Assistant Facilities Engineer,
       Coast Guard Academy, New London, Connecticut
       Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

13.    Ronald Foster
       52 Maple Street, Attleboro Falls, MA
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

14.    Steven Shotteck
       61 Pine Street, Seekonk, MA  02771

Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

15.    Randall Draughn
He has been assigned to work for Midland on a project in North Carolina.  He lives at 5A Severna Court, Durham, NC  27704
Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

16.    Joseph Strychasz
165 Memorial Drive, Pawtucket, RI  02861
Plaintiff.

17.    Sandra Colicci
2218 Putnam Pike, Chepachet, RI
Plaintiff.

18.    Joshua Strychasz
2218 Putnam Pike, Chepachet, RI
Son of plaintiffs.

19.    Alison L. Wood, Investigator
Williams Investigative Services
Conducted initial investigation of fall at Roland Hall.

20.    Ms. Victoria Worrell, Contract Specialist
Facilities Design & Construction Center Atlantic
5505 Robin Hood Road, Norfolk, VA  23513-2431
Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

21.    Mr. Wayne C. Webster, Project Manager for Roland Hall renovation
Facilities Design & Construction Center Atlantic
Norfolk, Virginia
Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

22.    Wanda Coresini, U.S. Coast Guard Academy
Norfolk, Virginia

Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

23.    James Gerou
       Einhorn, Yaffee, Prescott Architecture & Engineering
       P.O. Box 617, Albany, NY  12201
       Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the architecture and engineering of the Roland Hall renovation project.

24.    Peter Gravel
       45 Hyvue Drive, Newburgh, NY  12550
       Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the architecture and engineering of the Roland Hall renovation project.


**§B2-2**:  Any and all injuries sustained by the plaintiff, Joseph Strychasz, were caused in whole or in part by the negligence and carelessness of the plaintiff, Joseph Strychasz, in that he failed to adequately investigate whether the panel placed over the vent was sufficient to withstand his weight, the weight of the chair that he was standing on and the weight of equipment and tools being carried before stepping on it and pressing on it.

**SUPPORTING WITNESSES, DOCUMENTS, PLEADINGS & TANGIBLE EVIDENCE**:

At this juncture, it is anticipated that this proposed finding will be premised upon:

DEFENDANTS' EXHIBITS (identified in §B4, Proposed Exhibits):

A, B, C, D, E, F, G and H.

PLAINTIFFS' EXHIBITS (identified in §B4, Proposed Exhibits):

The defendants hereby incorporate herein all of the plaintiffs' proposed exhibits which were identified in plaintiffs' §A2 Proposed Finding of Facts as the premise for each of the

fifteen liability facts proposed by plaintiffs. Those exhibits are as follows: 1-34, 101-105, 108-111.

DEFENDANTS' WITNESSES (identified in §B5, Proposed Witnesses):

Gregory Carabine.

Commander Matthew Ruckert.

Personnel and Representatives of the United States Coast Guard Academy Public Works Department.

Personnel and representatives of the United States Coast Guard Academy Athletic Department and of the United States Coast Guard Academy personnel and cadets.

Dean Koutsoubis, P.E.

PLAINTIFFS' WITNESSES (identified in §B5, Proposed Witnesses):

The defendants hereby incorporate all of the plaintiffs' proposed witnesses which were identified in plaintiffs' §A5 Proposed Witnesses as the premise for each of the fifteen liability facts proposed by plaintiffs. Those witnesses are as follows:

Thomas J. Maron, President, Maron Construction Company, Inc.

David Maron, Maron Construction Company, Inc.

Jane M. Mardo, Vice-President, Maron Construction Company, Inc.

David B. Munroe, Midland Fire Protection Company.

Donna Munroe, Midland Fire Protection Company.

Jack DeMers, Midland Fire Protection Company.

Robert Fontaine, Midland Fire Protection Company.

Ronald DeFrancesco, Maron Construction Company, Inc.

C.W.O. Eric Stemmler, U.S. Coast Guard Academy.

Walter Stampfl, U.S. Coast Guard Academy.

Leigh Archibold, U.S. Coast Guard Academy.

Greg Carabine, U.S. Coast Guard Academy.

Ronald Foster, employee of Midland Fire Protection Company.

Steven Shotteck, employee of Midland Fire Protection Company.

Randall Draughn, employee of Midland Fire Protection Company.

Joseph Strychasz, plaintiff.

Sandra Collici, plaintiff.

Joshua Strychasz, son of plaintiffs.

Allison L. Wood, investigator.

Victoria Worrell, Contract Specialist, Facilities Design and Construction Center, Atlantic Center.

Wayne C. Webster, Project Manager for Roland Hall renovation facilities design and construction, Atlantic Center.

Wanda Coresini, U.S. Coast Guard Academy.

James Gerou, Einhorn Yaffee Prescott Architecture and Engineering.

Peter Gravel, Einhorn Yaffee Prescott Architecture and Engineering.

**PLAINTIFFS' RESPONSE**:

**§C2-2**:  **Disagree** – The injuries sustained by Joseph Strychasz were not caused by the negligence or carelessness of the plaintiff.  It was the negligence of the defendants in directing Mr. Strychasz to work in the specified cell area when they knew or should have known that the transite panel on the floor of the cell area was not weight bearing and it was reasonably foreseeable that the plaintiff or others similarly situated would be caused to walk over the transite panel.  The defendant, Ronald DeFrancesco, failed to inspect the work area as he as required to ensure a safe work place environment for the various contractors.

Ronald DeFrancesco, as Superintendent and Safety Officer of the defendant, Maron, knew that the ventilation holes in the floor of the cell area had been replaced by the transite roofing boards, which were incapable of holding an adult person's weight.  As Safety Officer, he failed to secure the coverings for the outside openings, when he knew that the plaintiff, and other subcontractor employees, would be working in the cell area.  As Safety Officer, he failed to provide for a safe entrance and exit to the cell area from the gymnasium floor, when he knew that Midland's four employees were required to work in the cell area in the vicinity of these unsafe coverings on the ventilation holes.  As Safety Officer, Mr. DeFrancesco knew that during the demolition that Midland employees, and other subcontractor employees, used these openings in the gymnasium floor to enter and exit the cell area, requiring them to stand on transite coverings.  As Safety Officer, he failed to make periodic safety inspections of the job-site everyday as required under the contract and safety plan submitted by Maron.  As Safety Officer, Mr. DeFrancesco failed, during his inspections of work areas, to observe areas of all subcontractors and take appropriate action to correct the unsafe conditions, as soon as

possible, pursuant to the agreement with U.S.C.G.  As Safety Officer, Mr. DeFrancesco failed

to make regular and frequent inspections over the entire site at least daily; and, at least once

each week, jointly with trade contractor representatives, as required under the agreement with

the U.S.C.G.  As Safety Officer, he failed to acquaint the plaintiff with the possibility of a fall

and the hazards that could be expected in the cell area.  As Safety Officer, he failed to provide

sufficient ladders for entrance and exit into the cell area with safe coverings, when he knew, or

in the exercise of reasonable care, should have known that the employees were utilizing the

various openings to the cell area for purposes of their work.

The plaintiff will rely on the following evidence as previously listed in Section A2 of the

Plaintiff's Trial Preparation Order.

Specification of Supporting Evidence – The plaintiffs will rely on the following evidence

(see attached Exhibit Numbers) to support this proposed finding of fact:

**Depositions**:

1. 09/20/02 – Ronald DeFrancesco
2. 09/20/02 – Thomas Maron
3. 10/07/02 – Gary Crakes, Ph.D.
4. 10/22/02 – Peter Gravel
5. 10/23/02 – James Gerou
6. 10/29/02 – Dr. Trafton
7. 10/30/02 – Dr. DiGiovanni
8. 11/06/02 – David Munroe
9. 11/07/02 – Sandra Strychasz
10. 11/07/02 – Joseph Strychasz
11. 11/08/02 – Lee Archibald
12. 11/13/02 – Wanda Coresini
13. 11/13/02 – Walter Stampfl
14. 11/20/02 – Dr. Jonathan Bolton
15. 11/25/02 – Dr. DiGiovanni Continued Depo

16. 11/25/02 – Dr. Trafton Continued Depo
17. 07/17/03 – Dean Koutsoubis
18. 08/13/03 – Ronald DeFrancesco Continued Depo
19. 08/13/03 – Thomas Maron Continued Depo

## Architectural and Engineering Diagrams:

20.  Two volume set of architectural and engineering drawings for the Roland Hall renovation project prepared by Einhorn, Yaffee Prescott Engineers.

21.  Midland Fire Protection as built drawings, 8 sheets.

22.  Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 1 of 2**).

23.  Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 2 of 2**).

## Contracts:

24.  Contract between the U.S. Coast Guard and Einhorn, Yaffee, Prescott dated April 29, 1996.

25.  Solicitation Offer and Award to Maron Construction Company August 7, 1996.

26.  Subcontract Agreement between Maron Construction and Midland Fire Protection executed November 4, 1996.

27.  Amendment of Solicitation/Modification of Contract dated April 14, 1997 (asbestos abatement).

28.  Contract Modification executed by Maron Construction dated June 17, 1997 with attachments, 10 pages.

## Roland Hall Renovation Contracts:

29.  Contract Amendment/Modification dated August 7, 1996.

30.  Three large blueprints of Roland Hall Renovations.

31.  List of Subcontractors for Roland Hall renovation project.

32.  Two large blueprints of Einhorn, Yaffee, Prescott Architectural, pages 30 and 31.

**Photographs/Video**:

33.  90 photographs of various locations inside and outside of the Roland Hall Gymnasium taken by Dean Koutsoubis on November 15, 2002 – currently in possession of the defendants.

34.  20 pages of Roland Hall accident site photographs.

**Investigatory Reports**:

101.  October 11, 1996 Safety Plan from David Maron to the Coast Guard Contracting Division designating Ronald DeFrancesco as Safety Officer.

102.  May 12, 1997 2-page letter from Thomas Maron to Midland Fire Protection.

103.  May 12, 1997 Daily Construction Report executed by Ronald DeFrancesco.

104.  Investigatory report of Chief Warrant Officer Eric Stemmler dated May 28, 1997 with attachments, 15 pages.

105.  Job Site Weekly Safety Meetings reports.

**State Court Depositions**:

108.  Deposition of Steven Shotteck – October 22, 1999
109.  Deposition of Eric Stemmler – December 13, 1999
110.  Deposition of Ronald Foster – April 4, 2000

**Request for Admissions**:

111.  Defendants, Maron Construction, Inc. & Ronald DeFrancesco's response to Request for Admissions dated January 6, 2003.

**List of Proposed Witnesses to Support Proposed Finding of Fact**:

1.      Thomas J. Maron, President
        Maron Construction Company, Inc.
        180 Mancini Drive, Providence, RI  02909

Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

2.     David Maron
       Maron Construction Company, Inc.
       180 Mancini Drive, Providence, RI  02909
       Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

3.     Jane M. Mardo, Vice President
       Maron Construction Company, Inc.
       180 Mancini Drive, Providence, RI  02909
       Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

4.     David B. Munroe, Midland Fire Protection Company
       6 Grandview Street, Coventry, RI  02810
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

5.     Donna Munroe
       6 Grandview Street, Coventry, RI  02810
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

6.     Jack DeMers, Midland Fire Protection
       6 Grandview Street, Coventry, RI  02810
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

7.     Robert Fontaine, Midland Fire Protection
       6 Grandview Street, Coventry, RI  02810
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

8.     Ronald DeFrancesco, Superintendent
       Maron Construction Company
       180 Mancini Drive, Providence, RI  02909
       Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

9.     C.W.O. Eric Stemmler, U.S. Coast Guard Academy
       New London, Connecticut
       Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland
Hall rehabilitation project.

10.    Walter Stampfl, U.S. Coast Guard Academy
       New London, Connecticut
       Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland
Hall rehabilitation project.

11.    Lee Archibald, U.S. Coast Guard Academy
       New London, Connecticut
       Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland
Hall rehabilitation project.

12.    Greg Carabine, Assistant Facilities Engineer,
       Coast Guard Academy, New London, Connecticut
       Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland
Hall rehabilitation project.

13.    Ronald Foster
       52 Maple Street, Attleboro Falls, MA
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

14.    Steven Shotteck
       61 Pine Street, Seekonk, MA  02771
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

15.    Randall Draughn
       He has been assigned to work for Midland on a project in North Carolina.  He lives at 5A
Severna Court, Durham, NC  27704
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

16.    Joseph Strychasz
       165 Memorial Drive, Pawtucket, RI  02861
       Plaintiff.

17.    Sandra Colicci

2218 Putnam Pike, Chepachet, RI
Plaintiff.

18.    Joshua Strychasz
2218 Putnam Pike, Chepachet, RI
Son of plaintiffs.

19.    Alison L. Wood, Investigator
Williams Investigative Services
Conducted initial investigation of fall at Roland Hall.

20.    Ms. Victoria Worrell, Contract Specialist
Facilities Design & Construction Center Atlantic
5505 Robin Hood Road, Norfolk, VA  23513-2431
Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

21.    Mr. Wayne C. Webster, Project Manager for Roland Hall renovation
Facilities Design & Construction Center Atlantic
Norfolk, Virginia
Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

22.    Wanda Coresini, U.S. Coast Guard Academy
Norfolk, Virginia
Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

23.    James Gerou
Einhorn, Yaffee, Prescott Architecture & Engineering
P.O. Box 617, Albany, NY  12201
Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the architecture and engineering of the Roland Hall renovation project.

24.    Peter Gravel
45 Hyvue Drive, Newburgh, NY  12550
Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the architecture and engineering of the Roland Hall renovation project.

**§B2-3**:  Any and all injuries sustained by the Joseph Strychasz were caused in whole or in part by the negligence and carelessness of the plaintiff, Joseph Strychasz, in that he failed to walk around the panel, vent and area in question, despite having had the opportunity and authority to do so.

**SUPPORTING WITNESSES, DOCUMENTS, PLEADINGS & TANGIBLE EVIDENCE**:

At this juncture, it is anticipated that this proposed finding will be premised upon:

DEFENDANTS' EXHIBITS (identified in §B4, Proposed Exhibits):

A, B, C, D, E, F, G and H.

PLAINTIFFS' EXHIBITS (identified in §B4, Proposed Exhibits):

The defendants hereby incorporate herein all of the plaintiffs' proposed exhibits which were identified in plaintiffs' §A2 Proposed Finding of Facts as the premise for each of the fifteen liability facts proposed by plaintiffs.  Those exhibits are as follows: 1-34, 101-105, 108-111.

DEFENDANTS' WITNESSES (identified in §B5, Proposed Witnesses):

Gregory Carabine.

Commander Matthew Ruckert.

Personnel and Representatives of the United States Coast Guard Academy Public Works Department.

Personnel and representatives of the United States Coast Guard Academy Athletic Department and of the United States Coast Guard Academy personnel and cadets.

Dean Koutsoubis, P.E.

PLAINTIFFS' WITNESSES (identified in §B5, Proposed Witnesses):

The defendants hereby incorporate all of the plaintiffs' proposed witnesses which were identified in plaintiffs' §A5 Proposed Witnesses as the premise for each of the fifteen liability facts proposed by plaintiffs. Those witnesses are as follows:

Thomas J. Maron, President, Maron Construction Company, Inc.

David Maron, Maron Construction Company, Inc.

Jane M. Mardo, Vice-President, Maron Construction Company, Inc.

David B. Munroe, Midland Fire Protection Company.

Donna Munroe, Midland Fire Protection Company.

Jack DeMers, Midland Fire Protection Company.

Robert Fontaine, Midland Fire Protection Company.

Ronald DeFrancesco, Maron Construction Company, Inc.

C.W.O. Eric Stemmler, U.S. Coast Guard Academy.

Walter Stampfl, U.S. Coast Guard Academy.

Leigh Archibold, U.S. Coast Guard Academy.

Greg Carabine, U.S. Coast Guard Academy.

Ronald Foster, employee of Midland Fire Protection Company.

Steven Shotteck, employee of Midland Fire Protection Company.

Randall Draughn, employee of Midland Fire Protection Company.

Joseph Strychasz, plaintiff.

Sandra Collici, plaintiff.

Joshua Strychasz, son of plaintiffs.

Allison L. Wood, investigator.

Victoria Worrell, Contract Specialist, Facilities Design and Construction Center, Atlantic Center.

Wayne C. Webster, Project Manager for Roland Hall renovation facilities design and construction, Atlantic Center.

Wanda Coresini, U.S. Coast Guard Academy.

James Gerou, Einhorn Yaffee Prescott Architecture and Engineering.

Peter Gravel, Einhorn Yaffee Prescott Architecture and Engineering.

**PLAINTIFFS' RESPONSE**:

**§C2-3:  Disagree** – The injuries sustained by Joseph Strychasz were not caused by the negligence or carelessness of the plaintiff.  It was the negligence of the defendants in directing Mr. Strychasz to work in the specified cell area when they knew or should have known that the transite panel on the floor of the cell area was not weight bearing and it was reasonably foreseeable that the plaintiff or others similarly situated would be caused to walk over the transite panel.  The defendant, Ronald DeFrancesco, failed to inspect the work area as he as required to ensure a safe work place environment for the various contractors.

Ronald DeFrancesco, as Superintendent and Safety Officer of the defendant, Maron, knew that the ventilation holes in the floor of the cell area had been replaced by the transite roofing boards, which were incapable of holding an adult person's weight.  As Safety Officer,

he failed to secure the coverings for the outside openings, when he knew that the plaintiff, and other subcontractor employees, would be working in the cell area. As Safety Officer, he failed to provide for a safe entrance and exit to the cell area from the gymnasium floor, when he knew that Midland's four employees were required to work in the cell area in the vicinity of these unsafe coverings on the ventilation holes. As Safety Officer, Mr. DeFrancesco knew that during the demolition that Midland employees, and other subcontractor employees, used these openings in the gymnasium floor to enter and exit the cell area, requiring them to stand on transite coverings. As Safety Officer, he failed to make periodic safety inspections of the job-site everyday as required under the contract and safety plan submitted by Maron. As Safety Officer, Mr. DeFrancesco failed, during his inspections of work areas, to observe areas of all subcontractors and take appropriate action to correct the unsafe conditions, as soon as possible, pursuant to the agreement with U.S.C.G. As Safety Officer, Mr. DeFrancesco failed to make regular and frequent inspections over the entire site at least daily; and, at least once each week, jointly with trade contractor representatives, as required under the agreement with the U.S.C.G. As Safety Officer, he failed to acquaint the plaintiff with the possibility of a fall and the hazards that could be expected in the cell area. As Safety Officer, he failed to provide sufficient ladders for entrance and exit into the cell area with safe coverings, when he knew, or in the exercise of reasonable care, should have known that the employees were utilizing the various openings to the cell area for purposes of their work.

The plaintiff will rely on the following evidence as previously listed in Section A2 of the Plaintiff's Trial Preparation Order.

Specification of Supporting Evidence – The plaintiffs will rely on the following evidence (see attached Exhibit Numbers) to support this proposed finding of fact:

**Depositions**:

1. 09/20/02 – Ronald DeFrancesco
2. 09/20/02 – Thomas Maron
3. 10/07/02 – Gary Crakes, Ph.D.
4. 10/22/02 – Peter Gravel
5. 10/23/02 – James Gerou
6. 10/29/02 – Dr. Trafton
7. 10/30/02 – Dr. DiGiovanni
8. 11/06/02 – David Munroe
9. 11/07/02 – Sandra Strychasz
10. 11/07/02 – Joseph Strychasz
11. 11/08/02 – Lee Archibald
12. 11/13/02 – Wanda Coresini
13. 11/13/02 – Walter Stampfl
14. 11/20/02 – Dr. Jonathan Bolton
15. 11/25/02 – Dr. DiGiovanni Continued Depo
16. 11/25/02 – Dr. Trafton Continued Depo
17. 07/17/03 – Dean Koutsoubis
18. 08/13/03 – Ronald DeFrancesco Continued Depo
19. 08/13/03 – Thomas Maron Continued Depo

**Architectural and Engineering Diagrams**:

20. Two volume set of architectural and engineering drawings for the Roland Hall renovation project prepared by Einhorn, Yaffee Prescott Engineers.

21. Midland Fire Protection as built drawings, 8 sheets.

22. Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 1 of 2**).

23. Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 2 of 2**).

**Contracts**:

24.  Contract between the U.S. Coast Guard and Einhorn, Yaffee, Prescott dated April 29, 1996.

25.  Solicitation Offer and Award to Maron Construction Company August 7, 1996.

26.  Subcontract Agreement between Maron Construction and Midland Fire Protection executed November 4, 1996.

27.  Amendment of Solicitation/Modification of Contract dated April 14, 1997 (asbestos abatement).

28.  Contract Modification executed by Maron Construction dated June 17, 1997 with attachments, 10 pages.

**Roland Hall Renovation Contracts**:

29.  Contract Amendment/Modification dated August 7, 1996.

30.  Three large blueprints of Roland Hall Renovations.

31.  List of Subcontractors for Roland Hall renovation project.

32.  Two large blueprints of Einhorn, Yaffee, Prescott Architectural, pages 30 and 31.

**Photographs/Video**:

33.  90 photographs of various locations inside and outside of the Roland Hall Gymnasium taken by Dean Koutsoubis on November 15, 2002 – currently in possession of the defendants.

34.  20 pages of Roland Hall accident site photographs.

**Investigatory Reports**:

101.  October 11, 1996 Safety Plan from David Maron to the Coast Guard Contracting Division designating Ronald DeFrancesco as Safety Officer.

102.  May 12, 1997 2-page letter from Thomas Maron to Midland Fire Protection.

103.  May 12, 1997 Daily Construction Report executed by Ronald DeFrancesco.

104.  Investigatory report of Chief Warrant Officer Eric Stemmler dated May 28, 1997 with attachments, 15 pages.

105.  Job Site Weekly Safety Meetings reports.

**State Court Depositions**:

108.  Deposition of Steven Shotteck – October 22, 1999
109.  Deposition of Eric Stemmler – December 13, 1999
110.  Deposition of Ronald Foster – April 4, 2000

**Request for Admissions**:

111.  Defendants, Maron Construction, Inc. & Ronald DeFrancesco's response to Request for Admissions dated January 6, 2003.

**List of Proposed Witnesses to Support Proposed Finding of Fact**:

1.    Thomas J. Maron, President
      Maron Construction Company, Inc.
      180 Mancini Drive, Providence, RI  02909
      Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

2.    David Maron
      Maron Construction Company, Inc.
      180 Mancini Drive, Providence, RI  02909
      Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

3.    Jane M. Mardo, Vice President
      Maron Construction Company, Inc.
      180 Mancini Drive, Providence, RI  02909
      Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

4.    David B. Munroe, Midland Fire Protection Company
      6 Grandview Street, Coventry, RI  02810
      Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

5.      Donna Munroe
        6 Grandview Street, Coventry, RI  02810
        Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

6.      Jack DeMers, Midland Fire Protection
        6 Grandview Street, Coventry, RI  02810
        Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

7.      Robert Fontaine, Midland Fire Protection
        6 Grandview Street, Coventry, RI  02810
        Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

8.      Ronald DeFrancesco, Superintendent
        Maron Construction Company
        180 Mancini Drive, Providence, RI  02909
        Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

9.      C.W.O. Eric Stemmler, U.S. Coast Guard Academy
        New London, Connecticut
        Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

10.     Walter Stampfl, U.S. Coast Guard Academy
        New London, Connecticut
        Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

11.     Lee Archibald, U.S. Coast Guard Academy
        New London, Connecticut
        Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

12.     Greg Carabine, Assistant Facilities Engineer,
        Coast Guard Academy, New London, Connecticut
        Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

13.   Ronald Foster
      52 Maple Street, Attleboro Falls, MA
      Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

14.   Steven Shotteck
      61 Pine Street, Seekonk, MA  02771
      Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

15.   Randall Draughn
      He has been assigned to work for Midland on a project in North Carolina.  He lives
      at 5A Severna Court, Durham, NC  27704
      Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

16.   Joseph Strychasz
      165 Memorial Drive, Pawtucket, RI  02861
      Plaintiff.

17.   Sandra Colicci
      2218 Putnam Pike, Chepachet, RI
      Plaintiff.

18.   Joshua Strychasz
      2218 Putnam Pike, Chepachet, RI
      Son of plaintiffs.

19.   Alison L. Wood, Investigator
      Williams Investigative Services
      Conducted initial investigation of fall at Roland Hall.

20.   Ms. Victoria Worrell, Contract Specialist
      Facilities Design & Construction Center Atlantic
      5505 Robin Hood Road, Norfolk, VA  23513-2431
      Brief Description of Testimony – Coast Guard employee responsible for the issuance of
the contract between the United States Coast Guard and Maron Construction for the
renovation of Roland Hall.  Responsible for contract compliance.

21.   Mr. Wayne C. Webster, Project Manager for Roland Hall renovation
      Facilities Design & Construction Center Atlantic

Norfolk, Virginia
Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

22.    Wanda Coresini, U.S. Coast Guard Academy
Norfolk, Virginia
Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

23.    James Gerou
Einhorn, Yaffee, Prescott Architecture & Engineering
P.O. Box 617, Albany, NY  12201
Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the architecture and engineering of the Roland Hall renovation project.

24.    Peter Gravel
45 Hyvue Drive, Newburgh, NY  12550
Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the architecture and engineering of the Roland Hall renovation project.


**§B2-4**:  Any and all injuries sustained by the Joseph Strychasz were caused in whole or in part by the negligence and carelessness of the plaintiff, Joseph Strychasz, in that he was attempting to remove tools and equipment through a vent by use of a chair when access and entry points were specifically designated to him and his employer and an area away from the vent and panel of which he now complains.

**SUPPORTING WITNESSES, DOCUMENTS, PLEADINGS & TANGIBLE EVIDENCE**:

At this juncture, it is anticipated that this proposed finding will be premised upon:

DEFENDANTS' EXHIBITS (identified in §B4, Proposed Exhibits):

A, B, C, D, E, F, G and H.

PLAINTIFFS' EXHIBITS (identified in §B4, Proposed Exhibits):

The defendants hereby incorporate herein all of the plaintiffs' proposed exhibits which were identified in plaintiffs' §A2 Proposed Finding of Facts as the premise for each of the fifteen liability facts proposed by plaintiffs.  Those exhibits are as follows: 1-34, 101-105, 108-111.

DEFENDANTS' WITNESSES (identified in §B5, Proposed Witnesses):

Gregory Carabine.

Commander Matthew Ruckert.

Personnel and Representatives of the United States Coast Guard Academy Public Works Department.

Personnel and representatives of the United States Coast Guard Academy Athletic Department and of the United States Coast Guard Academy personnel and cadets.

Dean Koutsoubis, P.E.

PLAINTIFFS' WITNESSES (identified in §B5, Proposed Witnesses):

The defendants hereby incorporate all of the plaintiffs' proposed witnesses which were identified in plaintiffs' §A5 Proposed Witnesses as the premise for each of the fifteen liability facts proposed by plaintiffs.  Those witnesses are as follows:

Thomas J. Maron, President, Maron Construction Company, Inc.

David Maron, Maron Construction Company, Inc.

Jane M. Mardo, Vice-President, Maron Construction Company, Inc.

David B. Munroe, Midland Fire Protection Company.

Donna Munroe, Midland Fire Protection Company.

Jack DeMers, Midland Fire Protection Company.

Robert Fontaine, Midland Fire Protection Company.

Ronald DeFrancesco, Maron Construction Company, Inc.

C.W.O. Eric Stemmler, U.S. Coast Guard Academy.

Walter Stampfl, U.S. Coast Guard Academy.

Leigh Archibold, U.S. Coast Guard Academy.

Greg Carabine, U.S. Coast Guard Academy.

Ronald Foster, employee of Midland Fire Protection Company.

Steven Shotteck, employee of Midland Fire Protection Company.

Randall Draughn, employee of Midland Fire Protection Company.

Joseph Strychasz, plaintiff.

Sandra Collici, plaintiff.

Joshua Strychasz, son of plaintiffs.

Allison L. Wood, investigator.

Victoria Worrell, Contract Specialist, Facilities Design and Construction Center, Atlantic Center.

Wayne C. Webster, Project Manager for Roland Hall renovation facilities design and construction, Atlantic Center.

Wanda Coresini, U.S. Coast Guard Academy.

James Gerou, Einhorn Yaffee Prescott Architecture and Engineering.

Peter Gravel, Einhorn Yaffee Prescott Architecture and Engineering.

**PLAINTIFFS' RESPONSE**:

§C2-4:  **Disagree** –  There was nothing improper or negligent in Joseph Strychasz removing tools from the cell area onto the track floor through the air vent.  It was impractical and impossible to utilize the access ways in the staircases.  Ronald DeFrancesco not only knew, but approved of the various trades persons utilizing the air vent to gain access way to the cell area.  He had inspected the area of the cell and saw that large spools and folding chairs were being utilized to access the track floor from the cell areas.  The injuries sustained by Joseph Strychasz were not caused by the negligence or carelessness of the plaintiff.  It was the negligence of the defendants in directing Mr. Strychasz to work in the specified cell area when they knew or should have known that the transite panel on the floor of the cell area was not weight bearing and it was reasonably foreseeable that the plaintiff or others similarly situated would be caused to walk over the transite panel.   The defendant, Ronald DeFrancesco, failed to inspect the work area as he as required to  ensure a safe work place environment for the various contractors.

Ronald DeFrancesco, as Superintendent and Safety Officer of the defendant, Maron, knew that the ventilation holes in the floor of the cell area had been replaced by the transite roofing boards, which were incapable of holding an adult person's weight.  As Safety Officer, he failed to secure the coverings for the outside openings, when he knew that the plaintiff, and other subcontractor employees, would be working in the cell area.  As Safety Officer, he failed to provide for a safe entrance and exit to the cell area from the gymnasium floor, when he

knew that Midland's four employees were required to work in the cell area in the vicinity of these unsafe coverings on the ventilation holes.  As Safety Officer, Mr. DeFrancesco knew that during the demolition that Midland employees, and other subcontractor employees, used these openings in the gymnasium floor to enter and exit the cell area, requiring them to stand on transite coverings.  As Safety Officer, he failed to make periodic safety inspections of the job-site everyday as required under the contract and safety plan submitted by Maron.  As Safety Officer, Mr. DeFrancesco failed, during his inspections of work areas, to observe areas of all subcontractors and take appropriate action to correct the unsafe conditions, as soon as possible, pursuant to the agreement with U.S.C.G.  As Safety Officer, Mr. DeFrancesco failed to make regular and frequent inspections over the entire site at least daily; and, at least once each week, jointly with trade contractor representatives, as required under the agreement with the U.S.C.G.  As Safety Officer, he failed to acquaint the plaintiff with the possibility of a fall and the hazards that could be expected in the cell area.  As Safety Officer, he failed to provide sufficient ladders for entrance and exit into the cell area with safe coverings, when he knew, or in the exercise of reasonable care, should have known that the employees were utilizing the various openings to the cell area for purposes of their work.

The plaintiff will rely on the following evidence as previously listed in Section A2 of the Plaintiff's Trial Preparation Order.

Specification of Supporting Evidence – The plaintiffs will rely on the following evidence (see attached Exhibit Numbers) to support this proposed finding of fact:

**<u>Depositions</u>**:

1. 09/20/02 – Ronald DeFrancesco
2. 09/20/02 – Thomas Maron
3. 10/07/02 – Gary Crakes, Ph.D.
4. 10/22/02 – Peter Gravel
5. 10/23/02 – James Gerou
6. 10/29/02 – Dr. Trafton
7. 10/30/02 – Dr. DiGiovanni
8. 11/06/02 – David Munroe
9. 11/07/02 – Sandra Strychasz
10. 11/07/02 – Joseph Strychasz
11. 11/08/02 – Lee Archibald
12. 11/13/02 – Wanda Coresini
13. 11/13/02 – Walter Stampfl
14. 11/20/02 – Dr. Jonathan Bolton
15. 11/25/02 – Dr. DiGiovanni Continued Depo
16. 11/25/02 – Dr. Trafton Continued Depo
17. 07/17/03 – Dean Koutsoubis
18. 08/13/03 – Ronald DeFrancesco Continued Depo
19. 08/13/03 – Thomas Maron Continued Depo

**Architectural and Engineering Diagrams**:

20.  Two volume set of architectural and engineering drawings for the Roland Hall renovation project prepared by Einhorn, Yaffee Prescott Engineers.

21.  Midland Fire Protection as built drawings, 8 sheets.

22.  Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 1 of 2**).

23.  Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 2 of 2**).

**Contracts**:

24.  Contract between the U.S. Coast Guard and Einhorn, Yaffee, Prescott dated April 29, 1996.

25.  Solicitation Offer and Award to Maron Construction Company August 7, 1996.

26.  Subcontract Agreement between Maron Construction and Midland Fire Protection executed November 4, 1996.

27.  Amendment of Solicitation/Modification of Contract dated April 14, 1997 (asbestos abatement).

28.  Contract Modification executed by Maron Construction dated June 17, 1997 with attachments, 10 pages.

**Roland Hall Renovation Contracts**:

29.  Contract Amendment/Modification dated August 7, 1996.

30.  Three large blueprints of Roland Hall Renovations.

31.  List of Subcontractors for Roland Hall renovation project.

32.  Two large blueprints of Einhorn, Yaffee, Prescott Architectural, pages 30 and 31.

**Photographs/Video**:

33.  90 photographs of various locations inside and outside of the Roland Hall Gymnasium taken by Dean Koutsoubis on November 15, 2002 – currently in possession of the defendants.

34.  20 pages of Roland Hall accident site photographs.

**Investigatory Reports**:

101.  October 11, 1996 Safety Plan from David Maron to the Coast Guard Contracting Division designating Ronald DeFrancesco as Safety Officer.

102.  May 12, 1997 2-page letter from Thomas Maron to Midland Fire Protection.

103.  May 12, 1997 Daily Construction Report executed by Ronald DeFrancesco.

104.  Investigatory report of Chief Warrant Officer Eric Stemmler dated May 28, 1997 with attachments, 15 pages.

105.  Job Site Weekly Safety Meetings reports.

**State Court Depositions**:

    108.  Deposition of Steven Shotteck – October 22, 1999
    109.  Deposition of Eric Stemmler – December 13, 1999
    110.  Deposition of Ronald Foster – April 4, 2000

**Request for Admissions**:

    111.  Defendants, Maron Construction, Inc. & Ronald DeFrancesco's response to Request for Admissions dated January 6, 2003.

**List of Proposed Witnesses to Support Proposed Finding of Fact**:

1.    Thomas J. Maron, President
    Maron Construction Company, Inc.
    180 Mancini Drive, Providence, RI  02909
    Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

2.    David Maron
    Maron Construction Company, Inc.
    180 Mancini Drive, Providence, RI  02909
    Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

3.    Jane M. Mardo, Vice President
    Maron Construction Company, Inc.
    180 Mancini Drive, Providence, RI  02909
    Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

4.    David B. Munroe, Midland Fire Protection Company
    6 Grandview Street, Coventry, RI  02810
    Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

5.    Donna Munroe
    6 Grandview Street, Coventry, RI  02810
    Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

6.      Jack DeMers, Midland Fire Protection
        6 Grandview Street, Coventry, RI  02810
        Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

7.      Robert Fontaine, Midland Fire Protection
        6 Grandview Street, Coventry, RI  02810
        Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

8.      Ronald DeFrancesco, Superintendent
        Maron Construction Company
        180 Mancini Drive, Providence, RI  02909
        Brief Description of Testimony – Employee of Maron Construction Company, general
contractor for the renovation project at Roland Hall – fact witness.

9.      C.W.O. Eric Stemmler, U.S. Coast Guard Academy
        New London, Connecticut
        Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland
Hall rehabilitation project.

10.     Walter Stampfl, U.S. Coast Guard Academy
        New London, Connecticut
        Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland
Hall rehabilitation project.

11.     Lee Archibald, U.S. Coast Guard Academy
        New London, Connecticut
        Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland
Hall rehabilitation project.

12.     Greg Carabine, Assistant Facilities Engineer,
        Coast Guard Academy, New London, Connecticut
        Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland
Hall rehabilitation project.

13.     Ronald Foster
        52 Maple Street, Attleboro Falls, MA
        Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

14.    Steven Shotteck
       61 Pine Street, Seekonk, MA  02771
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

15.    Randall Draughn
       He has been assigned to work for Midland on a project in North Carolina.  He lives
       at 5A Severna Court, Durham, NC  27704
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

16.    Joseph Strychasz
       165 Memorial Drive, Pawtucket, RI  02861
       Plaintiff.

17.    Sandra Colicci
       2218 Putnam Pike, Chepachet, RI
       Plaintiff.

18.    Joshua Strychasz
       2218 Putnam Pike, Chepachet, RI
       Son of plaintiffs.

19.    Alison L. Wood, Investigator
       Williams Investigative Services
       Conducted initial investigation of fall at Roland Hall.

20.    Ms. Victoria Worrell, Contract Specialist
       Facilities Design & Construction Center Atlantic
       5505 Robin Hood Road, Norfolk, VA  23513-2431
       Brief Description of Testimony – Coast Guard employee responsible for the issuance of
the contract between the United States Coast Guard and Maron Construction for the
renovation of Roland Hall.  Responsible for contract compliance.

21.    Mr. Wayne C. Webster, Project Manager for Roland Hall renovation
       Facilities Design & Construction Center Atlantic
       Norfolk, Virginia
       Brief Description of Testimony – Coast Guard employee responsible for the issuance of
the contract between the United States Coast Guard and Maron Construction for the
renovation of Roland Hall.  Responsible for contract compliance.

22.    Wanda Coresini, U.S. Coast Guard Academy
       Norfolk, Virginia
       Brief Description of Testimony – Coast Guard employee responsible for the issuance of
the contract between the United States Coast Guard and Maron Construction for the
renovation of Roland Hall.  Responsible for contract compliance.

23.    James Gerou
       Einhorn, Yaffee, Prescott Architecture & Engineering
       P.O. Box 617, Albany, NY  12201
       Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the
architecture and engineering of the Roland Hall renovation project.

24.    Peter Gravel
       45 Hyvue Drive, Newburgh, NY  12550
       Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the
architecture and engineering of the Roland Hall renovation project.


**§B2-5**:  Any and all injuries sustained by the Joseph Strychasz were caused in whole or in part

by the negligence and carelessness of the plaintiff, Joseph Strychasz, in that he failed to exit

or use the access point in the cell area by use of a ladder, as specifically designated to him

and his employer.

**SUPPORTING WITNESSES, DOCUMENTS, PLEADINGS & TANGIBLE EVIDENCE**:

At this juncture, it is anticipated that this proposed finding will be premised upon:

DEFENDANTS' EXHIBITS (identified in §B4, Proposed Exhibits):

A, B, C, D, E, F, G and H.

PLAINTIFFS' EXHIBITS (identified in §B4, Proposed Exhibits):

The defendants hereby incorporate herein all of the plaintiffs' proposed exhibits which

were identified in plaintiffs' §A2 Proposed Finding of Facts as the premise for each of the

fifteen liability facts proposed by plaintiffs. Those exhibits are as follows: 1-34, 101-105, 108-111.

<u>DEFENDANTS' WITNESSES</u> (identified in §B5, Proposed Witnesses):

Gregory Carabine.

Commander Matthew Ruckert.

Personnel and Representatives of the United States Coast Guard Academy Public Works Department.

Personnel and representatives of the United States Coast Guard Academy Athletic Department and of the United States Coast Guard Academy personnel and cadets.

Dean Koutsoubis, P.E.

<u>PLAINTIFFS' WITNESSES</u> (identified in §B5, Proposed Witnesses):

The defendants hereby incorporate all of the plaintiffs' proposed witnesses which were identified in plaintiffs' §A5 Proposed Witnesses as the premise for each of the fifteen liability facts proposed by plaintiffs. Those witnesses are as follows:

Thomas J. Maron, President, Maron Construction Company, Inc.

David Maron, Maron Construction Company, Inc.

Jane M. Mardo, Vice-President, Maron Construction Company, Inc.

David B. Munroe, Midland Fire Protection Company.

Donna Munroe, Midland Fire Protection Company.

Jack DeMers, Midland Fire Protection Company.

Robert Fontaine, Midland Fire Protection Company.

Ronald DeFrancesco, Maron Construction Company, Inc.

C.W.O. Eric Stemmler, U.S. Coast Guard Academy.

Walter Stampfl, U.S. Coast Guard Academy.

Leigh Archibold, U.S. Coast Guard Academy.

Greg Carabine, U.S. Coast Guard Academy.

Ronald Foster, employee of Midland Fire Protection Company.

Steven Shotteck, employee of Midland Fire Protection Company.

Randall Draughn, employee of Midland Fire Protection Company.

Joseph Strychasz, plaintiff.

Sandra Collici, plaintiff.

Joshua Strychasz, son of plaintiffs.

Allison L. Wood, investigator.

Victoria Worrell, Contract Specialist, Facilities Design and Construction Center, Atlantic Center.

Wayne C. Webster, Project Manager for Roland Hall renovation facilities design and construction, Atlantic Center.

Wanda Coresini, U.S. Coast Guard Academy.

James Gerou, Einhorn Yaffee Prescott Architecture and Engineering.

Peter Gravel, Einhorn Yaffee Prescott Architecture and Engineering.

**PLAINTIFFS' RESPONSE**:

**§C2-5:  Disagree** –   There was nothing improper or negligent in Joseph Strychasz removing tools from the cell area onto the track floor through the air vent.  It was impractical and impossible to utilize the access ways in the staircases.  Ronald DeFrancesco not only knew, but approved of the various trades persons utilizing the air vent to gain access way to the cell area.  He had inspected the area of the cell and saw that large spools and folding chairs were being utilized to access the track floor from the cell areas.  The injuries sustained by Joseph Strychasz were not caused by the negligence or carelessness of the plaintiff.  It was the negligence of the defendants in directing Mr. Strychasz to work in the specified cell area when they knew or should have known that the transite panel on the floor of the cell area was not weight bearing and it was reasonably foreseeable that the plaintiff or others similarly situated would be caused to walk over the transite panel.   The defendant, Ronald DeFrancesco, failed to inspect the work area as he as required to ensure a safe work place environment for the various contractors.

Ronald DeFrancesco, as Superintendent and Safety Officer of the defendant, Maron, knew that the ventilation holes in the floor of the cell area had been replaced by the transite roofing boards, which were incapable of holding an adult person's weight.  As Safety Officer, he failed to secure the coverings for the outside openings, when he knew that the plaintiff, and other subcontractor employees, would be working in the cell area.  As Safety Officer, he failed to provide for a safe entrance and exit to the cell area from the gymnasium floor, when he knew that Midland's four employees were required to work in the cell area in the vicinity of these unsafe coverings on the ventilation holes.  As Safety Officer, Mr. DeFrancesco knew that

during the demolition that Midland employees, and other subcontractor employees, used these openings in the gymnasium floor to enter and exit the cell area, requiring them to stand on transite coverings.  As Safety Officer, he failed to make periodic safety inspections of the job-site everyday as required under the contract and safety plan submitted by Maron.  As Safety Officer, Mr. DeFrancesco failed, during his inspections of work areas, to observe areas of all subcontractors and take appropriate action to correct the unsafe conditions, as soon as possible, pursuant to the agreement with U.S.C.G.  As Safety Officer, Mr. DeFrancesco failed to make regular and frequent inspections over the entire site at least daily; and, at least once each week, jointly with trade contractor representatives, as required under the agreement with the U.S.C.G.  As Safety Officer, he failed to acquaint the plaintiff with the possibility of a fall and the hazards that could be expected in the cell area.  As Safety Officer, he failed to provide sufficient ladders for entrance and exit into the cell area with safe coverings, when he knew, or in the exercise of reasonable care, should have known that the employees were utilizing the various openings to the cell area for purposes of their work.

The plaintiff will rely on the following evidence as previously listed in Section A2 of the Plaintiff's Trial Preparation Order.

Specification of Supporting Evidence – The plaintiffs will rely on the following evidence (see attached Exhibit Numbers) to support this proposed finding of fact:

**Depositions**:

1. 09/20/02 – Ronald DeFrancesco
2. 09/20/02 – Thomas Maron
3. 10/07/02 – Gary Crakes, Ph.D.

4.   10/22/02 – Peter Gravel
5.   10/23/02 – James Gerou
6.   10/29/02 – Dr. Trafton
7.   10/30/02 – Dr. DiGiovanni
8.   11/06/02 – David Munroe
9.   11/07/02 – Sandra Strychasz
10.   11/07/02 – Joseph Strychasz
11.   11/08/02 – Lee Archibald
12.   11/13/02 – Wanda Coresini
13.   11/13/02 – Walter Stampfl
14.   11/20/02 – Dr. Jonathan Bolton
15.   11/25/02 – Dr. DiGiovanni Continued Depo
16.   11/25/02 – Dr. Trafton Continued Depo
17.   07/17/03 – Dean Koutsoubis
18.   08/13/03 – Ronald DeFrancesco Continued Depo
19.   08/13/03 – Thomas Maron Continued Depo

## Architectural and Engineering Diagrams:

20.  Two volume set of architectural and engineering drawings for the Roland Hall renovation project prepared by Einhorn, Yaffee Prescott Engineers.

21.  Midland Fire Protection as built drawings, 8 sheets.

22.  Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 1 of 2**).

23.  Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 2 of 2**).

## Contracts:

24.  Contract between the U.S. Coast Guard and Einhorn, Yaffee, Prescott dated April 29, 1996.

25.  Solicitation Offer and Award to Maron Construction Company August 7, 1996.

26.  Subcontract Agreement between Maron Construction and Midland Fire Protection executed November 4, 1996.

27.  Amendment of Solicitation/Modification of Contract dated April 14, 1997 (asbestos abatement).

28.  Contract Modification executed by Maron Construction dated June 17, 1997 with attachments, 10 pages.

**Roland Hall Renovation Contracts**:

29.  Contract Amendment/Modification dated August 7, 1996.

30.  Three large blueprints of Roland Hall Renovations.

31.  List of Subcontractors for Roland Hall renovation project.

32.  Two large blueprints of Einhorn, Yaffee, Prescott Architectural, pages 30 and 31.

**Photographs/Video**:

33.  90 photographs of various locations inside and outside of the Roland Hall Gymnasium taken by Dean Koutsoubis on November 15, 2002 – currently in possession of the defendants.

34.  20 pages of Roland Hall accident site photographs.

**Investigatory Reports**:

101.  October 11, 1996 Safety Plan from David Maron to the Coast Guard Contracting Division designating Ronald DeFrancesco as Safety Officer.

102.  May 12, 1997 2-page letter from Thomas Maron to Midland Fire Protection.

103.  May 12, 1997 Daily Construction Report executed by Ronald DeFrancesco.

104.  Investigatory report of Chief Warrant Officer Eric Stemmler dated May 28, 1997 with attachments, 15 pages.

105.  Job Site Weekly Safety Meetings reports.

**State Court Depositions**:

108.  Deposition of Steven Shotteck – October 22, 1999

109.  Deposition of Eric Stemmler – December 13, 1999
110.  Deposition of Ronald Foster – April 4, 2000

**Request for Admissions**:

111.  Defendants, Maron Construction, Inc. & Ronald DeFrancesco's response to Request for Admissions dated January 6, 2003.

**List of Proposed Witnesses to Support Proposed Finding of Fact**:

1.     Thomas J. Maron, President
       Maron Construction Company, Inc.
       180 Mancini Drive, Providence, RI  02909
       Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

2.     David Maron
       Maron Construction Company, Inc.
       180 Mancini Drive, Providence, RI  02909
       Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

3.     Jane M. Mardo, Vice President
       Maron Construction Company, Inc.
       180 Mancini Drive, Providence, RI  02909
       Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

4.     David B. Munroe, Midland Fire Protection Company
       6 Grandview Street, Coventry, RI  02810
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

5.     Donna Munroe
       6 Grandview Street, Coventry, RI  02810
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

6.     Jack DeMers, Midland Fire Protection
       6 Grandview Street, Coventry, RI  02810

Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

7.    Robert Fontaine, Midland Fire Protection
       6 Grandview Street, Coventry, RI  02810
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

8.    Ronald DeFrancesco, Superintendent
       Maron Construction Company
       180 Mancini Drive, Providence, RI  02909
       Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

9.    C.W.O. Eric Stemmler, U.S. Coast Guard Academy
       New London, Connecticut
       Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

10.   Walter Stampfl, U.S. Coast Guard Academy
       New London, Connecticut
       Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

11.   Lee Archibald, U.S. Coast Guard Academy
       New London, Connecticut
       Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

12.   Greg Carabine, Assistant Facilities Engineer,
       Coast Guard Academy, New London, Connecticut
       Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

13.   Ronald Foster
       52 Maple Street, Attleboro Falls, MA
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

14.   Steven Shotteck
       61 Pine Street, Seekonk, MA  02771

Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

15. Randall Draughn
He has been assigned to work for Midland on a project in North Carolina.  He lives at 5A Severna Court, Durham, NC  27704
Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

16. Joseph Strychasz
165 Memorial Drive, Pawtucket, RI  02861
Plaintiff.

17. Sandra Colicci
2218 Putnam Pike, Chepachet, RI
Plaintiff.

18. Joshua Strychasz
2218 Putnam Pike, Chepachet, RI
Son of plaintiffs.

19. Alison L. Wood, Investigator
Williams Investigative Services
Conducted initial investigation of fall at Roland Hall.

20. Ms. Victoria Worrell, Contract Specialist
Facilities Design & Construction Center Atlantic
5505 Robin Hood Road, Norfolk, VA  23513-2431
Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

21. Mr. Wayne C. Webster, Project Manager for Roland Hall renovation
Facilities Design & Construction Center Atlantic
Norfolk, Virginia
Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

22. Wanda Coresini, U.S. Coast Guard Academy
Norfolk, Virginia

Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

23.    James Gerou
       Einhorn, Yaffee, Prescott Architecture & Engineering
       P.O. Box 617, Albany, NY  12201
       Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the architecture and engineering of the Roland Hall renovation project.

24.    Peter Gravel
       45 Hyvue Drive, Newburgh, NY  12550
       Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the architecture and engineering of the Roland Hall renovation project.


**§B2-6**:  Any and all injuries sustained by Joseph Strychasz were caused in whole or in part by the negligence and carelessness of the plaintiff, Joseph Strychasz, in that he failed to inquire of workers and supervisors on the job whether the panel and vent on which he eventually climbed was safe and capable of supporting his weight, that of the chair and the equipment and tools that he was lifting.

**SUPPORTING WITNESSES, DOCUMENTS, PLEADINGS & TANGIBLE EVIDENCE**:

At this juncture, it is anticipated that this proposed finding will be premised upon:

DEFENDANTS' EXHIBITS (identified in §B4, Proposed Exhibits):

A, B, C, D, E, F, G and H.

PLAINTIFFS' EXHIBITS (identified in §B4, Proposed Exhibits):

The defendants hereby incorporate herein all of the plaintiffs' proposed exhibits which were identified in plaintiffs' §A2 Proposed Finding of Facts as the premise for each of the

fifteen liability facts proposed by plaintiffs.  Those exhibits are as follows: 1-34, 101-105, 108-111.

DEFENDANTS' WITNESSES (identified in §B5, Proposed Witnesses):

Gregory Carabine.

Commander Matthew Ruckert.

Personnel and Representatives of the United States Coast Guard Academy Public Works Department.

Personnel and representatives of the United States Coast Guard Academy Athletic Department and of the United States Coast Guard Academy personnel and cadets.

Dean Koutsoubis, P.E.

PLAINTIFFS' WITNESSES (identified in §B5, Proposed Witnesses):

The defendants hereby incorporate all of the plaintiffs' proposed witnesses which were identified in plaintiffs' §A5 Proposed Witnesses as the premise for each of the fifteen liability facts proposed by plaintiffs.  Those witnesses are as follows:

Thomas J. Maron, President, Maron Construction Company, Inc.

David Maron, Maron Construction Company, Inc.

Jane M. Mardo, Vice-President, Maron Construction Company, Inc.

David B. Munroe, Midland Fire Protection Company.

Donna Munroe, Midland Fire Protection Company.

Jack DeMers, Midland Fire Protection Company.

Robert Fontaine, Midland Fire Protection Company.

Ronald DeFrancesco, Maron Construction Company, Inc.

C.W.O. Eric Stemmler, U.S. Coast Guard Academy.

Walter Stampfl, U.S. Coast Guard Academy.

Leigh Archibold, U.S. Coast Guard Academy.

Greg Carabine, U.S. Coast Guard Academy.

Ronald Foster, employee of Midland Fire Protection Company.

Steven Shotteck, employee of Midland Fire Protection Company.

Randall Draughn, employee of Midland Fire Protection Company.

Joseph Strychasz, plaintiff.

Sandra Collici, plaintiff.

Joshua Strychasz, son of plaintiffs.

Allison L. Wood, investigator.

Victoria Worrell, Contract Specialist, Facilities Design and Construction Center, Atlantic Center.

Wayne C. Webster, Project Manager for Roland Hall renovation facilities design and construction, Atlantic Center.

Wanda Coresini, U.S. Coast Guard Academy.

James Gerou, Einhorn Yaffee Prescott Architecture and Engineering.

Peter Gravel, Einhorn Yaffee Prescott Architecture and Engineering.

**PLAINTIFFS' RESPONSE**:

**§C2-2**:  **Disagree** – The injuries sustained by Joseph Strychasz were not caused by the negligence or carelessness of the plaintiff.  It was the negligence of the defendants in directing Mr. Strychasz to work in the specified cell area when they knew or should have known that the transite panel on the floor of the cell area was not weight bearing and it was reasonably foreseeable that the plaintiff or others similarly situated would be caused to walk over the transite panel.  The defendant, Ronald DeFrancesco, failed to inspect the work area as he as required to ensure a safe work place environment for the various contractors.

Ronald DeFrancesco, as Superintendent and Safety Officer of the defendant, Maron, knew that the ventilation holes in the floor of the cell area had been replaced by the transite roofing boards, which were incapable of holding an adult person's weight.  As Safety Officer, he failed to secure the coverings for the outside openings, when he knew that the plaintiff, and other subcontractor employees, would be working in the cell area.  As Safety Officer, he failed to provide for a safe entrance and exit to the cell area from the gymnasium floor, when he knew that Midland's four employees were required to work in the cell area in the vicinity of these unsafe coverings on the ventilation holes.  As Safety Officer, Mr. DeFrancesco knew that during the demolition that Midland employees, and other subcontractor employees, used these openings in the gymnasium floor to enter and exit the cell area, requiring them to stand on transite coverings.  As Safety Officer, he failed to make periodic safety inspections of the job-site everyday as required under the contract and safety plan submitted by Maron.  As Safety Officer, Mr. DeFrancesco failed, during his inspections of work areas, to observe areas of all subcontractors and take appropriate action to correct the unsafe conditions, as soon as

possible, pursuant to the agreement with U.S.C.G.  As Safety Officer, Mr. DeFrancesco failed

to make regular and frequent inspections over the entire site at least daily; and, at least once

each week, jointly with trade contractor representatives, as required under the agreement with

the U.S.C.G.  As Safety Officer, he failed to acquaint the plaintiff with the possibility of a fall

and the hazards that could be expected in the cell area.  As Safety Officer, he failed to provide

sufficient ladders for entrance and exit into the cell area with safe coverings, when he knew, or

in the exercise of reasonable care, should have known that the employees were utilizing the

various openings to the cell area for purposes of their work.

The plaintiff will rely on the following evidence as previously listed in Section A2 of the

Plaintiff's Trial Preparation Order.

Specification of Supporting Evidence – The plaintiffs will rely on the following evidence

(see attached Exhibit Numbers) to support this proposed finding of fact:

**Depositions**:

1. 09/20/02 – Ronald DeFrancesco
2. 09/20/02 – Thomas Maron
3. 10/07/02 – Gary Crakes, Ph.D.
4. 10/22/02 – Peter Gravel
5. 10/23/02 – James Gerou
6. 10/29/02 – Dr. Trafton
7. 10/30/02 – Dr. DiGiovanni
8. 11/06/02 – David Munroe
9. 11/07/02 – Sandra Strychasz
10. 11/07/02 – Joseph Strychasz
11. 11/08/02 – Lee Archibald
12. 11/13/02 – Wanda Coresini
13. 11/13/02 – Walter Stampfl
14. 11/20/02 – Dr. Jonathan Bolton
15. 11/25/02 – Dr. DiGiovanni Continued Depo

16. 11/25/02 – Dr. Trafton Continued Depo
17. 07/17/03 – Dean Koutsoubis
18. 08/13/03 – Ronald DeFrancesco Continued Depo
19. 08/13/03 – Thomas Maron Continued Depo

## Architectural and Engineering Diagrams:

20. Two volume set of architectural and engineering drawings for the Roland Hall renovation project prepared by Einhorn, Yaffee Prescott Engineers.

21. Midland Fire Protection as built drawings, 8 sheets.

22. Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 1 of 2**).

23. Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 2 of 2**).

## Contracts:

24. Contract between the U.S. Coast Guard and Einhorn, Yaffee, Prescott dated April 29, 1996.

25. Solicitation Offer and Award to Maron Construction Company August 7, 1996.

26. Subcontract Agreement between Maron Construction and Midland Fire Protection executed November 4, 1996.

27. Amendment of Solicitation/Modification of Contract dated April 14, 1997 (asbestos abatement).

28. Contract Modification executed by Maron Construction dated June 17, 1997 with attachments, 10 pages.

## Roland Hall Renovation Contracts:

29. Contract Amendment/Modification dated August 7, 1996.

30. Three large blueprints of Roland Hall Renovations.

31. List of Subcontractors for Roland Hall renovation project.

32.  Two large blueprints of Einhorn, Yaffee, Prescott Architectural, pages 30 and 31.

**Photographs/Video**:

33.  90 photographs of various locations inside and outside of the Roland Hall Gymnasium taken by Dean Koutsoubis on November 15, 2002 – currently in possession of the defendants.

34.  20 pages of Roland Hall accident site photographs.

**Investigatory Reports**:

101.  October 11, 1996 Safety Plan from David Maron to the Coast Guard Contracting Division designating Ronald DeFrancesco as Safety Officer.

102.  May 12, 1997 2-page letter from Thomas Maron to Midland Fire Protection.

103.  May 12, 1997 Daily Construction Report executed by Ronald DeFrancesco.

104.  Investigatory report of Chief Warrant Officer Eric Stemmler dated May 28, 1997 with attachments, 15 pages.

105.  Job Site Weekly Safety Meetings reports.

**State Court Depositions**:

108.  Deposition of Steven Shotteck – October 22, 1999
109.  Deposition of Eric Stemmler – December 13, 1999
110.  Deposition of Ronald Foster – April 4, 2000

**Request for Admissions**:

111.  Defendants, Maron Construction, Inc. & Ronald DeFrancesco's response to Request for Admissions dated January 6, 2003.

**List of Proposed Witnesses to Support Proposed Finding of Fact**:

1.    Thomas J. Maron, President
      Maron Construction Company, Inc.
      180 Mancini Drive, Providence, RI  02909

Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

2.     David Maron
    Maron Construction Company, Inc.
    180 Mancini Drive, Providence, RI  02909
    Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

3.     Jane M. Mardo, Vice President
    Maron Construction Company, Inc.
    180 Mancini Drive, Providence, RI  02909
    Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

4.     David B. Munroe, Midland Fire Protection Company
    6 Grandview Street, Coventry, RI  02810
    Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

5.     Donna Munroe
    6 Grandview Street, Coventry, RI  02810
    Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

6.     Jack DeMers, Midland Fire Protection
    6 Grandview Street, Coventry, RI  02810
    Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

7.     Robert Fontaine, Midland Fire Protection
    6 Grandview Street, Coventry, RI  02810
    Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

8.     Ronald DeFrancesco, Superintendent
    Maron Construction Company
    180 Mancini Drive, Providence, RI  02909
    Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

9.    C.W.O. Eric Stemmler, U.S. Coast Guard Academy
      New London, Connecticut
      Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland
Hall rehabilitation project.

10.   Walter Stampfl, U.S. Coast Guard Academy
      New London, Connecticut
      Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland
Hall rehabilitation project.

11.   Lee Archibald, U.S. Coast Guard Academy
      New London, Connecticut
      Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland
Hall rehabilitation project.

12.   Greg Carabine, Assistant Facilities Engineer,
      Coast Guard Academy, New London, Connecticut
      Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland
Hall rehabilitation project.

13.   Ronald Foster
      52 Maple Street, Attleboro Falls, MA
      Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

14.   Steven Shotteck
      61 Pine Street, Seekonk, MA  02771
      Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

15.   Randall Draughn
      He has been assigned to work for Midland on a project in North Carolina.  He lives
      at 5A Severna Court, Durham, NC  27704
      Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

16.   Joseph Strychasz
      165 Memorial Drive, Pawtucket, RI  02861
      Plaintiff.

17.   Sandra Colicci

2218 Putnam Pike, Chepachet, RI
Plaintiff.

18.     Joshua Strychasz
        2218 Putnam Pike, Chepachet, RI
        Son of plaintiffs.

19.     Alison L. Wood, Investigator
        Williams Investigative Services
        Conducted initial investigation of fall at Roland Hall.

20.     Ms. Victoria Worrell, Contract Specialist
        Facilities Design & Construction Center Atlantic
        5505 Robin Hood Road, Norfolk, VA  23513-2431
        Brief Description of Testimony – Coast Guard employee responsible for the issuance of
the contract between the United States Coast Guard and Maron Construction for the
renovation of Roland Hall.  Responsible for contract compliance.

21.     Mr. Wayne C. Webster, Project Manager for Roland Hall renovation
        Facilities Design & Construction Center Atlantic
        Norfolk, Virginia
        Brief Description of Testimony – Coast Guard employee responsible for the issuance of
the contract between the United States Coast Guard and Maron Construction for the
renovation of Roland Hall.  Responsible for contract compliance.

22.     Wanda Coresini, U.S. Coast Guard Academy
        Norfolk, Virginia
        Brief Description of Testimony – Coast Guard employee responsible for the issuance of
the contract between the United States Coast Guard and Maron Construction for the
renovation of Roland Hall.  Responsible for contract compliance.

23.     James Gerou
        Einhorn, Yaffee, Prescott Architecture & Engineering
        P.O. Box 617, Albany, NY  12201
        Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the
architecture and engineering of the Roland Hall renovation project.

24.     Peter Gravel
        45 Hyvue Drive, Newburgh, NY  12550
        Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the
architecture and engineering of the Roland Hall renovation project.

**§B2-7**:  Any and all injuries sustained by Joseph Strychasz were caused in whole or in part by the negligence and carelessness of the plaintiff, Joseph Strychasz, in that he failed to inspect the area where he fell prior to climbing on it.

**SUPPORTING WITNESSES, DOCUMENTS, PLEADINGS & TANGIBLE EVIDENCE**:

At this juncture, it is anticipated that this proposed finding will be premised upon:

DEFENDANTS' EXHIBITS (identified in §B4, Proposed Exhibits):

A, B, C, D, E, F, G and H.

PLAINTIFFS' EXHIBITS (identified in §B4, Proposed Exhibits):

The defendants hereby incorporate herein all of the plaintiffs' proposed exhibits which were identified in plaintiffs' §A2 Proposed Finding of Facts as the premise for each of the fifteen liability facts proposed by plaintiffs.  Those exhibits are as follows: 1-34, 101-105, 108-111.

DEFENDANTS' WITNESSES (identified in §B5, Proposed Witnesses):

Gregory Carabine.

Commander Matthew Ruckert.

Personnel and Representatives of the United States Coast Guard Academy Public Works Department.

Personnel and representatives of the United States Coast Guard Academy Athletic Department and of the United States Coast Guard Academy personnel and cadets.

Dean Koutsoubis, P.E.

<u>PLAINTIFFS' WITNESSES</u> (identified in §B5, Proposed Witnesses):

The defendants hereby incorporate all of the plaintiffs' proposed witnesses which were identified in plaintiffs' §A5 Proposed Witnesses as the premise for each of the fifteen liability facts proposed by plaintiffs.  Those witnesses are as follows:

Thomas J. Maron, President, Maron Construction Company, Inc.

David Maron, Maron Construction Company, Inc.

Jane M. Mardo, Vice-President, Maron Construction Company, Inc.

David B. Munroe, Midland Fire Protection Company.

Donna Munroe, Midland Fire Protection Company.

Jack DeMers, Midland Fire Protection Company.

Robert Fontaine, Midland Fire Protection Company.

Ronald DeFrancesco, Maron Construction Company, Inc.

C.W.O. Eric Stemmler, U.S. Coast Guard Academy.

Walter Stampfl, U.S. Coast Guard Academy.

Leigh Archibold, U.S. Coast Guard Academy.

Greg Carabine, U.S. Coast Guard Academy.

Ronald Foster, employee of Midland Fire Protection Company.

Steven Shotteck, employee of Midland Fire Protection Company.

Randall Draughn, employee of Midland Fire Protection Company.

Joseph Strychasz, plaintiff.

Sandra Collici, plaintiff.

Joshua Strychasz, son of plaintiffs.

Allison L. Wood, investigator.

Victoria Worrell, Contract Specialist, Facilities Design and Construction Center, Atlantic Center.

Wayne C. Webster, Project Manager for Roland Hall renovation facilities design and construction, Atlantic Center.

Wanda Coresini, U.S. Coast Guard Academy.

James Gerou, Einhorn Yaffee Prescott Architecture and Engineering.

Peter Gravel, Einhorn Yaffee Prescott Architecture and Engineering.

**PLAINTIFFS' RESPONSE**:

**§C2-7:  Disagree** – The injuries sustained by Joseph Strychasz were not caused by the negligence or carelessness of the plaintiff.  It was the negligence of the defendants in directing Mr. Strychasz to work in the specified cell area when they knew or should have known that the transite panel on the floor of the cell area was not weight bearing and it was reasonably foreseeable that the plaintiff or others similarly situated would be caused to walk over the transite panel.  The defendant, Ronald DeFrancesco, failed to inspect the work area as he as required to ensure a safe work place environment for the various contractors.

Ronald DeFrancesco, as Superintendent and Safety Officer of the defendant, Maron, knew that the ventilation holes in the floor of the cell area had been replaced by the transite roofing boards, which were incapable of holding an adult person's weight.  As Safety Officer, he failed to secure the coverings for the outside openings, when he knew that the plaintiff, and

other subcontractor employees, would be working in the cell area. As Safety Officer, he failed to provide for a safe entrance and exit to the cell area from the gymnasium floor, when he knew that Midland's four employees were required to work in the cell area in the vicinity of these unsafe coverings on the ventilation holes. As Safety Officer, Mr. DeFrancesco knew that during the demolition that Midland employees, and other subcontractor employees, used these openings in the gymnasium floor to enter and exit the cell area, requiring them to stand on transite coverings. As Safety Officer, he failed to make periodic safety inspections of the job-site everyday as required under the contract and safety plan submitted by Maron. As Safety Officer, Mr. DeFrancesco failed, during his inspections of work areas, to observe areas of all subcontractors and take appropriate action to correct the unsafe conditions, as soon as possible, pursuant to the agreement with U.S.C.G. As Safety Officer, Mr. DeFrancesco failed to make regular and frequent inspections over the entire site at least daily; and, at least once each week, jointly with trade contractor representatives, as required under the agreement with the U.S.C.G. As Safety Officer, he failed to acquaint the plaintiff with the possibility of a fall and the hazards that could be expected in the cell area. As Safety Officer, he failed to provide sufficient ladders for entrance and exit into the cell area with safe coverings, when he knew, or in the exercise of reasonable care, should have known that the employees were utilizing the various openings to the cell area for purposes of their work.

The plaintiff will rely on the following evidence as previously listed in Section A2 of the Plaintiff's Trial Preparation Order.

Specification of Supporting Evidence – The plaintiffs will rely on the following evidence (see attached Exhibit Numbers) to support this proposed finding of fact:

**Depositions**:

1. 09/20/02 – Ronald DeFrancesco
2. 09/20/02 – Thomas Maron
3. 10/07/02 – Gary Crakes, Ph.D.
4. 10/22/02 – Peter Gravel
5. 10/23/02 – James Gerou
6. 10/29/02 – Dr. Trafton
7. 10/30/02 – Dr. DiGiovanni
8. 11/06/02 – David Munroe
9. 11/07/02 – Sandra Strychasz
10. 11/07/02 – Joseph Strychasz
11. 11/08/02 – Lee Archibald
12. 11/13/02 – Wanda Coresini
13. 11/13/02 – Walter Stampfl
14. 11/20/02 – Dr. Jonathan Bolton
15. 11/25/02 – Dr. DiGiovanni Continued Depo
16. 11/25/02 – Dr. Trafton Continued Depo
17. 07/17/03 – Dean Koutsoubis
18. 08/13/03 – Ronald DeFrancesco Continued Depo
19. 08/13/03 – Thomas Maron Continued Depo

**Architectural and Engineering Diagrams**:

20. Two volume set of architectural and engineering drawings for the Roland Hall renovation project prepared by Einhorn, Yaffee Prescott Engineers.

21. Midland Fire Protection as built drawings, 8 sheets.

22. Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 1 of 2**).

23. Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 2 of 2**).

**Contracts**:

24.  Contract between the U.S. Coast Guard and Einhorn, Yaffee, Prescott dated April 29, 1996.

25.  Solicitation Offer and Award to Maron Construction Company August 7, 1996.

26.  Subcontract Agreement between Maron Construction and Midland Fire Protection executed November 4, 1996.

27.  Amendment of Solicitation/Modification of Contract dated April 14, 1997 (asbestos abatement).

28.  Contract Modification executed by Maron Construction dated June 17, 1997 with attachments, 10 pages.

**Roland Hall Renovation Contracts**:

29.  Contract Amendment/Modification dated August 7, 1996.

30.  Three large blueprints of Roland Hall Renovations.

31.  List of Subcontractors for Roland Hall renovation project.

32.  Two large blueprints of Einhorn, Yaffee, Prescott Architectural, pages 30 and 31.

**Photographs/Video**:

33.  90 photographs of various locations inside and outside of the Roland Hall Gymnasium taken by Dean Koutsoubis on November 15, 2002 – currently in possession of the defendants.

34.  20 pages of Roland Hall accident site photographs.

**Investigatory Reports**:

101.  October 11, 1996 Safety Plan from David Maron to the Coast Guard Contracting Division designating Ronald DeFrancesco as Safety Officer.

102.  May 12, 1997 2-page letter from Thomas Maron to Midland Fire Protection.

103.  May 12, 1997 Daily Construction Report executed by Ronald DeFrancesco.

104.  Investigatory report of Chief Warrant Officer Eric Stemmler dated May 28, 1997 with attachments, 15 pages.

105.  Job Site Weekly Safety Meetings reports.

**State Court Depositions**:

108.  Deposition of Steven Shotteck – October 22, 1999
109.  Deposition of Eric Stemmler – December 13, 1999
110.  Deposition of Ronald Foster – April 4, 2000

**Request for Admissions**:

111.  Defendants, Maron Construction, Inc. & Ronald DeFrancesco's response to Request for Admissions dated January 6, 2003.

**List of Proposed Witnesses to Support Proposed Finding of Fact**:

1.     Thomas J. Maron, President
       Maron Construction Company, Inc.
       180 Mancini Drive, Providence, RI  02909
       Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

2.     David Maron
       Maron Construction Company, Inc.
       180 Mancini Drive, Providence, RI  02909
       Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

3.     Jane M. Mardo, Vice President
       Maron Construction Company, Inc.
       180 Mancini Drive, Providence, RI  02909
       Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

4.     David B. Munroe, Midland Fire Protection Company
       6 Grandview Street, Coventry, RI  02810
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

5.      Donna Munroe
        6 Grandview Street, Coventry, RI  02810
        Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

6.      Jack DeMers, Midland Fire Protection
        6 Grandview Street, Coventry, RI  02810
        Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

7.      Robert Fontaine, Midland Fire Protection
        6 Grandview Street, Coventry, RI  02810
        Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

8.      Ronald DeFrancesco, Superintendent
        Maron Construction Company
        180 Mancini Drive, Providence, RI  02909
        Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

9.      C.W.O. Eric Stemmler, U.S. Coast Guard Academy
        New London, Connecticut
        Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

10.     Walter Stampfl, U.S. Coast Guard Academy
        New London, Connecticut
        Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

11.     Lee Archibald, U.S. Coast Guard Academy
        New London, Connecticut
        Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

12.     Greg Carabine, Assistant Facilities Engineer,
        Coast Guard Academy, New London, Connecticut
        Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

13.    Ronald Foster
       52 Maple Street, Attleboro Falls, MA
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

14.    Steven Shotteck
       61 Pine Street, Seekonk, MA  02771
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

15.    Randall Draughn
       He has been assigned to work for Midland on a project in North Carolina.  He lives
       at 5A Severna Court, Durham, NC  27704
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

16.    Joseph Strychasz
       165 Memorial Drive, Pawtucket, RI  02861
       Plaintiff.

17.    Sandra Colicci
       2218 Putnam Pike, Chepachet, RI
       Plaintiff.

18.    Joshua Strychasz
       2218 Putnam Pike, Chepachet, RI
       Son of plaintiffs.

19.    Alison L. Wood, Investigator
       Williams Investigative Services
       Conducted initial investigation of fall at Roland Hall.

20.    Ms. Victoria Worrell, Contract Specialist
       Facilities Design & Construction Center Atlantic
       5505 Robin Hood Road, Norfolk, VA  23513-2431
       Brief Description of Testimony – Coast Guard employee responsible for the issuance of
the contract between the United States Coast Guard and Maron Construction for the
renovation of Roland Hall.  Responsible for contract compliance.

21.    Mr. Wayne C. Webster, Project Manager for Roland Hall renovation
       Facilities Design & Construction Center Atlantic

Norfolk, Virginia
Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

22.    Wanda Coresini, U.S. Coast Guard Academy
Norfolk, Virginia
Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

23.    James Gerou
Einhorn, Yaffee, Prescott Architecture & Engineering
P.O. Box 617, Albany, NY  12201
Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the architecture and engineering of the Roland Hall renovation project.

24.    Peter Gravel
45 Hyvue Drive, Newburgh, NY  12550
Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the architecture and engineering of the Roland Hall renovation project.


**§B2-8**:  Any and all injuries sustained by the Joseph Strychasz were caused in whole or in part by the negligence and carelessness of the plaintiff, Joseph Strychasz, in that he failed to attend the safety meetings that had been scheduled for himself and his employer.

**SUPPORTING WITNESSES, DOCUMENTS, PLEADINGS & TANGIBLE EVIDENCE**:

At this juncture, it is anticipated that this proposed finding will be premised upon:

DEFENDANTS' EXHIBITS (identified in §B4, Proposed Exhibits):

A, B, C, D, E, F, G and H.

PLAINTIFFS' EXHIBITS (identified in §B4, Proposed Exhibits):

The defendants hereby incorporate herein all of the plaintiffs' proposed exhibits which were identified in plaintiffs' §A2 Proposed Finding of Facts as the premise for each of the fifteen liability facts proposed by plaintiffs.  Those exhibits are as follows: 1-34, 101-105, 108-111.

DEFENDANTS' WITNESSES (identified in §B5, Proposed Witnesses):

Gregory Carabine.

Commander Matthew Ruckert.

Personnel and Representatives of the United States Coast Guard Academy Public Works Department.

Personnel and representatives of the United States Coast Guard Academy Athletic Department and of the United States Coast Guard Academy personnel and cadets.

Dean Koutsoubis, P.E.

PLAINTIFFS' WITNESSES (identified in §B5, Proposed Witnesses):

The defendants hereby incorporate all of the plaintiffs' proposed witnesses which were identified in plaintiffs' §A5 Proposed Witnesses as the premise for each of the fifteen liability facts proposed by plaintiffs.  Those witnesses are as follows:

Thomas J. Maron, President, Maron Construction Company, Inc.

David Maron, Maron Construction Company, Inc.

Jane M. Mardo, Vice-President, Maron Construction Company, Inc.

David B. Munroe, Midland Fire Protection Company.

Donna Munroe, Midland Fire Protection Company.

Jack DeMers, Midland Fire Protection Company.

Robert Fontaine, Midland Fire Protection Company.

Ronald DeFrancesco, Maron Construction Company, Inc.

C.W.O. Eric Stemmler, U.S. Coast Guard Academy.

Walter Stampfl, U.S. Coast Guard Academy.

Leigh Archibold, U.S. Coast Guard Academy.

Greg Carabine, U.S. Coast Guard Academy.

Ronald Foster, employee of Midland Fire Protection Company.

Steven Shotteck, employee of Midland Fire Protection Company.

Randall Draughn, employee of Midland Fire Protection Company.

Joseph Strychasz, plaintiff.

Sandra Collici, plaintiff.

Joshua Strychasz, son of plaintiffs.

Allison L. Wood, investigator.

Victoria Worrell, Contract Specialist, Facilities Design and Construction Center, Atlantic Center.

Wayne C. Webster, Project Manager for Roland Hall renovation facilities design and construction, Atlantic Center.

Wanda Coresini, U.S. Coast Guard Academy.

James Gerou, Einhorn Yaffee Prescott Architecture and Engineering.

Peter Gravel, Einhorn Yaffee Prescott Architecture and Engineering.

**PLAINTIFFS' RESPONSE**:

**§C2-8:  Disagree** – Joseph Strychasz did not willfully fail to attend any safety meeting that had been scheduled.  He was never advised by the defendant, Ronald DeFrancesco, of any safety meetings.   Ronald DeFrancesco, as Superintendent and Safety Officer of the defendant, Maron, was required to prepare a written plan for the safety of all employees working at the project.  As  Safety Officer, he knew that the ventilation holes in the floor of the cell area had been replaced by the transite roofing boards, which were incapable of holding an adult person's weight.   As Safety Officer, he failed to secure the coverings for the outside openings, when he knew that the plaintiff, and other subcontractor employees, would be working in the cell area.  As Safety Officer, he failed to conduct weekly meetings on safety with the employees of Maron, as required under the contract with the U.S.C.G.  As Safety Officer, he failed to provide for a safe entrance and exit to the cell area from the gymnasium floor, when he knew that Midland's four employees were required to work in the cell area in the vicinity of these unsafe coverings on the ventilation holes.  As Safety Officer, Mr. DeFrancesco knew that during the demolition that Midland employees, and other subcontractor employees, used these openings in the gymnasium floor to enter and exit the cell area, requiring them to stand on transite coverings.  As Safety Officer, he failed to make periodic safety inspections of the job-site everyday as required under the contract and safety plan submitted by Maron.  As Safety Officer, Mr. DeFrancesco failed to give the plaintiff the safety orientation required under the agreement with U.S.C.G.  As Safety Officer, Mr. DeFrancesco failed, during his inspections of work areas, to observe areas of all subcontractors and take appropriate action to correct the

unsafe conditions, as soon as possible, pursuant to the agreement with U.S.C.G.  As Safety Officer, Mr. DeFrancesco failed to make regular and frequent inspections over the entire site at least daily; and, at least once each week, jointly with trade contractor representatives, as required under the agreement with the U.S.C.G.  As Safety Officer, he failed to acquaint the plaintiff with the possibility of a fall and the hazards that could be expected in the cell area.  As Safety Officer, he failed to provide sufficient ladders for entrance and exit into the cell area with safe coverings, when he knew, or in the exercise of reasonable care, should have known that the employees were utilizing the various openings to the cell area for purposes of their work.  As Safety Officer, he failed to conduct weekly meetings with all employees on the job site to further educate them on the need for safety, as required under Maroon's contract with U.S.C.G.  As Safety Officer, he failed to hold a Job Start Safety Conference with each new trade contractor employee coming onto the job site, as required under the agreement with U.S.C.G.  As Safety Officer, he failed to conduct orientation with new employees coming onto the job site relating to hazards that may be expected during the work; with the safety equipment that must be used; and, work practices to minimize the possibility of an accident, including lifts, falls, fire and housekeeping, as required under the agreement with U.S.C.G.

The plaintiff will rely on the following evidence as previously listed in Section A2 of the Plaintiff's Trial Preparation Order.

 Specification of Supporting Evidence – The plaintiffs will rely on the following evidence (see attached Exhibit Numbers) to support this proposed finding of fact:

**Depositions**:

1.  09/20/02 – Ronald DeFrancesco
2.  09/20/02 – Thomas Maron
3.  10/07/02 – Gary Crakes, Ph.D.
4.  10/22/02 – Peter Gravel
5.  10/23/02 – James Gerou
6.  10/29/02 – Dr. Trafton
7.  10/30/02 – Dr. DiGiovanni
8.  11/06/02 – David Munroe
9.  11/07/02 – Sandra Strychasz
10. 11/07/02 – Joseph Strychasz
11. 11/08/02 – Lee Archibald
12. 11/13/02 – Wanda Coresini
13. 11/13/02 – Walter Stampfl
14. 11/20/02 – Dr. Jonathan Bolton
15. 11/25/02 – Dr. DiGiovanni Continued Depo
16. 11/25/02 – Dr. Trafton Continued Depo
17. 07/17/03 – Dean Koutsoubis
18. 08/13/03 – Ronald DeFrancesco Continued Depo
19. 08/13/03 – Thomas Maron Continued Depo

**Architectural and Engineering Diagrams**:

20.  Two volume set of architectural and engineering drawings for the Roland Hall renovation project prepared by Einhorn, Yaffee Prescott Engineers.

21.  Midland Fire Protection as built drawings, 8 sheets.

22.  Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 1 of 2**).

23.  Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 2 of 2**).

**Contracts**:

24.  Contract between the U.S. Coast Guard and Einhorn, Yaffee, Prescott dated April 29, 1996.

25.  Solicitation Offer and Award to Maron Construction Company August 7, 1996.

26.  Subcontract Agreement between Maron Construction and Midland Fire Protection executed November 4, 1996.

27.  Amendment of Solicitation/Modification of Contract dated April 14, 1997 (asbestos abatement).

28.  Contract Modification executed by Maron Construction dated June 17, 1997 with attachments, 10 pages.

**Roland Hall Renovation Contracts**:

29.  Contract Amendment/Modification dated August 7, 1996.

30.  Three large blueprints of Roland Hall Renovations.

31.  List of Subcontractors for Roland Hall renovation project.

32.  Two large blueprints of Einhorn, Yaffee, Prescott Architectural, pages 30 and 31.

**Photographs/Video**:

33.  90 photographs of various locations inside and outside of the Roland Hall Gymnasium taken by Dean Koutsoubis on November 15, 2002 – currently in possession of the defendants.

34.  20 pages of Roland Hall accident site photographs.

**Investigatory Reports**:

101.  October 11, 1996 Safety Plan from David Maron to the Coast Guard Contracting Division designating Ronald DeFrancesco as Safety Officer.

102.  May 12, 1997 2-page letter from Thomas Maron to Midland Fire Protection.

103.  May 12, 1997 Daily Construction Report executed by Ronald DeFrancesco.

104.  Investigatory report of Chief Warrant Officer Eric Stemmler dated May 28, 1997 with attachments, 15 pages.

105.  Job Site Weekly Safety Meetings reports.

**State Court Depositions**:

    108.  Deposition of Steven Shotteck – October 22, 1999
    109.  Deposition of Eric Stemmler – December 13, 1999
    110.  Deposition of Ronald Foster – April 4, 2000

**Request for Admissions**:

    111.  Defendants, Maron Construction, Inc. & Ronald DeFrancesco's response to Request for Admissions dated January 6, 2003.

**List of Proposed Witnesses to Support Proposed Finding of Fact**:

1.      Thomas J. Maron, President
       Maron Construction Company, Inc.
       180 Mancini Drive, Providence, RI  02909
       Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

2.      David Maron
       Maron Construction Company, Inc.
       180 Mancini Drive, Providence, RI  02909
       Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

3.      Jane M. Mardo, Vice President
       Maron Construction Company, Inc.
       180 Mancini Drive, Providence, RI  02909
       Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

4.      David B. Munroe, Midland Fire Protection Company
       6 Grandview Street, Coventry, RI  02810
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

5.      Donna Munroe
       6 Grandview Street, Coventry, RI  02810
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

6.    Jack DeMers, Midland Fire Protection
      6 Grandview Street, Coventry, RI  02810
      Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

7.    Robert Fontaine, Midland Fire Protection
      6 Grandview Street, Coventry, RI  02810
      Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

8.    Ronald DeFrancesco, Superintendent
      Maron Construction Company
      180 Mancini Drive, Providence, RI  02909
      Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

9.    C.W.O. Eric Stemmler, U.S. Coast Guard Academy
      New London, Connecticut
      Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

10.   Walter Stampfl, U.S. Coast Guard Academy
      New London, Connecticut
      Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

11.   Lee Archibald, U.S. Coast Guard Academy
      New London, Connecticut
      Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

12.   Greg Carabine, Assistant Facilities Engineer,
      Coast Guard Academy, New London, Connecticut
      Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

13.   Ronald Foster
      52 Maple Street, Attleboro Falls, MA
      Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

14.    Steven Shotteck
       61 Pine Street, Seekonk, MA  02771
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

15.    Randall Draughn
       He has been assigned to work for Midland on a project in North Carolina.  He lives
       at 5A Severna Court, Durham, NC  27704
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

16.    Joseph Strychasz
       165 Memorial Drive, Pawtucket, RI  02861
       Plaintiff.

17.    Sandra Colicci
       2218 Putnam Pike, Chepachet, RI
       Plaintiff.

18.    Joshua Strychasz
       2218 Putnam Pike, Chepachet, RI
       Son of plaintiffs.

19.    Alison L. Wood, Investigator
       Williams Investigative Services
       Conducted initial investigation of fall at Roland Hall.

20.    Ms. Victoria Worrell, Contract Specialist
       Facilities Design & Construction Center Atlantic
       5505 Robin Hood Road, Norfolk, VA  23513-2431
       Brief Description of Testimony – Coast Guard employee responsible for the issuance of
the contract between the United States Coast Guard and Maron Construction for the
renovation of Roland Hall.  Responsible for contract compliance.

21.    Mr. Wayne C. Webster, Project Manager for Roland Hall renovation
       Facilities Design & Construction Center Atlantic
       Norfolk, Virginia
       Brief Description of Testimony – Coast Guard employee responsible for the issuance of
the contract between the United States Coast Guard and Maron Construction for the
renovation of Roland Hall.  Responsible for contract compliance.

22.   Wanda Coresini, U.S. Coast Guard Academy
      Norfolk, Virginia
      Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

23.   James Gerou
      Einhorn, Yaffee, Prescott Architecture & Engineering
      P.O. Box 617, Albany, NY  12201
      Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the architecture and engineering of the Roland Hall renovation project.

24.   Peter Gravel
      45 Hyvue Drive, Newburgh, NY  12550
      Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the architecture and engineering of the Roland Hall renovation project.


**§B2-9**:  Any and all injuries sustained by Joseph Strychasz were caused in whole or in part by the negligence and carelessness of the plaintiff, Joseph Strychasz, in that he failed to make reasonable use of his senses and faculties and failed to exercise judgment and the degree of care that an ordinarily prudent construction worker in the plaintiff's position would have exercised while undertaking work on the premises under the circumstances and conditions present.

**SUPPORTING WITNESSES, DOCUMENTS, PLEADINGS & TANGIBLE EVIDENCE**:

At this juncture, it is anticipated that this proposed finding will be premised upon:

DEFENDANTS' EXHIBITS (identified in §B4, Proposed Exhibits):

A, B, C, D, E, F, G and H.

PLAINTIFFS' EXHIBITS (identified in §B4, Proposed Exhibits):

The defendants hereby incorporate herein all of the plaintiffs' proposed exhibits which were identified in plaintiffs' §A2 Proposed Finding of Facts as the premise for each of the fifteen liability facts proposed by plaintiffs.  Those exhibits are as follows: 1-34, 101-105, 108-111.

DEFENDANTS' WITNESSES (identified in §B5, Proposed Witnesses):

Gregory Carabine.

Commander Matthew Ruckert.

Personnel and Representatives of the United States Coast Guard Academy Public Works Department.

Personnel and representatives of the United States Coast Guard Academy Athletic Department and of the United States Coast Guard Academy personnel and cadets.

Dean Koutsoubis, P.E.

PLAINTIFFS' WITNESSES (identified in §B5, Proposed Witnesses):

The defendants hereby incorporate all of the plaintiffs' proposed witnesses which were identified in plaintiffs' §A5 Proposed Witnesses as the premise for each of the fifteen liability facts proposed by plaintiffs.  Those witnesses are as follows:

Thomas J. Maron, President, Maron Construction Company, Inc.

David Maron, Maron Construction Company, Inc.

Jane M. Mardo, Vice-President, Maron Construction Company, Inc.

David B. Munroe, Midland Fire Protection Company.

Donna Munroe, Midland Fire Protection Company.

Jack DeMers, Midland Fire Protection Company.

Robert Fontaine, Midland Fire Protection Company.

Ronald DeFrancesco, Maron Construction Company, Inc.

C.W.O. Eric Stemmler, U.S. Coast Guard Academy.

Walter Stampfl, U.S. Coast Guard Academy.

Leigh Archibold, U.S. Coast Guard Academy.

Greg Carabine, U.S. Coast Guard Academy.

Ronald Foster, employee of Midland Fire Protection Company.

Steven Shotteck, employee of Midland Fire Protection Company.

Randall Draughn, employee of Midland Fire Protection Company.

Joseph Strychasz, plaintiff.

Sandra Collici, plaintiff.

Joshua Strychasz, son of plaintiffs.

Allison L. Wood, investigator.

Victoria Worrell, Contract Specialist, Facilities Design and Construction Center, Atlantic Center.

Wayne C. Webster, Project Manager for Roland Hall renovation facilities design and construction, Atlantic Center.

Wanda Coresini, U.S. Coast Guard Academy.

James Gerou, Einhorn Yaffee Prescott Architecture and Engineering.

Peter Gravel, Einhorn Yaffee Prescott Architecture and Engineering.

**PLAINTIFFS' RESPONSE**:

**§C2-9:  Disagree** – Joseph Strychasz acted fairly and reasonably in the course of his employment at the Roland Hall renovation project.  He exercised due care and did not act negligently or carelessly in any respect.  The injuries sustained by Joseph Strychasz were not caused by the negligence or carelessness of the plaintiff.  It was the negligence of the defendants in directing Mr. Strychasz to work in the specified cell area when they knew or should have known that the transite panel on the floor of the cell area was not weight bearing and it was reasonably foreseeable that the plaintiff or others similarly situated would be caused to walk over the transite panel.  The defendant, Ronald DeFrancesco, failed to inspect the work area as he as required to ensure a safe work place environment for the various contractors.

Ronald DeFrancesco, as Superintendent and Safety Officer of the defendant, Maron, knew that the ventilation holes in the floor of the cell area had been replaced by the transite roofing boards, which were incapable of holding an adult person's weight.  As Safety Officer, he failed to secure the coverings for the outside openings, when he knew that the plaintiff, and other subcontractor employees, would be working in the cell area.  As Safety Officer, he failed to provide for a safe entrance and exit to the cell area from the gymnasium floor, when he knew that Midland's four employees were required to work in the cell area in the vicinity of these unsafe coverings on the ventilation holes.  As Safety Officer, Mr. DeFrancesco knew that during the demolition that Midland employees, and other subcontractor employees, used these openings in the gymnasium floor to enter and exit the cell area, requiring them to stand on

transite coverings.  As Safety Officer, he failed to make periodic safety inspections of the job-site everyday as required under the contract and safety plan submitted by Maron.  As Safety Officer, Mr. DeFrancesco failed, during his inspections of work areas, to observe areas of all subcontractors and take appropriate action to correct the unsafe conditions, as soon as possible, pursuant to the agreement with U.S.C.G.  As Safety Officer, Mr. DeFrancesco failed to make regular and frequent inspections over the entire site at least daily; and, at least once each week, jointly with trade contractor representatives, as required under the agreement with the U.S.C.G.  As Safety Officer, he failed to acquaint the plaintiff with the possibility of a fall and the hazards that could be expected in the cell area.  As Safety Officer, he failed to provide sufficient ladders for entrance and exit into the cell area with safe coverings, when he knew, or in the exercise of reasonable care, should have known that the employees were utilizing the various openings to the cell area for purposes of their work.

The plaintiff will rely on the following evidence as previously listed in Section A2 of the Plaintiff's Trial Preparation Order.

Specification of Supporting Evidence – The plaintiffs will rely on the following evidence (see attached Exhibit Numbers) to support this proposed finding of fact:

**<u>Depositions</u>**:

1. 09/20/02 – Ronald DeFrancesco
2. 09/20/02 – Thomas Maron
3. 10/07/02 – Gary Crakes, Ph.D.
4. 10/22/02 – Peter Gravel
5. 10/23/02 – James Gerou
6. 10/29/02 – Dr. Trafton
7. 10/30/02 – Dr. DiGiovanni

8. 11/06/02 – David Munroe
9. 11/07/02 – Sandra Strychasz
10. 11/07/02 – Joseph Strychasz
11. 11/08/02 – Lee Archibald
12. 11/13/02 – Wanda Coresini
13. 11/13/02 – Walter Stampfl
14. 11/20/02 – Dr. Jonathan Bolton
15. 11/25/02 – Dr. DiGiovanni Continued Depo
16. 11/25/02 – Dr. Trafton Continued Depo
17. 07/17/03 – Dean Koutsoubis
18. 08/13/03 – Ronald DeFrancesco Continued Depo
19. 08/13/03 – Thomas Maron Continued Depo

## Architectural and Engineering Diagrams:

20. Two volume set of architectural and engineering drawings for the Roland Hall renovation project prepared by Einhorn, Yaffee Prescott Engineers.

21. Midland Fire Protection as built drawings, 8 sheets.

22. Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 1 of 2**).

23. Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 2 of 2**).

## Contracts:

24. Contract between the U.S. Coast Guard and Einhorn, Yaffee, Prescott dated April 29, 1996.

25. Solicitation Offer and Award to Maron Construction Company August 7, 1996.

26. Subcontract Agreement between Maron Construction and Midland Fire Protection executed November 4, 1996.

27. Amendment of Solicitation/Modification of Contract dated April 14, 1997 (asbestos abatement).

28. Contract Modification executed by Maron Construction dated June 17, 1997 with attachments, 10 pages.

**Roland Hall Renovation Contracts**:

29.  Contract Amendment/Modification dated August 7, 1996.

30.  Three large blueprints of Roland Hall Renovations.

31.  List of Subcontractors for Roland Hall renovation project.

32.  Two large blueprints of Einhorn, Yaffee, Prescott Architectural, pages 30 and 31.

**Photographs/Video**:

33.  90 photographs of various locations inside and outside of the Roland Hall Gymnasium taken by Dean Koutsoubis on November 15, 2002 – currently in possession of the defendants.

34.  20 pages of Roland Hall accident site photographs.

**Investigatory Reports**:

101.  October 11, 1996 Safety Plan from David Maron to the Coast Guard Contracting Division designating Ronald DeFrancesco as Safety Officer.

102.  May 12, 1997 2-page letter from Thomas Maron to Midland Fire Protection.

103.  May 12, 1997 Daily Construction Report executed by Ronald DeFrancesco.

104.  Investigatory report of Chief Warrant Officer Eric Stemmler dated May 28, 1997 with attachments, 15 pages.

105.  Job Site Weekly Safety Meetings reports.

**State Court Depositions**:

108.  Deposition of Steven Shotteck – October 22, 1999
109.  Deposition of Eric Stemmler – December 13, 1999
110.  Deposition of Ronald Foster – April 4, 2000

**Request for Admissions**:

111.  Defendants, Maron Construction, Inc. & Ronald DeFrancesco's response to Request for Admissions dated January 6, 2003.

**List of Proposed Witnesses to Support Proposed Finding of Fact**:

1.    Thomas J. Maron, President
       Maron Construction Company, Inc.
       180 Mancini Drive, Providence, RI  02909
       Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

2.    David Maron
       Maron Construction Company, Inc.
       180 Mancini Drive, Providence, RI  02909
       Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

3.    Jane M. Mardo, Vice President
       Maron Construction Company, Inc.
       180 Mancini Drive, Providence, RI  02909
       Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

4.    David B. Munroe, Midland Fire Protection Company
       6 Grandview Street, Coventry, RI  02810
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

5.    Donna Munroe
       6 Grandview Street, Coventry, RI  02810
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

6.    Jack DeMers, Midland Fire Protection
       6 Grandview Street, Coventry, RI  02810
       Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

7.    Robert Fontaine, Midland Fire Protection
       6 Grandview Street, Coventry, RI  02810

Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

8.    Ronald DeFrancesco, Superintendent
      Maron Construction Company
      180 Mancini Drive, Providence, RI  02909
      Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

9.    C.W.O. Eric Stemmler, U.S. Coast Guard Academy
      New London, Connecticut
      Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

10.   Walter Stampfl, U.S. Coast Guard Academy
      New London, Connecticut
      Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

11.   Lee Archibald, U.S. Coast Guard Academy
      New London, Connecticut
      Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

12.   Greg Carabine, Assistant Facilities Engineer,
      Coast Guard Academy, New London, Connecticut
      Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

13.   Ronald Foster
      52 Maple Street, Attleboro Falls, MA
      Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

14.   Steven Shotteck
      61 Pine Street, Seekonk, MA  02771
      Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

15.   Randall Draughn

He has been assigned to work for Midland on a project in North Carolina.  He lives at 5A Severna Court, Durham, NC  27704
Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

16.     Joseph Strychasz
        165 Memorial Drive, Pawtucket, RI  02861
        Plaintiff.

17.     Sandra Colicci
        2218 Putnam Pike, Chepachet, RI
        Plaintiff.

18.     Joshua Strychasz
        2218 Putnam Pike, Chepachet, RI
        Son of plaintiffs.

19.     Alison L. Wood, Investigator
        Williams Investigative Services
        Conducted initial investigation of fall at Roland Hall.

20.     Ms. Victoria Worrell, Contract Specialist
        Facilities Design & Construction Center Atlantic
        5505 Robin Hood Road, Norfolk, VA  23513-2431
        Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

21.     Mr. Wayne C. Webster, Project Manager for Roland Hall renovation
        Facilities Design & Construction Center Atlantic
        Norfolk, Virginia
        Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

22.     Wanda Coresini, U.S. Coast Guard Academy
        Norfolk, Virginia
        Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

23.    James Gerou
       Einhorn, Yaffee, Prescott Architecture & Engineering
       P.O. Box 617, Albany, NY  12201
       Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the
architecture and engineering of the Roland Hall renovation project.

24.    Peter Gravel
       45 Hyvue Drive, Newburgh, NY  12550
       Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the
architecture and engineering of the Roland Hall renovation project.


**§B2-10**:  The defendants did not have constructive knowledge of the inadequacy of the transite

panel to support the weight of  a worker and his equipment before plaintiff fell through it.

**SUPPORTING WITNESSES, DOCUMENTS, PLEADINGS & TANGIBLE EVIDENCE**:

At this juncture, it is anticipated that this proposed finding will be premised upon:

DEFENDANTS' EXHIBITS (identified in §B4, Proposed Exhibits):

A, B, C, D, E, F, G and H.

PLAINTIFFS' EXHIBITS (identified in §B4, Proposed Exhibits):

The defendants hereby incorporate herein all of the plaintiffs' proposed exhibits which

were identified in plaintiffs' §A2 Proposed Finding of Facts as the premise for each of the

fifteen liability facts proposed by plaintiffs.  Those exhibits are as follows: 1-34, 101-105, 108-

111.

DEFENDANTS' WITNESSES (identified in §B5, Proposed Witnesses):

Gregory Carabine.

Commander Matthew Ruckert.

Personnel and Representatives of the United States Coast Guard Academy Public

Works Department.

Personnel and representatives of the United States Coast Guard Academy Athletic Department and of the United States Coast Guard Academy personnel and cadets.

Dean Koutsoubis, P.E.

PLAINTIFFS' WITNESSES (identified in §B5, Proposed Witnesses):

The defendants hereby incorporate all of the plaintiffs' proposed witnesses which were identified in plaintiffs' §A5 Proposed Witnesses as the premise for each of the fifteen liability facts proposed by plaintiffs. Those witnesses are as follows:

Thomas J. Maron, President, Maron Construction Company, Inc.

David Maron, Maron Construction Company, Inc.

Jane M. Mardo, Vice-President, Maron Construction Company, Inc.

David B. Munroe, Midland Fire Protection Company.

Donna Munroe, Midland Fire Protection Company.

Jack DeMers, Midland Fire Protection Company.

Robert Fontaine, Midland Fire Protection Company.

Ronald DeFrancesco, Maron Construction Company, Inc.

C.W.O. Eric Stemmler, U.S. Coast Guard Academy.

Walter Stampfl, U.S. Coast Guard Academy.

Leigh Archibold, U.S. Coast Guard Academy.

Greg Carabine, U.S. Coast Guard Academy.

Ronald Foster, employee of Midland Fire Protection Company.

Steven Shotteck, employee of Midland Fire Protection Company.

Randall Draughn, employee of Midland Fire Protection Company.

Joseph Strychasz, plaintiff.

Sandra Collici, plaintiff.

Joshua Strychasz, son of plaintiffs.

Allison L. Wood, investigator.

Victoria Worrell, Contract Specialist, Facilities Design and Construction Center, Atlantic Center.

Wayne C. Webster, Project Manager for Roland Hall renovation facilities design and construction, Atlantic Center.

Wanda Coresini, U.S. Coast Guard Academy.

James Gerou, Einhorn Yaffee Prescott Architecture and Engineering.

Peter Gravel, Einhorn Yaffee Prescott Architecture and Engineering.

**PLAINTIFFS' RESPONSE**:

**§C2-10:    Disagree** – The defendants did have constructive knowledge of the inadequacy of the transite panel to hold the weight of a worker and his equipment before the plaintiff fell through it.  At the very least, the defendants were aware of the architectural and engineering drawings for the Roland Hall renovation project prepared by Einhorn, Yaffee, Prescott Engineers.  The drawings specifically contemplated replacing the transite panel with permanent air vents.  The defendants had actual and constructive knowledge of the panels as they were visible from the exterior of the Roland Hall gymnasium.  In addition, prior to the

plaintiff working in the cell area, existing ventilation equipment was removed from the specific cell area.  Mr. DeFrancesco was aware of the transite panel on the floor of the cell area as he had observed it during the time that the ventilation equipment leading to the floor of the track area was removed.

Ronald DeFrancesco, as Superintendent and Safety Officer of the defendant, Maron, knew that the ventilation holes in the floor of the cell area had been replaced by the transite roofing boards, which were incapable of holding an adult person's weight.  As Safety Officer, he failed to secure the coverings for the outside openings, when he knew that the plaintiff, and other subcontractor employees, would be working in the cell area.  As Safety Officer, he failed to provide for a safe entrance and exit to the cell area from the gymnasium floor, when he knew that Midland's four employees were required to work in the cell area in the vicinity of these unsafe coverings on the ventilation holes.  As Safety Officer, Mr. DeFrancesco knew that during the demolition that Midland employees, and other subcontractor employees, used these openings in the gymnasium floor to enter and exit the cell area, requiring them to stand on transite coverings.  As Safety Officer, he failed to make periodic safety inspections of the job-site everyday as required under the contract and safety plan submitted by Maron.  As Safety Officer, Mr. DeFrancesco failed, during his inspections of work areas, to observe areas of all subcontractors and take appropriate action to correct the unsafe conditions, as soon as possible, pursuant to the agreement with U.S.C.G.  As Safety Officer, Mr. DeFrancesco failed to make regular and frequent inspections over the entire site at least daily; and, at least once each week, jointly with trade contractor representatives, as required under the agreement with

the U.S.C.G.  As Safety Officer, he failed to acquaint the plaintiff with the possibility of a fall and the hazards that could be expected in the cell area.  As Safety Officer, he failed to provide sufficient ladders for entrance and exit into the cell area with safe coverings, when he knew, or in the exercise of reasonable care, should have known that the employees were utilizing the various openings to the cell area for purposes of their work.

The plaintiff will rely on the following evidence as previously listed in Section A2 of the Plaintiff's Trial Preparation Order.

Specification of Supporting Evidence – The plaintiffs will rely on the following evidence (see attached Exhibit Numbers) to support this proposed finding of fact:

**Depositions**:

1.  09/20/02 – Ronald DeFrancesco
2.  09/20/02 – Thomas Maron
3.  10/07/02 – Gary Crakes, Ph.D.
4.  10/22/02 – Peter Gravel
5.  10/23/02 – James Gerou
6.  10/29/02 – Dr. Trafton
7.  10/30/02 – Dr. DiGiovanni
8.  11/06/02 – David Munroe
9.  11/07/02 – Sandra Strychasz
10. 11/07/02 – Joseph Strychasz
11. 11/08/02 – Lee Archibald
12. 11/13/02 – Wanda Coresini
13. 11/13/02 – Walter Stampfl
14. 11/20/02 – Dr. Jonathan Bolton
15. 11/25/02 – Dr. DiGiovanni Continued Depo
16. 11/25/02 – Dr. Trafton Continued Depo
17. 07/17/03 – Dean Koutsoubis
18. 08/13/03 – Ronald DeFrancesco Continued Depo
19. 08/13/03 – Thomas Maron Continued Depo

**Architectural and Engineering Diagrams**:

20.  Two volume set of architectural and engineering drawings for the Roland Hall renovation project prepared by Einhorn, Yaffee Prescott Engineers.

21.  Midland Fire Protection as built drawings, 8 sheets.

22.  Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 1 of 2**).

23.  Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 2 of 2**).

**Contracts**:

24.  Contract between the U.S. Coast Guard and Einhorn, Yaffee, Prescott dated April 29, 1996.

25.  Solicitation Offer and Award to Maron Construction Company August 7, 1996.

26.  Subcontract Agreement between Maron Construction and Midland Fire Protection executed November 4, 1996.

27.  Amendment of Solicitation/Modification of Contract dated April 14, 1997 (asbestos abatement).

28.  Contract Modification executed by Maron Construction dated June 17, 1997 with attachments, 10 pages.

**Roland Hall Renovation Contracts**:

29.  Contract Amendment/Modification dated August 7, 1996.

30.  Three large blueprints of Roland Hall Renovations.

31.  List of Subcontractors for Roland Hall renovation project.

32.  Two large blueprints of Einhorn, Yaffee, Prescott Architectural, pages 30 and 31.

**Photographs/Video**:

33.  90 photographs of various locations inside and outside of the Roland Hall Gymnasium taken by Dean Koutsoubis on November 15, 2002 – currently in possession of the defendants.

34.  20 pages of Roland Hall accident site photographs.

**Investigatory Reports**:

101.  October 11, 1996 Safety Plan from David Maron to the Coast Guard Contracting Division designating Ronald DeFrancesco as Safety Officer.

102.  May 12, 1997 2-page letter from Thomas Maron to Midland Fire Protection.

103.  May 12, 1997 Daily Construction Report executed by Ronald DeFrancesco.

104.  Investigatory report of Chief Warrant Officer Eric Stemmler dated May 28, 1997 with attachments, 15 pages.

105.  Job Site Weekly Safety Meetings reports.

**State Court Depositions**:

108.  Deposition of Steven Shotteck – October 22, 1999
109.  Deposition of Eric Stemmler – December 13, 1999
110.  Deposition of Ronald Foster – April 4, 2000

**Request for Admissions**:

111.  Defendants, Maron Construction, Inc. & Ronald DeFrancesco's response to Request for Admissions dated January 6, 2003.

**List of Proposed Witnesses to Support Proposed Finding of Fact**:

1.      Thomas J. Maron, President
        Maron Construction Company, Inc.
        180 Mancini Drive, Providence, RI  02909
        Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

2.      David Maron
        Maron Construction Company, Inc.

180 Mancini Drive, Providence, RI 02909
Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

3.    Jane M. Mardo, Vice President
      Maron Construction Company, Inc.
      180 Mancini Drive, Providence, RI 02909
      Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

4.    David B. Munroe, Midland Fire Protection Company
      6 Grandview Street, Coventry, RI 02810
      Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

5.    Donna Munroe
      6 Grandview Street, Coventry, RI 02810
      Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

6.    Jack DeMers, Midland Fire Protection
      6 Grandview Street, Coventry, RI 02810
      Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

7.    Robert Fontaine, Midland Fire Protection
      6 Grandview Street, Coventry, RI 02810
      Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

8.    Ronald DeFrancesco, Superintendent
      Maron Construction Company
      180 Mancini Drive, Providence, RI 02909
      Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

9.    C.W.O. Eric Stemmler, U.S. Coast Guard Academy
      New London, Connecticut
      Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

10.     Walter Stampfl, U.S. Coast Guard Academy
        New London, Connecticut
        Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland
Hall rehabilitation project.

11.     Lee Archibald, U.S. Coast Guard Academy
        New London, Connecticut
        Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland
Hall rehabilitation project.

12.     Greg Carabine, Assistant Facilities Engineer,
        Coast Guard Academy, New London, Connecticut
        Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland
Hall rehabilitation project.

13.     Ronald Foster
        52 Maple Street, Attleboro Falls, MA
        Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

14.     Steven Shotteck
        61 Pine Street, Seekonk, MA  02771
        Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

15.     Randall Draughn
        He has been assigned to work for Midland on a project in North Carolina.  He lives
        at 5A Severna Court, Durham, NC  27704
        Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for
the renovation project at Roland Hall – fact witness.

16.     Joseph Strychasz
        165 Memorial Drive, Pawtucket, RI  02861
        Plaintiff.

17.     Sandra Colicci
        2218 Putnam Pike, Chepachet, RI
        Plaintiff.

18.     Joshua Strychasz
        2218 Putnam Pike, Chepachet, RI

Son of plaintiffs.

19.    Alison L. Wood, Investigator
       Williams Investigative Services
       Conducted initial investigation of fall at Roland Hall.

20.    Ms. Victoria Worrell, Contract Specialist
       Facilities Design & Construction Center Atlantic
       5505 Robin Hood Road, Norfolk, VA  23513-2431
       Brief Description of Testimony – Coast Guard employee responsible for the issuance of
the contract between the United States Coast Guard and Maron Construction for the
renovation of Roland Hall.  Responsible for contract compliance.

21.    Mr. Wayne C. Webster, Project Manager for Roland Hall renovation
       Facilities Design & Construction Center Atlantic
       Norfolk, Virginia
       Brief Description of Testimony – Coast Guard employee responsible for the issuance of
the contract between the United States Coast Guard and Maron Construction for the
renovation of Roland Hall.  Responsible for contract compliance.

22.    Wanda Coresini, U.S. Coast Guard Academy
       Norfolk, Virginia
       Brief Description of Testimony – Coast Guard employee responsible for the issuance of
the contract between the United States Coast Guard and Maron Construction for the
renovation of Roland Hall.  Responsible for contract compliance.

23.    James Gerou
       Einhorn, Yaffee, Prescott Architecture & Engineering
       P.O. Box 617, Albany, NY  12201
       Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the
architecture and engineering of the Roland Hall renovation project.

24.    Peter Gravel
       45 Hyvue Drive, Newburgh, NY  12550
       Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the
architecture and engineering of the Roland Hall renovation project.

**§B2-11**:  The defendants did not have actual or constructive notice of the inadequacy of the transite panel to support the weight of a worker and his equipment before plaintiff fell through it.

**SUPPORTING WITNESSES, DOCUMENTS, PLEADINGS & TANGIBLE EVIDENCE**:

At this juncture, it is anticipated that this proposed finding will be premised upon:

DEFENDANTS' EXHIBITS (identified in §B4, Proposed Exhibits):

A, B, C, D, E, F, G and H.

PLAINTIFFS' EXHIBITS (identified in §B4, Proposed Exhibits):

The defendants hereby incorporate herein all of the plaintiffs' proposed exhibits which were identified in plaintiffs' §A2 Proposed Finding of Facts as the premise for each of the fifteen liability facts proposed by plaintiffs.  Those exhibits are as follows: 1-34, 101-105, 108-111.

DEFENDANTS' WITNESSES (identified in §B5, Proposed Witnesses):

Gregory Carabine.

Commander Matthew Ruckert.

Personnel and Representatives of the United States Coast Guard Academy Public Works Department.

Personnel and representatives of the United States Coast Guard Academy Athletic Department and of the United States Coast Guard Academy personnel and cadets.

Dean Koutsoubis, P.E.

PLAINTIFFS' WITNESSES (identified in §B5, Proposed Witnesses):

The defendants hereby incorporate all of the plaintiffs' proposed witnesses which were identified in plaintiffs' §A5 Proposed Witnesses as the premise for each of the fifteen liability facts proposed by plaintiffs. Those witnesses are as follows:

Thomas J. Maron, President, Maron Construction Company, Inc.

David Maron, Maron Construction Company, Inc.

Jane M. Mardo, Vice-President, Maron Construction Company, Inc.

David B. Munroe, Midland Fire Protection Company.

Donna Munroe, Midland Fire Protection Company.

Jack DeMers, Midland Fire Protection Company.

Robert Fontaine, Midland Fire Protection Company.

Ronald DeFrancesco, Maron Construction Company, Inc.

C.W.O. Eric Stemmler, U.S. Coast Guard Academy.

Walter Stampfl, U.S. Coast Guard Academy.

Leigh Archibold, U.S. Coast Guard Academy.

Greg Carabine, U.S. Coast Guard Academy.

Ronald Foster, employee of Midland Fire Protection Company.

Steven Shotteck, employee of Midland Fire Protection Company.

Randall Draughn, employee of Midland Fire Protection Company.

Joseph Strychasz, plaintiff.

Sandra Collici, plaintiff.

Joshua Strychasz, son of plaintiffs.

Allison L. Wood, investigator.

Victoria Worrell, Contract Specialist, Facilities Design and Construction Center, Atlantic Center.

Wayne C. Webster, Project Manager for Roland Hall renovation facilities design and construction, Atlantic Center.

Wanda Coresini, U.S. Coast Guard Academy.

James Gerou, Einhorn Yaffee Prescott Architecture and Engineering.

Peter Gravel, Einhorn Yaffee Prescott Architecture and Engineering.

**PLAINTIFFS' RESPONSE**:

**§C2-11:    Disagree** – The defendants did have constructive knowledge of the inadequacy of the transite panel to hold the weight of a worker and his equipment before the plaintiff fell through it.  At the very least, the defendants were aware of the architectural and engineering drawings for the Roland Hall renovation project prepared by Einhorn, Yaffee, Prescott Engineers.  The drawings specifically contemplated replacing the transite panel with permanent air vents.  The defendants had actual and constructive knowledge of the panels as they were visible from the exterior of the Roland Hall gymnasium.  In addition, prior to the plaintiff working in the cell area, existing ventilation equipment was removed from the specific cell area.  Mr. DeFrancesco was aware of the transite panel on the floor of the cell area as he had observed it during the time that the ventilation equipment leading to the floor of the track area was removed.

Ronald DeFrancesco, as Superintendent and Safety Officer of the defendant, Maron, knew that the ventilation holes in the floor of the cell area had been replaced by the transite roofing boards, which were incapable of holding an adult person's weight. As Safety Officer, he failed to secure the coverings for the outside openings, when he knew that the plaintiff, and other subcontractor employees, would be working in the cell area. As Safety Officer, he failed to provide for a safe entrance and exit to the cell area from the gymnasium floor, when he knew that Midland's four employees were required to work in the cell area in the vicinity of these unsafe coverings on the ventilation holes. As Safety Officer, Mr. DeFrancesco knew that during the demolition that Midland employees, and other subcontractor employees, used these openings in the gymnasium floor to enter and exit the cell area, requiring them to stand on transite coverings. As Safety Officer, he failed to make periodic safety inspections of the job-site everyday as required under the contract and safety plan submitted by Maron. As Safety Officer, Mr. DeFrancesco failed, during his inspections of work areas, to observe areas of all subcontractors and take appropriate action to correct the unsafe conditions, as soon as possible, pursuant to the agreement with U.S.C.G. As Safety Officer, Mr. DeFrancesco failed to make regular and frequent inspections over the entire site at least daily; and, at least once each week, jointly with trade contractor representatives, as required under the agreement with the U.S.C.G. As Safety Officer, he failed to acquaint the plaintiff with the possibility of a fall and the hazards that could be expected in the cell area. As Safety Officer, he failed to provide sufficient ladders for entrance and exit into the cell area with safe coverings, when he knew, or

in the exercise of reasonable care, should have known that the employees were utilizing the various openings to the cell area for purposes of their work.

The plaintiff will rely on the following evidence as previously listed in Section A2 of the Plaintiff's Trial Preparation Order.

Specification of Supporting Evidence – The plaintiffs will rely on the following evidence (see attached Exhibit Numbers) to support this proposed finding of fact:

**Depositions**:

1. 09/20/02 – Ronald DeFrancesco
2. 09/20/02 – Thomas Maron
3. 10/07/02 – Gary Crakes, Ph.D.
4. 10/22/02 – Peter Gravel
5. 10/23/02 – James Gerou
6. 10/29/02 – Dr. Trafton
7. 10/30/02 – Dr. DiGiovanni
8. 11/06/02 – David Munroe
9. 11/07/02 – Sandra Strychasz
10. 11/07/02 – Joseph Strychasz
11. 11/08/02 – Lee Archibald
12. 11/13/02 – Wanda Coresini
13. 11/13/02 – Walter Stampfl
14. 11/20/02 – Dr. Jonathan Bolton
15. 11/25/02 – Dr. DiGiovanni Continued Depo
16. 11/25/02 – Dr. Trafton Continued Depo
17. 07/17/03 – Dean Koutsoubis
18. 08/13/03 – Ronald DeFrancesco Continued Depo
19. 08/13/03 – Thomas Maron Continued Depo

**Architectural and Engineering Diagrams**:

20. Two volume set of architectural and engineering drawings for the Roland Hall renovation project prepared by Einhorn, Yaffee Prescott Engineers.

21. Midland Fire Protection as built drawings, 8 sheets.

22.  Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 1 of 2**).

23.  Specifications for Roland Hall renovations prepared by Einhorn, Yaffee Prescott on July 30, 1996 (**Volume 2 of 2**).

**Contracts**:

24.  Contract between the U.S. Coast Guard and Einhorn, Yaffee, Prescott dated April 29, 1996.

25.  Solicitation Offer and Award to Maron Construction Company August 7, 1996.

26.  Subcontract Agreement between Maron Construction and Midland Fire Protection executed November 4, 1996.

27.  Amendment of Solicitation/Modification of Contract dated April 14, 1997 (asbestos abatement).

28.  Contract Modification executed by Maron Construction dated June 17, 1997 with attachments, 10 pages.

**Roland Hall Renovation Contracts**:

29.  Contract Amendment/Modification dated August 7, 1996.

30.  Three large blueprints of Roland Hall Renovations.

31.  List of Subcontractors for Roland Hall renovation project.

32.  Two large blueprints of Einhorn, Yaffee, Prescott Architectural, pages 30 and 31.

**Photographs/Video**:

33.  90 photographs of various locations inside and outside of the Roland Hall Gymnasium taken by Dean Koutsoubis on November 15, 2002 – currently in possession of the defendants.

34.  20 pages of Roland Hall accident site photographs.

**Investigatory Reports**:

101.  October 11, 1996 Safety Plan from David Maron to the Coast Guard Contracting Division designating Ronald DeFrancesco as Safety Officer.

102.  May 12, 1997 2-page letter from Thomas Maron to Midland Fire Protection.

103.  May 12, 1997 Daily Construction Report executed by Ronald DeFrancesco.

104.  Investigatory report of Chief Warrant Officer Eric Stemmler dated May 28, 1997 with attachments, 15 pages.

105.  Job Site Weekly Safety Meetings reports.

**State Court Depositions**:

108.  Deposition of Steven Shotteck – October 22, 1999
109.  Deposition of Eric Stemmler – December 13, 1999
110.  Deposition of Ronald Foster – April 4, 2000

**Request for Admissions**:

111.  Defendants, Maron Construction, Inc. & Ronald DeFrancesco's response to Request for Admissions dated January 6, 2003.

**List of Proposed Witnesses to Support Proposed Finding of Fact**:

1.    Thomas J. Maron, President
      Maron Construction Company, Inc.
      180 Mancini Drive, Providence, RI  02909
      Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

2.    David Maron
      Maron Construction Company, Inc.
      180 Mancini Drive, Providence, RI  02909
      Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

3.    Jane M. Mardo, Vice President
      Maron Construction Company, Inc.
      180 Mancini Drive, Providence, RI  02909

Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

4.    David B. Munroe, Midland Fire Protection Company
      6 Grandview Street, Coventry, RI  02810
      Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

5.    Donna Munroe
      6 Grandview Street, Coventry, RI  02810
      Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

6.    Jack DeMers, Midland Fire Protection
      6 Grandview Street, Coventry, RI  02810
      Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

7.    Robert Fontaine, Midland Fire Protection
      6 Grandview Street, Coventry, RI  02810
      Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

8.    Ronald DeFrancesco, Superintendent
      Maron Construction Company
      180 Mancini Drive, Providence, RI  02909
      Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

9.    C.W.O. Eric Stemmler, U.S. Coast Guard Academy
      New London, Connecticut
      Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

10.   Walter Stampfl, U.S. Coast Guard Academy
      New London, Connecticut
      Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

11.   Lee Archibald, U.S. Coast Guard Academy
      New London, Connecticut

Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

12. Greg Carabine, Assistant Facilities Engineer,
Coast Guard Academy, New London, Connecticut
Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

13. Ronald Foster
52 Maple Street, Attleboro Falls, MA
Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

14. Steven Shotteck
61 Pine Street, Seekonk, MA  02771
Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

15. Randall Draughn
He has been assigned to work for Midland on a project in North Carolina.  He lives at 5A Severna Court, Durham, NC  27704
Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

16. Joseph Strychasz
165 Memorial Drive, Pawtucket, RI  02861
Plaintiff.

17. Sandra Colicci
2218 Putnam Pike, Chepachet, RI
Plaintiff.

18. Joshua Strychasz
2218 Putnam Pike, Chepachet, RI
Son of plaintiffs.

19. Alison L. Wood, Investigator
Williams Investigative Services
Conducted initial investigation of fall at Roland Hall.

20. Ms. Victoria Worrell, Contract Specialist

Facilities Design & Construction Center Atlantic
5505 Robin Hood Road, Norfolk, VA  23513-2431
Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

21.    Mr. Wayne C. Webster, Project Manager for Roland Hall renovation
Facilities Design & Construction Center Atlantic
Norfolk, Virginia
Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

22.    Wanda Coresini, U.S. Coast Guard Academy
Norfolk, Virginia
Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

23.    James Gerou
Einhorn, Yaffee, Prescott Architecture & Engineering
P.O. Box 617, Albany, NY  12201
Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the architecture and engineering of the Roland Hall renovation project.

24.    Peter Gravel
45 Hyvue Drive, Newburgh, NY  12550
Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the architecture and engineering of the Roland Hall renovation project.

**§B2-12**:    The plaintiff, Joseph Strychasz, underwent a functional capacity evaluation in January and February, 1999, which qualified him to return to light work, as documented by the Donnelly Center and Dr. Peter Trafton.

**SUPPORTING WITNESSES, DOCUMENTS, PLEADINGS & TANGIBLE EVIDENCE**:

At this juncture, it is anticipated that this proposed finding will be premised upon:

DEFENDANTS' EXHIBITS (identified in §B4, Proposed Exhibits):

I – W.

PLAINTIFFS' EXHIBITS (identified in §B4, Proposed Exhibits):

The defendants hereby incorporate herein all of the plaintiffs' proposed exhibits which were identified in plaintiffs' §A4 exhibits relating to damages as follows: 3, 6, 7, 9-10, 14-16, 37, 38-83, 84-100 and 106.

DEFENDANTS' WITNESSES (identified in §B5, Proposed Witnesses):

Paul F. Murgo, M.Ed., C.R.C., C.D.M.S, Vocational Rehabilitation Counselor.

PLAINTIFFS' WITNESSES (identified in §B5, Proposed Witnesses):

The defendants hereby incorporate all of the plaintiffs' proposed witnesses which were identified in plaintiffs' §A5 proposed witnesses on the questions of damages. Those witnesses are as follows:

1    Joseph Strychasz,
     165 Memorial Drive, Pawtucket, RI  02861
     Plaintiff.

2.   Sandra Colicci
     2218 Putnam Pike, Chepachet, RI
     Plaintiff.

3.   Dr. Peter Trafton, University Orthopedics
     P.O. Box 1119, Providence, RI  02901
     Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

4.   Dr. Christopher DiGiovanni
     P.O. Box 1119, Providence, RI  02901
     Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

5.    Dr. Michael Hulstyn
      P.O. Box 1119, Providence, RI  02901
      Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

6.    Dr. Arnold-Peter C. Weiss
      P.O. Box 1119, Providence, RI  02901
      Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

7.    Dr. Louis Sorrentino
      64 Pitman 119, Providence, RI  02901
      Brief Description of Testimony – Psychiatrist treating Joseph Strychasz post accident.

8.    Record keeper, Lawrence & Memorial Hospital
      P.O. Box 1471, New London, CT  06320
      Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

9.    Representative of Anesthesia Associates of New London
      P.O Box 390, New London, CT  06320
      Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

10.   Representative of Rhode Island Hospital
      2 Dudley Street, Providence, RI
      Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

11.   Representative of New England Sports Therapy & Fitness
      Oak Hill Place, 407 East Ave., Pawtucket, RI  02860
      Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

12.   Dr. Andrew J. Nelson
      University Orthopedics, Medical Office Center
      2 Dudley Street, Providence, RI  02905
      Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

13.   Representative of Therapists Feinberg & Snelgrove
      Occupational Therapy
      University Orthopedics, Providence, RI  02905
      Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

14.   Dr. Michael T. LeGeyt
      University Orthopedics, Medical Office Center
      2 Dudley Street, Providence, RI  02905
      Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

15.   Therapists Maher and Gannon
      University Orthopedics, Providence, RI  02905
      Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

16.   Dr. Jonathan Bolton
      469 Angel Street, Providence, RI  02906
      Brief Description of Testimony – Psychiatrist treating Joseph Strychasz post accident.

17.   Therapist Cooper, OT and PT
      University Orthopedics, Providence, RI  02905
      Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

18.   Representative of the Dr. John E. Donley Rehabilitation Center
      249 Blackstone Boulevard, Providence, RI  02906-5899
      Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

**PLAINTIFFS' RESPONSE**:

   **§C2-12:  Disagree** – The plaintiff was not able to return to light work as he was required

to undergo additional surgeries by Dr. DiGiovanni which rendered him unable to work.  He is

permanently disabled as a result of the injuries sustained by the negligence of the defendants.

In support of this assertion, the plaintiff would rely upon the proposed witnesses and evidence listed above by the defendants.

**§B2-13**:  The plaintiff, Joseph Strychasz, was capable of returning to work within the physical limitations of his injury and that he had the ability to work in different capacities and in different professions beginning in August, 2002, as determined by Dr. Christopher DiGiovanni.

**SUPPORTING WITNESSES, DOCUMENTS, PLEADINGS & TANGIBLE EVIDENCE**:

At this juncture, it is anticipated that this proposed finding will be premised upon:

DEFENDANTS' EXHIBITS (identified in §B4, Proposed Exhibits):

I – W.

PLAINTIFFS' EXHIBITS (identified in §B4, Proposed Exhibits):

The defendants hereby incorporate herein all of the plaintiffs' proposed exhibits which were identified in plaintiffs' §A4 exhibits relating to damages as follows:  3, 6, 7, 9-10, 14-16, 37, 38-83, 84-100 and 106.

DEFENDANTS' WITNESSES (identified in §B5, Proposed Witnesses):

Paul F. Murgo, M.Ed., C.R.C., C.D.M.S, Vocational Rehabilitation Counselor.

PLAINTIFFS' WITNESSES (identified in §B5, Proposed Witnesses):

The defendants hereby incorporate all of the plaintiffs' proposed witnesses which were identified in plaintiffs' §A5 proposed witnesses on the questions of damages.  Those witnesses are as follows:

1      Joseph Strychasz,

165 Memorial Drive, Pawtucket, RI  02861
Plaintiff.

2.    Sandra Colicci
2218 Putnam Pike, Chepachet, RI
Plaintiff.

3.    Dr. Peter Trafton, University Orthopedics
P.O. Box 1119, Providence, RI  02901
Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

4.    Dr. Christopher DiGiovanni
P.O. Box 1119, Providence, RI  02901
Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

5.    Dr. Michael Hulstyn
P.O. Box 1119, Providence, RI  02901
Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

6.    Dr. Arnold-Peter C. Weiss
P.O. Box 1119, Providence, RI  02901
Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

7.    Dr. Louis Sorrentino
64 Pitman 119, Providence, RI  02901
Brief Description of Testimony – Psychiatrist treating Joseph Strychasz post accident.

8.    Record keeper, Lawrence & Memorial Hospital
P.O. Box 1471, New London, CT  06320
Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

9.    Representative of Anesthesia Associates of New London
P.O Box 390, New London, CT  06320
Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

10.     Representative of Rhode Island Hospital
        2 Dudley Street, Providence, RI
        Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

11.     Representative of New England Sports Therapy & Fitness
        Oak Hill Place, 407 East Ave., Pawtucket, RI  02860
        Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

12.     Dr. Andrew J. Nelson
        University Orthopedics, Medical Office Center
        2 Dudley Street, Providence, RI  02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

13.     Representative of Therapists Feinberg & Snelgrove
        Occupational Therapy
        University Orthopedics, Providence, RI  02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

14.     Dr. Michael T. LeGeyt
        University Orthopedics, Medical Office Center
        2 Dudley Street, Providence, RI  02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

15.     Therapists Maher and Gannon
        University Orthopedics, Providence, RI  02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

16.     Dr. Jonathan Bolton
        469 Angel Street, Providence, RI  02906
        Brief Description of Testimony – Psychiatrist treating Joseph Strychasz post accident.

17.     Therapist Cooper, OT and PT
        University Orthopedics, Providence, RI  02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

18.    Representative of the Dr. John E. Donley Rehabilitation Center
       249 Blackstone Boulevard, Providence, RI  02906-5899
       Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

**PLAINTIFFS' RESPONSE**:

**§C2-13:   Disagree** – The plaintiff was not capable to returning to work within the

limitations of his injury and to begin a different profession.  He is permanently disabled as a

result of the injuries sustained by the negligence of the defendants.

In support of this assertion, the plaintiff would rely upon the proposed witnesses and

evidence listed above by the defendants.


**§B2-14**:    The plaintiff, Joseph Strychasz, was recommended to undergo vocational

rehabilitation and undergo additional functional capacity evaluations from 1999 through 2002,

neither of which he did.

**SUPPORTING WITNESSES, DOCUMENTS, PLEADINGS & TANGIBLE EVIDENCE**:

At this juncture, it is anticipated that this proposed finding will be premised upon:

DEFENDANTS' EXHIBITS (identified in §B4, Proposed Exhibits):

I – W.

PLAINTIFFS' EXHIBITS (identified in §B4, Proposed Exhibits):

The defendants hereby incorporate herein all of the plaintiffs' proposed exhibits which

were identified in plaintiffs' §A4 exhibits relating to damages as follows:  3, 6, 7, 9-10, 14-16,

37, 38-83, 84-100 and 106.

<u>DEFENDANTS' WITNESSES</u> (identified in §B5, Proposed Witnesses):

Paul F. Murgo, M.Ed., C.R.C., C.D.M.S, Vocational Rehabilitation Counselor.

<u>PLAINTIFFS' WITNESSES</u> (identified in §B5, Proposed Witnesses):

The defendants hereby incorporate all of the plaintiffs' proposed witnesses which were

identified in plaintiffs' §A5 proposed witnesses on the questions of damages.  Those witnesses

are as follows:

1      Joseph Strychasz,
       165 Memorial Drive, Pawtucket, RI  02861
       Plaintiff.

2.     Sandra Colicci
       2218 Putnam Pike, Chepachet, RI
       Plaintiff.

3.     Dr. Peter Trafton, University Orthopedics
       P.O. Box 1119, Providence, RI  02901
       Brief Description of Testimony – Physician associated with University Orthopedics who
provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

4.     Dr. Christopher DiGiovanni
       P.O. Box 1119, Providence, RI  02901
       Brief Description of Testimony – Physician associated with University Orthopedics who
provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

5.     Dr. Michael Hulstyn
       P.O. Box 1119, Providence, RI  02901
       Brief Description of Testimony – Physician associated with University Orthopedics who
provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

6.     Dr. Arnold-Peter C. Weiss
       P.O. Box 1119, Providence, RI  02901
       Brief Description of Testimony – Physician associated with University Orthopedics who
provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

7.     Dr. Louis Sorrentino

64 Pitman 119, Providence, RI  02901
Brief Description of Testimony – Psychiatrist treating Joseph Strychasz post accident.

8.    Record keeper, Lawrence & Memorial Hospital
P.O. Box 1471, New London, CT  06320
Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

9.    Representative of Anesthesia Associates of New London
P.O Box 390, New London, CT  06320
Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

10.    Representative of Rhode Island Hospital
2 Dudley Street, Providence, RI
Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

11.    Representative of New England Sports Therapy & Fitness
Oak Hill Place, 407 East Ave., Pawtucket, RI  02860
Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

12.    Dr. Andrew J. Nelson
University Orthopedics, Medical Office Center
2 Dudley Street, Providence, RI  02905
Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

13.    Representative of Therapists Feinberg & Snelgrove
Occupational Therapy
University Orthopedics, Providence, RI  02905
Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

14.    Dr. Michael T. LeGeyt
University Orthopedics, Medical Office Center
2 Dudley Street, Providence, RI  02905
Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

15.     Therapists Maher and Gannon
        University Orthopedics, Providence, RI  02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

16.     Dr. Jonathan Bolton
        469 Angel Street, Providence, RI  02906
        Brief Description of Testimony – Psychiatrist treating Joseph Strychasz post accident.

17.     Therapist Cooper, OT and PT
        University Orthopedics, Providence, RI  02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

18.     Representative of the Dr. John E. Donley Rehabilitation Center
        249 Blackstone Boulevard, Providence, RI  02906-5899
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

**PLAINTIFFS' RESPONSE**:

**§C2-14:  Disagree** – The plaintiff did undergo vocational rehabilitation and functional capacity evaluations to the extent that he was able to, given his multiple surgeries and subsequent rehabilitation.  He has been registered with the Department of Labor for the State of Rhode Island in attempting to seek employment.  He is permanently disabled as a result of the injuries sustained by the negligence of the defendants.

In support of this assertion, the plaintiff would rely upon the proposed witnesses and evidence listed above by the defendants.

**§B2-15**:  The plaintiff, Joseph Strychasz, will not require any additional surgery, physical therapy or medical care associated with orthopedic injuries, and will not need prescription pain

medicines due to his injuries, as verified by Dr. Christopher DiGiovanni, the plaintiff's orthopedic physician.

**SUPPORTING WITNESSES, DOCUMENTS, PLEADINGS & TANGIBLE EVIDENCE**:

At this juncture, it is anticipated that this proposed finding will be premised upon:

DEFENDANTS' EXHIBITS (identified in §B4, Proposed Exhibits):

I – W.

PLAINTIFFS' EXHIBITS (identified in §B4, Proposed Exhibits):

The defendants hereby incorporate herein all of the plaintiffs' proposed exhibits which were identified in plaintiffs' §A4 exhibits relating to damages as follows:  3, 6, 7, 9-10, 14-16, 37, 38-83, 84-100 and 106.

DEFENDANTS' WITNESSES (identified in §B5, Proposed Witnesses):

Paul F. Murgo, M.Ed., C.R.C., C.D.M.S, Vocational Rehabilitation Counselor.

PLAINTIFFS' WITNESSES (identified in §B5, Proposed Witnesses):

The defendants hereby incorporate all of the plaintiffs' proposed witnesses which were identified in plaintiffs' §A5 proposed witnesses on the questions of damages.  Those witnesses are as follows:

1    Joseph Strychasz,
     165 Memorial Drive, Pawtucket, RI  02861
     Plaintiff.

2.   Sandra Colicci
     2218 Putnam Pike, Chepachet, RI
     Plaintiff.

3.   Dr. Peter Trafton, University Orthopedics

P.O. Box 1119, Providence, RI  02901
Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

4.     Dr. Christopher DiGiovanni
P.O. Box 1119, Providence, RI  02901
Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

5.     Dr. Michael Hulstyn
P.O. Box 1119, Providence, RI  02901
Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

6.     Dr. Arnold-Peter C. Weiss
P.O. Box 1119, Providence, RI  02901
Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

7.     Dr. Louis Sorrentino
64 Pitman 119, Providence, RI  02901
Brief Description of Testimony – Psychiatrist treating Joseph Strychasz post accident.

8.     Record keeper, Lawrence & Memorial Hospital
P.O. Box 1471, New London, CT  06320
Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

9.     Representative of Anesthesia Associates of New London
P.O Box 390, New London, CT  06320
Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

10.    Representative of Rhode Island Hospital
2 Dudley Street, Providence, RI
Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

11.    Representative of New England Sports Therapy & Fitness
Oak Hill Place, 407 East Ave., Pawtucket, RI  02860

Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

12.    Dr. Andrew J. Nelson
       University Orthopedics, Medical Office Center
       2 Dudley Street, Providence, RI  02905
       Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

13.    Representative of Therapists Feinberg & Snelgrove
       Occupational Therapy
       University Orthopedics, Providence, RI  02905
       Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

14.    Dr. Michael T. LeGeyt
       University Orthopedics, Medical Office Center
       2 Dudley Street, Providence, RI  02905
       Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

15.    Therapists Maher and Gannon
       University Orthopedics, Providence, RI  02905
       Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

16.    Dr. Jonathan Bolton
       469 Angel Street, Providence, RI  02906
       Brief Description of Testimony – Psychiatrist treating Joseph Strychasz post accident.

17.    Therapist Cooper, OT and PT
       University Orthopedics, Providence, RI  02905
       Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

18.    Representative of the Dr. John E. Donley Rehabilitation Center
       249 Blackstone Boulevard, Providence, RI  02906-5899
       Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

**PLAINTIFFS' RESPONSE**:

**§C2-15:  Disagree** – The plaintiff will require additional physical therapy and medical care as a result of his orthopedic injuries.  The injuries are permanent in nature.  His altered gait will cause him lifelong distress as well as functionally impair his bones and joints.  He will be required to undergo medical treatment for the balance of his natural life.  He is permanently disabled as a result of the injuries sustained by the negligence of the defendants.

In support of this assertion, the plaintiff would rely upon the proposed witnesses and evidence listed above by the defendants.

**§B2-16**:    The injuries sustained by the plaintiff, Joseph Strychasz, in his left wrist were surgically repaired and the plaintiff was left with no residual disability which would disable him from work.

**SUPPORTING WITNESSES, DOCUMENTS, PLEADINGS & TANGIBLE EVIDENCE**:

At this juncture, it is anticipated that this proposed finding will be premised upon:

DEFENDANTS' EXHIBITS (identified in §B4, Proposed Exhibits):

I – W.

PLAINTIFFS' EXHIBITS (identified in §B4, Proposed Exhibits):

The defendants hereby incorporate herein all of the plaintiffs' proposed exhibits which were identified in plaintiffs' §A4 exhibits relating to damages as follows:  3, 6, 7, 9-10, 14-16, 37, 38-83, 84-100 and 106.

DEFENDANTS' WITNESSES (identified in §B5, Proposed Witnesses):

Paul F. Murgo, M.Ed., C.R.C., C.D.M.S, Vocational Rehabilitation Counselor.

<u>PLAINTIFFS' WITNESSES</u> (identified in §B5, Proposed Witnesses):

The defendants hereby incorporate all of the plaintiffs' proposed witnesses which were identified in plaintiffs' §A5 proposed witnesses on the questions of damages.  Those witnesses are as follows:

1       Joseph Strychasz,
         165 Memorial Drive, Pawtucket, RI  02861
         Plaintiff.

2.      Sandra Colicci
         2218 Putnam Pike, Chepachet, RI
         Plaintiff.

3.      Dr. Peter Trafton, University Orthopedics
         P.O. Box 1119, Providence, RI  02901
         Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

4.      Dr. Christopher DiGiovanni
         P.O. Box 1119, Providence, RI  02901
         Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

5.      Dr. Michael Hulstyn
         P.O. Box 1119, Providence, RI  02901
         Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

6.      Dr. Arnold-Peter C. Weiss
         P.O. Box 1119, Providence, RI  02901
         Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

7.      Dr. Louis Sorrentino
         64 Pitman 119, Providence, RI  02901
         Brief Description of Testimony – Psychiatrist treating Joseph Strychasz post accident.

8.      Record keeper, Lawrence & Memorial Hospital

P.O. Box 1471, New London, CT  06320
Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

9.      Representative of Anesthesia Associates of New London
        P.O Box 390, New London, CT  06320
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

10.     Representative of Rhode Island Hospital
        2 Dudley Street, Providence, RI
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

11.     Representative of New England Sports Therapy & Fitness
        Oak Hill Place, 407 East Ave., Pawtucket, RI  02860
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

12.     Dr. Andrew J. Nelson
        University Orthopedics, Medical Office Center
        2 Dudley Street, Providence, RI  02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

13.     Representative of Therapists Feinberg & Snelgrove
        Occupational Therapy
        University Orthopedics, Providence, RI  02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

14.     Dr. Michael T. LeGeyt
        University Orthopedics, Medical Office Center
        2 Dudley Street, Providence, RI  02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

15.     Therapists Maher and Gannon
        University Orthopedics, Providence, RI  02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

16.    Dr. Jonathan Bolton
       469 Angel Street, Providence, RI  02906
       Brief Description of Testimony – Psychiatrist treating Joseph Strychasz post accident.

17.    Therapist Cooper, OT and PT
       University Orthopedics, Providence, RI  02905
       Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

18.    Representative of the Dr. John E. Donley Rehabilitation Center
       249 Blackstone Boulevard, Providence, RI  02906-5899
       Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

**PLAINTIFFS' RESPONSE**:

**§C2-16:  Disagree** – The plaintiff has suffered a permanent impairment to his left wrist as a result of the negligence of the defendants.  It has been surgically repaired, however, his function will be permanently compromised in his left wrist.  It is disingenuous to try to isolate the injuries to the defendant's left wrist as being unrelated to the permanent and serious injuries sustained to his legs.  He is permanently disabled as a result of the injuries sustained by the negligence of the defendants.

In support of this assertion, the plaintiff would rely upon the proposed witnesses and evidence listed above by the defendants.

**§B2-17**:  The plaintiff, Joseph Strychasz, is no longer exhibiting symptoms consistent with a major depressive order and he    will not need continuing psychotherapy or medicines for psychological problems in the future.  Further, it could not be said, with a reasonable degree of

medical probability, that the plaintiff's injuries and psychological problems were a precipitating factor in the deterioration of the plaintiff's relationship with his wife, Sandra Strychasz, as noted by Dr. Jonathan Bolton.

**SUPPORTING WITNESSES, DOCUMENTS, PLEADINGS & TANGIBLE EVIDENCE**:

At this juncture, it is anticipated that this proposed finding will be premised upon:

DEFENDANTS' EXHIBITS (identified in §B4, Proposed Exhibits):

I – W.

PLAINTIFFS' EXHIBITS (identified in §B4, Proposed Exhibits):

The defendants hereby incorporate herein all of the plaintiffs' proposed exhibits which were identified in plaintiffs' §A4 exhibits relating to damages as follows:  3, 6, 7, 9-10, 14-16, 37, 38-83, 84-100 and 106.

DEFENDANTS' WITNESSES (identified in §B5, Proposed Witnesses):

Paul F. Murgo, M.Ed., C.R.C., C.D.M.S, Vocational Rehabilitation Counselor.

PLAINTIFFS' WITNESSES (identified in §B5, Proposed Witnesses):

The defendants hereby incorporate all of the plaintiffs' proposed witnesses which were identified in plaintiffs' §A5 proposed witnesses on the questions of damages.  Those witnesses are as follows:

1        Joseph Strychasz,
         165 Memorial Drive, Pawtucket, RI  02861
         Plaintiff.

2.       Sandra Colicci
         2218 Putnam Pike, Chepachet, RI
         Plaintiff.

3.    Dr. Peter Trafton, University Orthopedics
      P.O. Box 1119, Providence, RI  02901
      Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

4.    Dr. Christopher DiGiovanni
      P.O. Box 1119, Providence, RI  02901
      Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

5.    Dr. Michael Hulstyn
      P.O. Box 1119, Providence, RI  02901
      Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

6.    Dr. Arnold-Peter C. Weiss
      P.O. Box 1119, Providence, RI  02901
      Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

7.    Dr. Louis Sorrentino
      64 Pitman 119, Providence, RI  02901
      Brief Description of Testimony – Psychiatrist treating Joseph Strychasz post accident.

8.    Record keeper, Lawrence & Memorial Hospital
      P.O. Box 1471, New London, CT  06320
      Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

9.    Representative of Anesthesia Associates of New London
      P.O Box 390, New London, CT  06320
      Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

10.   Representative of Rhode Island Hospital
      2 Dudley Street, Providence, RI
      Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

11.   Representative of New England Sports Therapy & Fitness

Oak Hill Place, 407 East Ave., Pawtucket, RI  02860
Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

12.     Dr. Andrew J. Nelson
          University Orthopedics, Medical Office Center
          2 Dudley Street, Providence, RI  02905
          Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

13.     Representative of Therapists Feinberg & Snelgrove
          Occupational Therapy
          University Orthopedics, Providence, RI  02905
          Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

14.     Dr. Michael T. LeGeyt
          University Orthopedics, Medical Office Center
          2 Dudley Street, Providence, RI  02905
          Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

15.     Therapists Maher and Gannon
          University Orthopedics, Providence, RI  02905
          Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

16.     Dr. Jonathan Bolton
          469 Angel Street, Providence, RI  02906
          Brief Description of Testimony – Psychiatrist treating Joseph Strychasz post accident.

17.     Therapist Cooper, OT and PT
          University Orthopedics, Providence, RI  02905
          Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

18.     Representative of the Dr. John E. Donley Rehabilitation Center
          249 Blackstone Boulevard, Providence, RI  02906-5899
          Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

**PLAINTIFFS' RESPONSE**:

**§C2-17:  Disagree** – The plaintiff continues to exhibit symptoms of major depression as a result of the injuries he has sustained and the impact that these injuries have had on his entire life.  The injuries have impacted him in his professional capacity as a sprinkler-fitter, have impacted his overall personal health, and have impacted his relationship with his then wife, Sandra, and his son.  There is no doubt that the plaintiff's incapacitation contributed to the deterioration of his relationship with his wife, Sandra Strychasz, as a result of his physical limitations and associated mental impairment.  He is permanently disabled as a result of the injuries sustained by the negligence of the defendants.

In support of this assertion, the plaintiff would rely upon the proposed witnesses and evidence listed above by the defendants.

**§B2-18**:  The plaintiff, Joseph Strychasz, has not sought employment since the date of the injury that is the subject of this accident and has not sought vocational counseling.

**SUPPORTING WITNESSES, DOCUMENTS, PLEADINGS & TANGIBLE EVIDENCE**:

At this juncture, it is anticipated that this proposed finding will be premised upon:

<u>DEFENDANTS' EXHIBITS</u> (identified in §B4, Proposed Exhibits):

I – W.

<u>PLAINTIFFS' EXHIBITS</u> (identified in §B4, Proposed Exhibits):

The defendants hereby incorporate herein all of the plaintiffs' proposed exhibits which were identified in plaintiffs' §A4 exhibits relating to damages as follows:  3, 6, 7, 9-10, 14-16, 37, 38-83, 84-100 and 106.

DEFENDANTS' WITNESSES (identified in §B5, Proposed Witnesses):

Paul F. Murgo, M.Ed., C.R.C., C.D.M.S, Vocational Rehabilitation Counselor.

PLAINTIFFS' WITNESSES (identified in §B5, Proposed Witnesses):

The defendants hereby incorporate all of the plaintiffs' proposed witnesses which were identified in plaintiffs' §A5 proposed witnesses on the questions of damages.  Those witnesses are as follows:

1      Joseph Strychasz,
       165 Memorial Drive, Pawtucket, RI  02861
       Plaintiff.

2.     Sandra Colicci
       2218 Putnam Pike, Chepachet, RI
       Plaintiff.

3.     Dr. Peter Trafton, University Orthopedics
       P.O. Box 1119, Providence, RI  02901
       Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

4.     Dr. Christopher DiGiovanni
       P.O. Box 1119, Providence, RI  02901
       Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

5.     Dr. Michael Hulstyn
       P.O. Box 1119, Providence, RI  02901
       Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

6.      Dr. Arnold-Peter C. Weiss
        P.O. Box 1119, Providence, RI  02901
        Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

7.      Dr. Louis Sorrentino
        64 Pitman 119, Providence, RI  02901
        Brief Description of Testimony – Psychiatrist treating Joseph Strychasz post accident.

8.      Record keeper, Lawrence & Memorial Hospital
        P.O. Box 1471, New London, CT  06320
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

9.      Representative of Anesthesia Associates of New London
        P.O Box 390, New London, CT  06320
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

10.     Representative of Rhode Island Hospital
        2 Dudley Street, Providence, RI
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

11.     Representative of New England Sports Therapy & Fitness
        Oak Hill Place, 407 East Ave., Pawtucket, RI  02860
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

12.     Dr. Andrew J. Nelson
        University Orthopedics, Medical Office Center
        2 Dudley Street, Providence, RI  02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

13.     Representative of Therapists Feinberg & Snelgrove
        Occupational Therapy
        University Orthopedics, Providence, RI  02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

14.    Dr. Michael T. LeGeyt
       University Orthopedics, Medical Office Center
       2 Dudley Street, Providence, RI  02905
       Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

15.    Therapists Maher and Gannon
       University Orthopedics, Providence, RI  02905
       Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

16.    Dr. Jonathan Bolton
       469 Angel Street, Providence, RI  02906
       Brief Description of Testimony – Psychiatrist treating Joseph Strychasz post accident.

17.    Therapist Cooper, OT and PT
       University Orthopedics, Providence, RI  02905
       Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

18.    Representative of the Dr. John E. Donley Rehabilitation Center
       249 Blackstone Boulevard, Providence, RI  02906-5899
       Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

**PLAINTIFFS' RESPONSE**:

**§C2-18:  Disagree** – The plaintiff has sought employment since the date of his injury

but has been unable to obtain employment due to his physical limitations.  He has been placed

on 100% disability by Social Security.  He has sought vocational counseling through the efforts

of the State of Rhode Island.  He is permanently disabled as a result of the injuries sustained

by the negligence of the defendants.

In support of this assertion, the plaintiff would rely upon the proposed witnesses and

evidence listed above by the defendants.

**§B2-19**:  From 2002 through the present, the plaintiff, Joseph Strychasz, has the capability and functional capacity (as set forth by the Donnelly Center, Dr. Trafton and Paul Murgo) to hold full-time employment in many occupations, including those that would pay a mean annual wage of $29,848.00 or more.  If the plaintiff were to undergo training and education within two specific programs for which he is eligible at the Community College of Rhode Island or the New England Technical Institute, the plaintiff would be eligible for employment as a cost estimator, mechanical engineering technician or a drafter, which pay entry-level wages of greater than $35,000.00 and mean annual wages of greater than $49,000.00.

**SUPPORTING WITNESSES, DOCUMENTS, PLEADINGS & TANGIBLE EVIDENCE**:

At this juncture, it is anticipated that this proposed finding will be premised upon:

DEFENDANTS' EXHIBITS (identified in §B4, Proposed Exhibits):

I – W.

PLAINTIFFS' EXHIBITS (identified in §B4, Proposed Exhibits):

The defendants hereby incorporate herein all of the plaintiffs' proposed exhibits which were identified in plaintiffs' §A4 exhibits relating to damages as follows:  3, 6, 7, 9-10, 14-16, 37, 38-83, 84-100 and 106.

DEFENDANTS' WITNESSES (identified in §B5, Proposed Witnesses):

Paul F. Murgo, M.Ed., C.R.C., C.D.M.S, Vocational Rehabilitation Counselor.

PLAINTIFFS' WITNESSES (identified in §B5, Proposed Witnesses):

The defendants hereby incorporate all of the plaintiffs' proposed witnesses which were identified in plaintiffs' §A5 proposed witnesses on the questions of damages.  Those witnesses are as follows:

1       Joseph Strychasz,
        165 Memorial Drive, Pawtucket, RI  02861
        Plaintiff.

2.      Sandra Colicci
        2218 Putnam Pike, Chepachet, RI
        Plaintiff.

3.      Dr. Peter Trafton, University Orthopedics
        P.O. Box 1119, Providence, RI  02901
        Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

4.      Dr. Christopher DiGiovanni
        P.O. Box 1119, Providence, RI  02901
        Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

5.      Dr. Michael Hulstyn
        P.O. Box 1119, Providence, RI  02901
        Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

6.      Dr. Arnold-Peter C. Weiss
        P.O. Box 1119, Providence, RI  02901
        Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

7.      Dr. Louis Sorrentino
        64 Pitman 119, Providence, RI  02901
        Brief Description of Testimony – Psychiatrist treating Joseph Strychasz post accident.

8.      Record keeper, Lawrence & Memorial Hospital
        P.O. Box 1471, New London, CT  06320

Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

9.      Representative of Anesthesia Associates of New London
        P.O Box 390, New London, CT  06320
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

10.     Representative of Rhode Island Hospital
        2 Dudley Street, Providence, RI
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

11.     Representative of New England Sports Therapy & Fitness
        Oak Hill Place, 407 East Ave., Pawtucket, RI  02860
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

12.     Dr. Andrew J. Nelson
        University Orthopedics, Medical Office Center
        2 Dudley Street, Providence, RI  02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

13.     Representative of Therapists Feinberg & Snelgrove
        Occupational Therapy
        University Orthopedics, Providence, RI  02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

14.     Dr. Michael T. LeGeyt
        University Orthopedics, Medical Office Center
        2 Dudley Street, Providence, RI  02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

15.     Therapists Maher and Gannon
        University Orthopedics, Providence, RI  02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

16.    Dr. Jonathan Bolton
       469 Angel Street, Providence, RI  02906
       Brief Description of Testimony – Psychiatrist treating Joseph Strychasz post accident.

17.    Therapist Cooper, OT and PT
       University Orthopedics, Providence, RI  02905
       Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

18.    Representative of the Dr. John E. Donley Rehabilitation Center
       249 Blackstone Boulevard, Providence, RI  02906-5899
       Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

**PLAINTIFFS' RESPONSE**:

**§C2-19:  Disagree** – The defendants' allegations are too broad to address in specificity. The plaintiff is permanently disabled as a result of the negligence of the defendants to the point that he has been placed on social security disability.  The plaintiff disagrees that he would be eligible for employment as a cost estimator, mechanical engineering technical, or drafter as he does not have the requisite educational background.  The plaintiff disagrees that these jobs are available for him given his current educational background and physical limitations.  He is permanently disabled as a result of the injuries sustained by the negligence of the defendants.

In support of this assertion, the plaintiff would rely upon the proposed witnesses and evidence listed above by the defendants.

**§B2-20**:    The plaintiff, Joseph Strychasz, was receiving payments   through Workers' Compensation and through Social Security in compensation for his claim of not being able to work through August, 2002.

**SUPPORTING WITNESSES, DOCUMENTS, PLEADINGS & TANGIBLE EVIDENCE**:

At this juncture, it is anticipated that this proposed finding will be premised upon:

DEFENDANTS' EXHIBITS (identified in §B4, Proposed Exhibits):

I – W.

PLAINTIFFS' EXHIBITS (identified in §B4, Proposed Exhibits):

The defendants hereby incorporate herein all of the plaintiffs' proposed exhibits which were identified in plaintiffs' §A4 exhibits relating to damages as follows:  3, 6, 7, 9-10, 14-16, 37, 38-83, 84-100 and 106.

DEFENDANTS' WITNESSES (identified in §B5, Proposed Witnesses):

Paul F. Murgo, M.Ed., C.R.C., C.D.M.S, Vocational Rehabilitation Counselor.

PLAINTIFFS' WITNESSES (identified in §B5, Proposed Witnesses):

The defendants hereby incorporate all of the plaintiffs' proposed witnesses which were identified in plaintiffs' §A5 proposed witnesses on the questions of damages.  Those witnesses are as follows:

1       Joseph Strychasz,
        165 Memorial Drive, Pawtucket, RI  02861
        Plaintiff.

2.      Sandra Colicci
        2218 Putnam Pike, Chepachet, RI
        Plaintiff.

3.      Dr. Peter Trafton, University Orthopedics
        P.O. Box 1119, Providence, RI  02901
        Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

4.      Dr. Christopher DiGiovanni
        P.O. Box 1119, Providence, RI  02901
        Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

5.      Dr. Michael Hulstyn
        P.O. Box 1119, Providence, RI  02901
        Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

6.      Dr. Arnold-Peter C. Weiss
        P.O. Box 1119, Providence, RI  02901
        Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

7.      Dr. Louis Sorrentino
        64 Pitman 119, Providence, RI  02901
        Brief Description of Testimony – Psychiatrist treating Joseph Strychasz post accident.

8.      Record keeper, Lawrence & Memorial Hospital
        P.O. Box 1471, New London, CT  06320
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

9.      Representative of Anesthesia Associates of New London
        P.O Box 390, New London, CT  06320
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

10.     Representative of Rhode Island Hospital
        2 Dudley Street, Providence, RI
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

11.     Representative of New England Sports Therapy & Fitness
        Oak Hill Place, 407 East Ave., Pawtucket, RI  02860
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

12.     Dr. Andrew J. Nelson
        University Orthopedics, Medical Office Center

2 Dudley Street, Providence, RI 02905
Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

13.     Representative of Therapists Feinberg & Snelgrove
        Occupational Therapy
        University Orthopedics, Providence, RI 02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

14.     Dr. Michael T. LeGeyt
        University Orthopedics, Medical Office Center
        2 Dudley Street, Providence, RI 02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

15.     Therapists Maher and Gannon
        University Orthopedics, Providence, RI 02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

16.     Dr. Jonathan Bolton
        469 Angel Street, Providence, RI 02906
        Brief Description of Testimony – Psychiatrist treating Joseph Strychasz post accident.

17.     Therapist Cooper, OT and PT
        University Orthopedics, Providence, RI 02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

18.     Representative of the Dr. John E. Donley Rehabilitation Center
        249 Blackstone Boulevard, Providence, RI 02906-5899
        Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

**PLAINTIFFS' RESPONSE**:

    **§C2-20:  Agreed**.

3.    **Plaintiff's Response to Claims of Law**:

**DEFENDANTS' §B3 CLAIMS OF LAW**

**LEGAL CLAIMS RE: LIABILITY - DENIAL OF NEGLIGENCE**:

**§B3-1**:   Plaintiffs cannot prosecute their claims of negligence premised upon defendants' contractual obligations to conduct "safety meetings" or perform functions as a "Safety Officer" (see Plaintiffs' operative Complaint and Response to Trial Preparation Order proposed findings of fact numbered §A2-(1) through §A2-(15)) because Joseph Strychasz was not a contracting party or a third-party beneficiary to Maron Construction Company's contract with the United States Coast Guard Academy.   Whether the defendants performed those contractual obligations, including those relating to contractor "safety meetings," did not create duties running from the defendants to the plaintiff, Joseph Strychasz.

**AUTHORITY**:

Pelletier v. Sordoni/Skanska Construction Co., 264 Conn. 509, 530, 825 A.2d 72 (2003).

**PLAINTIFFS' RESPONSE**:

**§C3-1:  OBJECTION**: The defendants' failure to warn the plaintiff of the existing hazard was a cause of the ultimate injuries sustained by the plaintiff.  The plaintiff and others similarly situated were the beneficiaries of the safety plans.  There is no claim of breach of contract in this case.

**§B3-2**:  The Court must itself determine what, if any, duties were owed to the plaintiff by the defendants in this construction setting.  Determination of what duties exist is a question of law for the Court.  Only after the Court determines those duties and instructs the jury on them can the jury assess whether the defendants breached those duties based on the facts of this particular case.  The jury cannot determine the nature and scope of the applicable negligence duties.  It is the Court's responsibility to guide the jury by instructing them as to any duties that are chargeable to the defendants.

**AUTHORITY**:

Sevigny v. Dibble Hollow Condo Assn., Inc., 76 Conn. App. 306, 318-19, 819 A.2d. 844 (2003); Connecticut General Statutes §52-216.

**PLAINTIFFS' RESPONSE**:

**§C3-2:  OBJECTION** – This is an incorrect assertion of the law.  C.G.S. §52-216 does not stand for this proposition.


**§B3-3**:  Because plaintiffs' claims of negligence are predicated on defendants having actual knowledge of the inadequacy of the transite board to support the weight of a worker and his equipment (see Plaintiffs' operative Complaint and Response to Trial Preparation Order proposed findings of fact numbered §A2-(1) through §A2-(15)), if the jury finds that the defendants did not have actual knowledge of the presence and structural weakness of the transite board through which plaintiff fell, then it must render defendants' verdicts.

**AUTHORITY**:

Matthews v. F. M. C. Corporation, 190 Conn. 700, 705-06, 462 A.2d 376 (1983); Willametz v. Guida-Seibert Dairy Co., 157 Conn. 295, 302, 254 A.2d 473 (1968); Hunte v. Amica Mutual Insurance Co., 68 Conn. App. 534, 545, 792 A.2d 132 (2002); see also Derby v. Connecticut Light & Power, 167 Conn. 136, 142, 355 A.2d 244 (1974).

**PLAINTIFFS' RESPONSE**:

§C3-3:  **OBJECTION** – Plaintiffs' claims of negligence are not limited to the facts as alleged in this request.


**§B3-4**:  Plaintiffs must prove defendants had knowledge of the specific condition which caused the injury and not merely of conditions naturally productive of that defect.  Here, the specific condition claimed is the inadequacy of the transite board to support the weight of the plaintiff and his equipment upon a metal chair with its legs near the center of the board.  On the question of notice, the jury's consideration must be confined to the defendants' knowledge and realization of the specific condition causing the injury and such knowledge cannot be found to exist from a knowledge of the general or overall conditions obtaining on the premises.

**AUTHORITY**:

Cruz v. Drezek, 175 Conn. 230, 235, 397 A.2d 1335 (1978); Kirby v. Zlotnick, 160 Conn. 341, 344-45, 278 A.2d 822 (1971); Monahan v. Montgomery, 153 Conn. 386, 390, 216 A.2d 824 (1966); Boretti v. Panacea Co., 67 Conn. App. 223, 228, 786 A.2d 1164 (2001), cert. denied, 259 Conn. 918, 791 A.2d 565 (2002).

**PLAINTIFFS' RESPONSE**:

**§C3-4:  OBJECTION** – The plaintiff does not have to prove that the defendants had knowledge of the actual defect.  The defendants' control of the premises is an issue of fact for the jury to decide and this request improperly limits the jury's consideration.

**§B3-5**:  If the jury finds that the condition of the transite panel was open and obvious to a person using ordinary intelligence, then there was no duty on behalf of the defendants to warn the plaintiff and the defendants cannot be charged with a breach of its duty to warn.  If plaintiff was aware of the condition of the transite panel, then there was also no duty on behalf of the defendants to warn the plaintiff and the defendants cannot be charged with a breach of this duty.

**AUTHORITY**:

Kraus v. Newton, 14 Conn. App. 561, 567-69, 542 A.2d 1163 (1988), aff'd on other grounds 211 Conn. 191, 558 A.2d 240 (1989); Warren v. Stancliffe, 157 Conn. 216, 220, 251 A.2d 74 (1968); Egan v. Connecticut Co., 131 Conn. 152, 154-55, 38 A.2d 282 (1944).

**PLAINTIFFS' RESPONSE**:

**§C3-5:  OBJECTION** – This is an incorrect assertion of the law.  The operative issue is whether the defendants knew or should have known of the existence of the transite panel.  This is an issue of fact and not law.   In addition, the requested charge mixes a variety of charge topics into a confusing request at best.  The allegation of a breach of a duty is solely within the jury's providence to decide.

**§B3-6**:  Without notice, actual or constructive, to the defendants, the plaintiff can have no action against the defendants, since they would not be guilty of any breach of duty toward him. The defendants did not insure the absolute safety of Joseph Strychasz under these circumstances.  The legal duty to exercise reasonable care does not make any defendant an insurer or guarantor of the safety because absolute safety is unattainable.

**AUTHORITY**:

Glynn v. Lyceum Theatre Co., 87 Conn. 237, 240-41, 87 A. 796 (1913); See Vacca v. Della Camera, 149 Conn. 277, 281, 179 A.2d 616 (1962); Paley v. Trustees, New York, New Haven & Hartford, 11 Conn. Supp. 5, 10 (1942); D. Wright & J. FitzGerald, Connecticut Law of Torts §30, at 51 (3rd Ed. 1991).

**PLAINTIFFS' RESPONSE**:

**§C3-6:  OBJECTION** – This is an incorrect assertion of the law.   In addition, the requested charge mixes a variety of charge topics into a confusing request at best.  There is no allegation of a breach of a duty of "absolute safety".

**§B3-7**:  The mere fact that an accident happened, standing alone, does not permit the jury to draw the inference that the accident was caused by anyone's negligence.  Accidents may happen when neither party is at fault, and in that case there is no liability on the part of either to the other.  There are such things as accidents which occur without the fault of anyone, and without liability on the part of anyone.  Such would be a pure accident; that is, an accident for which no one was to blame.

**AUTHORITY**:

Richards v. Grace Stash New Haven Community Hospital, 137 Conn. 508, 510, 79 A.2d 353 (1951);  DeVitt, Blackmar & Wolff, Federal Jury Practice and Instructions (4th Ed.) §80.28; Wright and Ankerman, Connecticut Jury Instructions (Civil), 4th Ed., Section 616(b) and (e).

**PLAINTIFFS' RESPONSE**:

**§C3-7**:  Plaintiff reserves the right to file a later objection.


**§B3-8**:  The jury may consider evidence of the absence of similar accidents on the area in question as to the issue of whether the stairs were reasonably safe, so long as it was established that the circumstances were substantially the same as those under which the plaintiff was injured, and the use by others was substantially similar to that of the plaintiff.

**AUTHORITY**:

Hall v. Burns, 213 Conn. 446, 451-456, 569 A.2d 10 (1990); Zheutlin v. Sperry & Hutchinson Co., 149 Conn, 364, 366-67, 179 A.2d 829 (1962); Facey v. Merkle, 146 Conn. 129, 136, 148 A.2d 261 (1959).

**PLAINTIFFS' RESPONSE**:

**§C3-8:  OBJECTION** – This charge does not address the claims in this case,


**LEGAL CLAIMS RE:  LIABILITY - PLAINTIFF'S CONTRIBUTORY NEGLIGENCE**:

**§B3-9**:  Plaintiff's duty to exercise ordinary care to avoid injury includes the duty to exercise ordinary care to observe and appreciate danger or threatened danger, and the plaintiff is conclusively presumed to know and appreciate dangers which, under the same or similar circumstances, would have been known or appreciated by an ordinarily prudent person.

**AUTHORITY**:

Corrievau v. Associated Realty Corporation, 122 Conn. 253, 258, 188 A. 436 (1936); see Sitnik v. National Propane Corp., 151 Conn. 62, 65 193 A.2d 503 (1963).

**PLAINTIFFS' RESPONSE**:

    **§C3-9:  NO OBJECTION**.


**§B3-10**:  In deciding the issue of plaintiff's contributory negligence, the jury may consider the nature of plaintiff's work and his experience in that work.  The potential danger attendant upon the activity of its performance dictates the degree of care required to be exercised in a given situation. The care used must be in proportion to, or commensurate with, the danger reasonably to be anticipated from the nature of the undertaking a workman on a construction job, such as here involved, where by the very nature of his work, his movements from place to place entailed unusual and extraordinary hazards of travel. Therefore, when the evidence and circumstances are viewed in the light of plaintiff's prior experience in construction work, the nature of the work in which he was engaged and the dangers inherent therein are all circumstances that the jury may consider in determining if Joseph Strychasz exercised reasonable care for his own safety.

**AUTHORITY**:

Harner v. Somerset Steel Erection Company**,** 284 F. Supp. 553, 557-58 (N.D.W.Va. 1967).

**PLAINTIFFS' RESPONSE**:

    **§C3-10:  OBJECTION** – The injuries of the plaintiff were not as a result of a condition created by him but rather by the negligence of the defendants.


**§B3-11**:  The jury will consider whether plaintiff's own negligence proximately caused his injuries.  If the defendants prove, by a fair preponderance of evidence, that Joseph Strychasz's own negligence was greater than the negligence of the defendants, then the jury must return defendants verdicts.  If the jury finds that the plaintiff was negligent to a degree equal to or less than that of the defendants, then the jury's verdict shall specify the percentage of such negligence attributable to the plaintiff.

**AUTHORITY**:

Connecticut General Statutes §52-572h(b) and (f).

**PLAINTIFFS' RESPONSE**:

**§C3-11:  NO OBJECTION**.


**LEGAL CLAIMS - CAUSATION AND DAMAGES**:


**§B3-12 (PROXIMATE CAUSE)**:

An injury or damage is proximately caused by an act, or a failure to act, whenever it appears from the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission. The evidence of causation must be sufficiently clear so that you as jurors could find causation without resorting to speculation or conjecture. If the jury does not find that the defendants' conduct in fact caused the plaintiff's damages, then the jury must return a verdict for the defendants.

**AUTHORITY**:

**DeVitt, Blackmar & Wolff, Federal Jury Practice and    Instructions** (4th Ed.) §80.18; see, generally, Green, Rationale of Proximate Cause (1927); Prosser, Torts §§49-52 (3rd Ed. 1964); 2 Harper and James, Torts §§20.1-20.6 (1956); Restatement, Second, Torts §§430-461; **Toomey v. Danaher**, 161 Conn. 204, 207, 286 A.2d. 293 (1971); **Moses v. Central Louisiana Electric Co.**, 324 F.3d 69, 73 (5th Cir. 1963), *cert. denied*, 376 U.S. 942, 84 S.Ct. 799, 11 L.Ed.2d 767 (1964).

**PLAINTIFFS' RESPONSE**:

    **§C3-12:  NO OBJECTION**.


**§B3-13 (BURDEN OF PROOF)**:

    In order to determine that the defendants breached their duty of care to the plaintiff, the jury must find that the plaintiff has established, by a preponderance of the evidence, that the

defendants were negligent and that it was the defendants' negligence – not someone else's - which caused the plaintiff's injury.  If the jury finds that the plaintiff has failed to establish this by a preponderance of the evidence, the jury must return a verdict for the defendants.  It is not sufficient for the plaintiff to prove that the defendant might have been negligent in a manner which would, or might have been, a proximate cause of this accident.  The plaintiff must remove the issues of negligence and proximate cause from the field of conjecture and speculation.  Speculation does not take the place of evidence.  Possibilities are not evidence.

**AUTHORITY**:

**Cruz v. Drezek**, 175 Conn. 230, 236, 397 A.2d 1335 (1978); **Gosselin v. Perry**, 166 Conn. 152, 162, 348 A.2d 623 (1974); **O'Brien v. Cordova**, 171 Conn. 303, 306, 370 A.2d 933 (1976); and **Delmore v. Polinsky**, 132 Conn. 28, 42 A.2d 349 (1945).

**PLAINTIFFS' RESPONSE**:

   **§C3-13:  NO OBJECTION**.


**§B3-14 (LOST WAGES/IMPAIRED EARNING CAPACITY)**:

   The plaintiff has the burden as to any impaired earning capacity claim.  This means the plaintiff must produce evidence for the jury to make a fair and reasonable estimate of any earning impairment or loss.  The jury's determination should not be based upon surmise, guess, conjecture or speculation.

**AUTHORITY**:

**Paige v. St. Andrew's Roman Catholic Church**, 250 Conn. 14, 24, 734 A.2d 85 (1999); **Ball v. Pardy Construction Co.**, 108 Conn. 549, 551, 143 A. 855 (1928).

**PLAINTIFFS' RESPONSE**:

    **§C3-14: NO OBJECTION**.


**§B3-15 (TESTIMONY OF AN ECONOMIST)**:

    The opinion of an economic expert concerning a party's lost earning capacity would be without substantial value unless it is based upon evidence showing both a reasonable probability that the injury at issue brought about a loss of earnings, and includes a basis for a reasonable estimate of the amount of that loss that is "of such certainty as the nature of the particular case may permit."  With regard to future losses, any award must be discounted to reflect the present worth of future losses.

**AUTHORITY**:

**Berndston v. Annino**, 177 Conn. 41, 46-47, 411 A.2d 36 (1979);  Federal Jury Practice and Instructions, DeVitt, Blackmar & Wolff, Federal Jury Practice and Instructions (4th Ed.) (1987) §85.11; Federal Jury Practice and Instructions, DeVitt, Blackmar & Wolff, Federal Jury Practice and Instructions (4th Ed.)(1987) §85.17; Pattern Jury Instructions, Civil Cases, U.S. 11th Circuit Judge's Association, 1990 Ed, p. 181.

**PLAINTIFFS' RESPONSE**:

    **§C3-15:  NO OBJECTION**.

**§B3-16 (FUTURE MEDICAL EXPENSES)**:

As to future medical expenses, the jury's determination must be based upon an estimate of reasonable probabilities, not possibilities. The obvious purpose of this requirement is to prevent the jury from awarding damages for future medical expenses based merely on speculation or conjecture. The evidence at trial must be sufficient to support a reasonable likelihood that future medical expenses will be necessary.

**AUTHORITY**:

**Marchetti v. Ramirez**, 240 Conn. 49, 54, 688 A.2d 1325 (1997); see also **Paige v. St. Andrew's Roman Catholic Church Corp.**, 250 Conn. 14, 34, 734 A.2d 85 (1999); **Calvi v. Agro**, 59 Conn. App. 732, 735-36, 757 A.2d 1260 (2000).

**PLAINTIFFS' RESPONSE**:

**§C3-16:  NO OBJECTION**.


**§B3-17 (MITIGATION OF DAMAGES)**:

When an injured party has one or more courses of conduct available at or after the time a breach occurs, an obligation exists on behalf of the plaintiff to pursue a course that results in the least damages. If an injured party fails to take reasonable action to lessen the damages, and if the damages were in fact enhanced by such failure, the plaintiff would not be entitled to receive those damages which could reasonable have been avoided. Thus, if the plaintiff failed to return to work when he could have, thereby mitigating his claim to loss for diminution in wages or earnings, he would be prohibited from recovering for those damages which he

reasonably could have avoided.  Likewise, in a personal injury case, an injured plaintiff has a duty to follow the advice of his doctors to promote recovery.  Thus, when a plaintiff does not do what a reasonably prudent person would do when provided with a recommendation from his physician, then the jury would be free to reduce the damages which would otherwise be awarded due to the plaintiff's failure to follow these recommendations.

**AUTHORITY**:

**Preston v. Keith**, 217 Conn. 12, 21-22, 584 A.2d 439 (1991); **Rametta v. Stella**, 214 Conn. 484, 492, 572 A.2d 978 (1990); **Jancura v. Szwed**, 176 Conn. 285, 288, 407 A.2d 961 (1978); and **Morro v. Brockert**,109 Conn. 87, 92-93, 145 A. 659 (1929).

**PLAINTIFFS' RESPONSE**:

§C3-17:  NO OBJECTION.

**§B3-18 (THE PLAINTIFF IS ENTITLED TO RECOVER ONLY FAIR, JUST AND REASONABLE DAMAGES)**

It is not proper for a jury, in considering the question of damages, to attempt to be generous, rather than fair and reasonable.  The jury's deliberations should not be based upon sympathy, prejudice or partiality.  Likewise, the fact that the plaintiff has made a claim against a corporate defendant should not be given any consideration by a jury.

**AUTHORITY**:

**Rosa v. American Oil Company, Inc.**, 129 Conn. 585, 590, 30 A.2d 385 (1943); Wright and

Ankerman, Connecticut Jury Instructions (Civil) (4th Ed.) §231A; Federal Jury Practice and

Instructions, DeVitt, Blackmar & Wolff, Federal Jury Practice and Instructions (4th Ed.) (1987)

§71.01; Jury Instructions on Damages and Tort Actions, Graham, Douthwait, Allen Smith Co.,

publishers (1977) §6-14; Wright and Ankerman, Connecticut Jury Instructions (Civil) (4th Ed.)

§257(a).

**PLAINTIFFS' RESPONSE**:

**§C3-18:  NO OBJECTION**.


4.    **Plaintiff's Response to Proposed Exhibits**:


**DEFENDANTS' §B4 PROPOSED EXHIBITS**

**DEFENDANTS' PROPOSED EXHIBITS**

The defendants reserve the right to amend this exhibit list as additional exhibits become

available.

A.  Pieces of transite.

B.  Maron Construction's subcontract agreement with Midland Fire Protection, Inc. and
Midland Fire Protection, Inc.'s Daily Construction Logs, including all exhibits marked as letters
A through NN to David Munroe's November 6, 2002 deposition.

C.  Maintenance Records, Work Orders and Other Documents Regarding United States
Coast Guard Personnel Working Within the Cell Structure where plaintiff Fell during the
approximate 15 years that the transite covered openings.

D.  Plaintiffs' Complaint.

E.  Walter Stamphl's notes identifying asbestos containing materials to abate in cell structure as change order and additional expenditure for April 14, 1997 Contract Amendment and all materials marked as Exhibits 1-18 at the November 13, 2002 deposition of Walter Stamphl and as Exhibits to the November 13, 2002 deposition of Wanda Coresini.

F.  Curriculum vitae of Dean Koutsoubis, P.E.

G.  Expert Report by Dean Koutsoubis, P.E. and all materials relied upon or referred to in generating said report, including those materials marked in his July 17, 2003 deposition as Exhibits 2, 3, 4, 5, 6, 6A, 6B, 6C, 7, 8, 9 and 10.

H.  Daily and Weekly Construction Logs, Weekly Safety Meeting Logs and Weekly Time Sheets by Maron Construction and all subcontractors for Roland Hall gymnasium renovation project from December, 1996 through June, 1997.

I.  Report of Paul F. Murgo, M.Ed., C.R.C., C.D.M.S.

J.  Resource materials from the state and federal governments regarding job placement, labor markets, etc. relied upon and used by Mr. Murgo in formulating his opinions.

K.  Other data and primary resource materials used by Mr. Murgo in formulating his opinion.

L.  Employment file from Midland Fire for the plaintiff, Joseph Strychasz.

M.  Workers' Compensation file materials and internal nursing notes from Concentra Managed Care relating to the Workers' Compensation claim filed by the plaintiff for this loss.

N.  Social Security Administration file documents, including application from plaintiff regarding Social Security Disability payments following the plaintiff's injury that is the subject of this case.

O.  Curriculum Vitae of Paul F. Murgo, M.Ed., C.R.C., C.D.M.S.

P.  Any additional income tax returns filed by the plaintiff.

Q.  Career Assessment Inventory, Dr. Charles B. Johansson, dated February 4, 1999, 18 pages.

R.    Plaintiff, Joseph Strychasz' responses to Interrogatories and Requests for Production dated April 23, 1999 and supplemental compliance tendered thereafter.

S.  Deposition of Joseph Strychas, first session, dated July 28, 1999.

T.  Defendants' Exhibit A of deposition of Dr. Christopher DiGiovanni taken on October 30, 2002.

U.  Exhibits C, D and E of deposition of Dr. Peter Trafton taken on October 29, 2002.

V.  Exhibit B of deposition of Dr. Jonathan Bolton taken on November 20, 2002.

W.  Exhibits C, F, G, H, I, J-N, AA, BB and CC of deposition of Gary M. Crakes, Ph.D. taken on October 7, 2002.

The defendants may also offer into evidence portions of the plaintiff's medical records and materials from his treating health care providers that have not been identified by the plaintiff above, depending on the offer of proof at trial and the plaintiff's offer of evidence, expert or otherwise, on the medical aspects of the case.


**PLAINTIFFS' PROPOSED EXHIBITS (INCORPORATED BY DEFENDANTS)**:

In addition to the above defendants' proposed exhibits, the defendants incorporate the proposed exhibits identified in plaintiffs' present and any future amended Response to §A-4 of the October 27, 2003 Trial Preparation Order and reserve the right to utilize same as defendants exhibits.   The presently identified proposed plaintiffs' exhibits that defendants hereby incorporate are as follows:

**Depositions**:

1.  09/20/02 – Ronald DeFrancesco
2.  09/20/02 – Thomas Maron

3.  10/07/02 – Gary Crakes, Ph.D.
4.  10/22/02 – Peter Gravel
5.  10/23/02 – James Gerou
6.  10/29/02 – Dr. Trafton
7.  10/30/02 – Dr. DiGiovanni
8.  11/06/02 – David Munroe
9.  11/07/02 – Sandra Strychasz
10.  11/07/02 – Joseph Strychasz
11.  11/08/02 – Lee Archibald
12.  11/13/02 – Wanda Coresini
13.  11/13/02 – Walter Stampfl
14.  11/20/02 – Dr. Jonathan Bolton
15.  11/25/02 – Dr. DiGiovanni Continued Depo
16.  11/25/02 – Dr. Trafton Continued Depo
17.  07/17/03 – Dean Koutsoubis
18.  08/13/03 – Ronald DeFrancesco Continued Depo
19.  08/13/03 – Thomas Maron Continued Depo

## Architectural and Engineering Diagrams:

20.  Two volume set of architectural and engineering drawings for the Roland Hall renovation project prepared by Einhorn, Yaffee, Prescott Engineers.

21.  Midland Fire Protection as built drawings, 8 sheets.

22.  Specifications for Roland Hall renovations prepared by Einhorn, Yaffee, Prescott on July 30, 1996 (Volume 1 of 2).

23.  Specifications for Roland Hall renovations prepared by Einhorn, Yaffee, Prescott on July 30, 1996 (Volume 2 of 2).

## Contracts:

24.  Contract between the U.S. Coast Guard and Einhorn, Yaffee, Prescott dated April 29, 1996.

25.  Solicitation Offer and Award to Maron Construction Company August 7, 1996.

26.  Subcontract Agreement between Maron Construction and Midland Fire Protection executed November 4, 1996.

27.  Amendment of Solicitation/Modification of Contract dated April 14, 1997 (asbestos abatement).

28.  Contract Modification executed by Maron Construction dated June 17, 1997 with attachments, 10 pages.

**Roland Hall Renovation Contracts**:

29.  Contract Amendment/Modification dated August 7, 1996.

30.  Three large blueprints of Roland Hall Renovations.

31.  List of Subcontractors for Roland Hall renovation project.

32.  Two large blueprints of Einhorn, Yaffee, Prescott Architectural, pages 30 and 31.

**Photographs/Video**:

33.  90 photographs of various locations inside and outside of the Roland Hall Gymnasium taken by Dean Koutsoubis on November 15, 2002 – currently in possession of the defendants.

34.  20 pages of Roland Hall accident site photographs.

35.  Videotape of a day in the life of Joseph Strychasz.

36.  Four post accident photos of Joseph Strychasz at home.

**Economist Report**:

37.  Economist Report of Dr. Gary Crakes, Ph.D.

**Medical Records/Reports**:

**Dr. Peter Trafton**
38.  May 12, 1997 through November 22, 1999 Progress Reports, 26 pages.

39.  May 23, 1997 Rhode Island Hospital Operating Record, 3-page Operating Report.

40.  May 29, 1997 2-page Rhode Island Hospital Discharge Summary.

41.  October 24, 1997 letter from Mitchell Greenberg at Foot Tek re:  foot inserts.

42.  December 29, 1997 letter from Sheila Kane, Nurse Consultant, Beacon Mutual Insurance regarding heel padding and referral to Joseph Infantolino for footwear adjustment.

43.  January 28, 1998, 2-page letter to Attorney Albert Lepore, Jr. regarding status of Joseph Strychasz.

44.  20-page Case Management Summary and report of February 18, 1999 from the State of Rhode Island, Donley Rehabilitation & Education Center.

45.  June 28, 1999 inquiry to Dr. Trafton from Albert Lepore, Jr. regarding Mr. Strychasz' limp and Dr. Trafton's response of July 19, 1999 indicating the limp is permanent.

46.  July 26, 1999 2-page inquiry from Attorney Vivian B. Dogan regarding status of Joseph Strychasz and August 4, 1999 2-page response from Dr. Trafton regarding status inquiry.

46.  November 29, 1999 Referral by Dr. Trafton to Christopher DiGiovanni.

47.  November 30, 1999 correspondence to Joseph Strychasz referring him to Dr. DiGiovanni for evaluation on Monday, December 13, 1999.

48.  January 6, 2000 letter to Dr. DiGiovanni regarding DiGiovanni's December 13, 1999 evaluation.

49.  13-pages of office visit intake forms prepared by Joseph Strychasz.

50.  University Orthopedics super bills.

51.  Phone message log, 10 pages.

52.  Prescription log, 54 pages.

53.  Curriculum Vitae of Dr. Peter Trafton, 37 pages.

**Lawrence and Memorial Hospital**
54.  Hospital records, May 12, 1997 through May 15, 1997.

**Rhode Island Hospital**
55.  May 21, 1997 through May 29, 1997 Admission through Discharge records.

**Dr. Christopher W. DiGiovanni**

56.  December 13, 1999 2-page Patient Initial Intake Form of Joseph Strychasz.

57.  December 13, 1999 Initial Evaluation by Dr. DiGiovanni, 4 pages.

58.  Evaluation and Progress Notes:  December 13, 1999; February 25, 2000; April 7, 2000; May 12, 2000; June 9, 2000; July 28, 2000; January 24, 2001; February 9, 2001; August 8, 2001; January 16, 2002; February 1, 2002; March 29, 2002.

59.  Rhode Island Hospital Operating Record, March 28, 2000, left subtalar fusion; Achilles tendon lengthening; removal of hardware left heel, 9 pages.

60.  Rhode Island Hospital Operating Record, January 29, 2001, removal of hardware right heel, 8 pages.

61.  Rhode Island Hospital Operating Record, removal of hardware right heel, January 21, 2002, 13 pages.

62.  February 9, 2002 Office Visit Notes – post heel hardware removal.

63.  March 6, 2002 final permanency report of Dr. DiGiovanni, 2 pages.

64.  Curriculum Vitae of Dr. Christopher William DiGiovanni, 6 pages.

**Dr. Michael Hulstyn**

65.  Rhode Island Hospital Operating Record for right knee lateral meniscal tear repair of October 21, 1998 and office notes of August 7, 1998 through December 11, 1998, 7 pages.

**Dr. Arnold-Peter C. Weiss**

66.  Evaluation, treatment and operating records of Dr. Weiss for left wrist arthroscopic surgery of March 30, 1998 of Joseph Strychasz.  Records include evaluation of March 10, 1998; Operating Record of March 30, 1998; Post Surgical Evaluation through September 1, 1998 where Dr. Weiss recommends a second surgery for ligament reconstruction.  This surgery was completed on September 28, 1998 at Rhode Island Hospital using a bone graft and pin placement for scapholunate ligament reconstruction.  Treatment reports of September 29, 1998, October 7, 1998 and November 5, 1998.  Records include the Operative Report of November 11, 1998 where Mr. Strychasz had the retaining pins in his left wrist removed.  The records also include the diagnostic imaging performed on November 18, 1998 of his left wrist and office notes and records of November 18, 1998, December 15, 1998 and February 9, 1999, 17 pages.

**Dr. Louis V. Sorrentino**
67.  Treatment records of December 20, 1997 through November 2, 1999.

**Dr. Jonathan Bolton**
68.  Assessment and Treatment Notes.

**Pain Management Treatment-Dr. Frederic Friedman**
69.  June 15, 1999 through February 3, 2000.

**Donley Rehabilitation & Education Center**
70.  Case Management Summary of April 10, 1998; rehabilitation notes of January 16, 1998 through March 11, 1998; Referral, Physical Therapy Evaluation and Reassessment Notes of September 8, 1997 through December 30, 1997.  Rehabilitation Plan Notes September 9, 1997 through February 18, 1999.

**Diagnostic Imaging**
72.  May 17, 1999 Final Report of diagnostic x-rays, 2 pages.
73.  May 21, 1997, 4 pages.
74.  May 22, 1997.
75.  May 23, 1997.
76.  July 10, 1997, 3 pages.
77.  September 8, 1997.
78.  October 15, 1997.
79.  November 20, 1997.
80.  September 16, 1998.

**Visiting Nurse Association**
81.  Records, 15 pages.

**University Orthopedics-Hand Therapy**
82.  May 7, 1998 through January 19, 1999.

**University Orthopedics-Physical Therapy**
83.  November 2, 1998 through December 23, 1998.

<u>**Medical Bills and Treatment History**</u>:

**University Orthopedics**
**2 Dudley Street, 2nd Floor, Providence, RI  02905**
**(includes Drs. Trafton, Weiss, Nelson, Hulstyn, Legeyt,**

**and DiGiovanni and physical therapy)**

84. Lawrence & Memorial Hospital                                     $ 7,011.51
    P.O. Box 1471, New London, CT  06320
    Treatment: 5/12/97 – 5/15/97

85.  Anesthesia Associates of New London                              682.00
    P.O Box 390, New London, CT  06320
    Treatment: 5/12/97

86. Rhode Island Hospital – 2 Dudley Street                          9,106.87
    Treatment - **1997**: 5/21, 7/10, 9/8, 10/15, 11/20; **1998**: 2/19,
    3/30, 9/14, 9/16, 9/28, 10/7, 10/15, 10/21, 11/18, 12/15

87. Dr. Peter G. Trafton                                            11,240.00
    Department of Orthopaedic Surgery, Medical Center Office
    2 Dudley Street, Suite 200, Providence, RI  02905
    Treatment - **1997**: 5/21, 6/20, 6/26, 7/10, 8/5, 8/7, 9/5, 9/8, 10/15,
    11/20, 12/10; **1998**: 1/5, 2/19, 3/6, 3/12, 4/20, 4/23, 5/19, 5/28,
    6/30, 7/21, 8/14, 9/3, 9/18, 11/16; **1999**: 2/9, 2/16, 5/17; 11/22

88. Dr. Louis V. Sorrentino (psychiatrist)                           2,610.00
    64 Pitman Street, Providence, RI  02906
    Treatment: 12/97 - 11/2/99

89. Dr. Arnold-Peter C. Weiss                                        9,439.00
    University Orthopaedics, Medical Office Center
    2 Dudley Street, Suite 200, Providence, RI  02905
    Treatment - **1998**: 3/10, 3/30, 4/3, 5/7, 5/14, 6/18, 7/1, 7/16,
    8/17, 9/1, 9/22, 9/28, 9/29, 11/5, 11/9, 11/11, 12/15; 2/9/99

90. New England Sports Therapy & Fitness                             1,575.00
    Oak Hill Place, 407 East Ave., Pawtucket, RI  02860
    Treatment - **1998**: 3/16, 3/18, 3/20, 3/23, 3/25, 3/27, 4/1,
    4/3, 4/6, 4/10, 4/13, 4/15, 4/17, 4/20, 4/22, 4/24, 6/6

91. Dr. Andrew J. Nelson                                              250.00
    University Orthopedics, Medical Office Center
    2 Dudley Street, Providence, RI  02905
    Treatment: 4/8/98

92.  Therapists Feinberg & Snelgrove                                                701.00
     Occupational Therapy
     University Orthopedics, Providence, RI  02905
     Treatment - **1998**: 5/7, 6/23, 6/25, 7/1, 1/16, 7/21, 7/30

93.  Dr. Michael J. Hulstyn                                                        2,841.00
     University Orthopaedics, Medical Center Office
     2 Dudley Street, 2nd Floor, Providence, RI  02905
     Treatment - **1998**: 8/7, 10/9, 10/15, 10/21, 10/30, 11/16,
     11/19, 12/11; **1999**: 5/10; 7-8-99

94.  Dr. Michael T. LeGeyt                                                          160.00
     University Orthopedics, Medical Office Center
     2 Dudley Street, Providence, RI  02905
     Treatment: 10/7/98, 11/18/98

95.  Therapists Maher and Gannon                                                  1,688.00
     University Orthopedics, Providence, RI  02905
     Treatment - **1998**: 11/2, 11/5, 11/11, 11/13, 11/18, 11/20, 11/23,
     11/25, 11/30, 12/2, 12/7, 12/11, 12/16, 12/18, 12/21, 12/23

96.  Dr. Jonathan Bolton
     469 Angel Street, Providence, RI  02906
     Treatment: 1/00 through 10/23/02

97.  Therapist Cooper, OT and PT                                                    476.00
     University Orthopedics, Providence, RI  02905

98.  Dr. John E. Donley Rehabilitation Center                                    No Charge
     249 Blackstone Boulevard, Providence, RI  02906-5899

99.  Dr. Christopher W. DiGiovanni                                               10,436.00
     University Orthopedics
     1287 North Main Street, Providence, RI  02904

100. Brooks Maxi Drugs                                                              254.24
     220 Newport Avenue, E. Providence, RI
     Prescriptions 7-8-98 through 10-28-99

**TOTAL MEDICALS**:                                                            **$58,470.62**

**Investigatory Reports**:

101.  October 11, 1996 Safety Plan from David Maron to the Coast Guard Contracting Division designating Ronald DeFrancesco as Safety Officer.

102.  May 12, 1997 2-page letter from Thomas Maron to Midland Fire Protection.

103.  May 12, 1997 Daily Construction Report executed by Ronald DeFrancesco.

104.  Investigatory report of Chief Warrant Officer Eric Stemmler dated May 28, 1997 with attachments, 15 pages.

105.  Job Site Weekly Safety Meetings reports.

**Income Tax Returns**:

106.  1993 through 1999 Income Tax Returns.

**Miscellaneous Exhibits**:

107.  Property Settlement Agreement dated September 1, 2000.

**State Court Depositions**:

108.  Deposition of Steven Shotteck – October 22, 1999
109.  Deposition of Eric Stemmler – December 13, 1999
110.  Deposition of Ronald Foster – April 4, 2000

**Request for Admissions**:

111.  Defendants, Maron Construction, inc. & Ronald DeFrancesco's response to Request for Admissions dated January 6, 2003.

**PLAINTIFFS' RESPONSE**:

**§C4**:  The plaintiff has no objection to the defendants' Proposed Exhibit List and

incorporates the total list as the plaintiffs' Exhibit List as well.  The plaintiff reserves the right to

amend the list as necessary and has no objection for the defendants to do the same.

5.    **Plaintiff's Response to Proposed Expert Witnesses**:

**DEFENDANTS' §A5 PROPOSED WITNESSES**

Defendants' anticipate calling the following witnesses at trial:

1.    Gregory J. Carabine
      Chief,  Construction and Engineering
      United States Coast Guard Academy

He has been the Chief, Construction and Engineering, for 25 years at the Academy.  He will testify regarding his knowledge of the replacement of the metal grates and louvers with transite panels occurring about 15 years before this project began.  He will also testify about the presence of air handling and mechanical equipment in the cell structure, the maintenance and failures of which required United States Coast Guard personnel, including himself, to walk within the cell structure where plaintiff fell during those 15 years. At no time did he notice that the openings were covered with a piece of transite, nor did he or any other United States Coast Guard personnel fall through the panels during the 15 years they were in place.  Neither he nor any other United States Coast Guard personnel informed the defendants that the openings were covered with transite panels before the plaintiff fell.

2.    Commander Matthew Ruckert
      Public Works Officer
      United States Coast Guard Academy Public Works Department

He will testify regarding the installation of the transite panels and the numerous occasions that Public Works personnel were in the cell structure where plaintiff fell for maintenance and inspection of the air handling equipment located within the cell structure.

During the approximately 15 years that the transite panels were in place, Public Works personnel would go into the area where plaintiff fell to inspect and  maintain the mechanical equipment.  Personnel would also paint the exposed underside of those panels black.  The panels were fastened though metal angle iron that held them firmly in place. During the numerous times such persons were in that area over the approximately 15 years that the transite panels were in place, no one noticed that the openings were covered with a piece of transite, nor did he or any other United States Coast Guard personnel fall through the panels during the 15 years they were in place, nor did any United States Coast Guard personnel informed the defendants that the openings were covered with transite panels before the plaintiff fell.

3.      Personnel and representatives of the
         United States Coast Guard Academy Public Works Department

Will testify in accordance with Commander Matthew Ruckert's aforementioned testimony.

4.      Personnel and representatives of the
         United States Coast Guard Academy Athletic Department and
         Other United States Coast Guard Academy Personnel and Cadets.

They are expected to testify that United States Coast Guard personnel went into the area where plaintiff fell in order to work on the air handling and other mechanical equipment located there.  There was nothing that could be seen from inside or outside of the cell structure that would inform someone that the openings were covered by transite which was too weak to

support the weight of a person.  Moreover, stepping upon the transite panel did not reveal that it was too weak to support a person.

5.    Dean Koutsoubis, P.E.
       Koutsoubis, Alonso Associates, P.E., P.C.
       70 East Old Country Road, Hicksville, New York  11801.

Defendant's expert Dean Koutsoubis, P.E. will testify in accordance with his expert report and curriculum vitae which have been served and filed as part of defendant's expert disclosures in this matter.  Said disclosures are hereby incorporated as if fully set forth herein. The subject matter of Mr. Koutsoubis' testimony concerns the construction practices, contractual responsibilies, applicable governmental regulations, industry practice and standards concerning the safety of the site and claim presented.  He will offer an opinion concerning the foreseeability of the mechanism of injury involved in the present accident and the standards and responsibilities of the general contractor and owner.   Specifically, Mr. Koutsoubis will offer an opinion that Maron Construction Co., Inc. and Ronald DeFrancesco were not responsible for the injuries sustained by the Joseph Strychasz.  To a reasonable degree of engineering probability, Maron Construction Co., Inc. and Ronald DeFrancesco, could not have reasonably foreseen the structural deficiency or inadequacy of the panel which covered the opening in the cell floor.  As such, Maron Construction Co., Inc. and Ronald DeFrancesco did not breach any governmental regulations (including applicable OSHA regulations), did not breach any industry or construction practice standards, and did not breach any contractual obligations.  Mr. Koutsoubis will also testify that, if there was a breach of any duty to the plaintiff, it was the owner, the United States Coast Guard, which would have been

primarily responsible.  To a reasonable degree of engineering probability, the United States

Coast Guard installed these panels over the opening in an improper and unsafe manner, using

insufficient materials.  Also, the owner failed to inform the general contractor or other

subcontractors working within the area of the existence of such condition so that protective

measures could have been taken.  Moreover, to a reasonable degree of engineering

probability, the owner of the premises was in control of the situation to the exclusion of the

general contractor, inasmuch as it was the owner who installed such panels in the first

instance and had exclusive knowledge concerning the makeup of the materials which were

used to cover the opening.  Mr. Koutsoubis will offer his opinion as a principal in a consulting

firm which provides structural and safety engineering services to the construction industry.

6.    Paul F. Murgo, M.Ed., C.R.C., C.D.M.S.
      5635 S. Highway A1A, Melbourne Beach, Florida  32951-3337

Mr. Murgo will testify concerning his Vocational Assessment and Employment

Evaluation performed on October 31, 2002.  He will offer opinions concerning the plaintiff's

academic and cognitive abilities, the plaintiff's vocational history and experience, the plaintiff's

employability, the plaintiff's functional capacity and his likely ability to earn wages within certain

vocations.  He will testify consistently with his report dated November 12, 2002.  Mr. Murgo's

curriculum vitae has previously been provided as part of this witness' disclosure of expert.

**PLAINTIFFS' PROPOSED WITNESSES (INCORPORATED BY DEFENDANTS)**

In addition to the above defendants' proposed witnesses, the defendants incorporate

the proposed exhibits witnesses in plaintiffs' present and any future amended Response to §A-

5 of the October 27, 2003 Trial Preparation Order and reserve the right to call on same as

defendants witnesses.   The presently identified proposed plaintiffs' witnesses whom

defendants hereby incorporate are as follows:

1.      Thomas J. Maron, President
        Maron Construction Company, Inc.
        180 Mancini Drive, Providence, RI  02909
        Brief Description of Testimony – Employee of Maron Construction Company, general
contractor for the renovation project at Roland Hall – fact witness.

2.      David Maron
        Maron Construction Company, Inc.
        180 Mancini Drive, Providence, RI  02909
        Brief Description of Testimony – Employee of Maron Construction Company, general
contractor for the renovation project at Roland Hall – fact witness.

3.      Jane M. Mardo, Vice President
        Maron Construction Company, Inc.
        180 Mancini Drive, Providence, RI  02909
        Brief Description of Testimony – Employee of Maron Construction Company, general
contractor for the renovation project at Roland Hall – fact witness.

4.      David B. Munroe, Midland Fire Protection Company
        6 Grandview Street, Coventry, RI  02810
        Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor
for the renovation project at Roland Hall – fact witness.

5.      Donna Munroe
        6 Grandview Street, Coventry, RI  02810
        Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor
for the renovation project at Roland Hall – fact witness.

6.      Jack DeMers, Midland Fire Protection
        6 Grandview Street, Coventry, RI  02810
        Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor
for the renovation project at Roland Hall – fact witness.

7.      Robert Fontaine, Midland Fire Protection
        6 Grandview Street, Coventry, RI  02810

Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

8.     Ronald DeFrancesco, Superintendent
        Maron Construction Company
        180 Mancini Drive, Providence, RI  02909
        Brief Description of Testimony – Employee of Maron Construction Company, general contractor for the renovation project at Roland Hall – fact witness.

9.     C.W.O. Eric Stemmler, U.S. Coast Guard Academy
        New London, Connecticut
        Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

10.    Walter Stampfl, U.S. Coast Guard Academy
        New London, Connecticut
        Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

11.    Lee Archibald, U.S. Coast Guard Academy
        New London, Connecticut
        Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

12.    Greg Carabine, Assistant Facilities Engineer,
        Coast Guard Academy, New London, Connecticut
        Brief Description of Testimony – U.S. Coast Guard employee assigned to the Roland Hall rehabilitation project.

13.    Ronald Foster
        52 Maple Street, Attleboro Falls, MA
        Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

14.    Steven Shotteck
        61 Pine Street, Seekonk, MA  02771
        Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

15.    Randall Draughn

He has been assigned to work for Midland on a project in North Carolina.  He lives at 5A Severna Court, Durham, NC  27704

Brief Description of Testimony – Employee of Midland Fire Protection, subcontractor for the renovation project at Roland Hall – fact witness.

16.     Joseph Strychasz
        165 Memorial Drive, Pawtucket, RI  02861
        Plaintiff.

17.     Sandra Colicci
        2218 Putnam Pike, Chepachet, RI
        Plaintiff.

18.     Joshua Strychasz
        2218 Putnam Pike, Chepachet, RI
        Son of plaintiffs.

19.     Alison L. Wood, Investigator
        Williams Investigative Services
        Conducted initial investigation of fall at Roland Hall.

20.     Ms. Victoria Worrell, Contract Specialist
        Facilities Design & Construction Center Atlantic
        5505 Robin Hood Road, Norfolk, VA  23513-2431
        Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

21.     Mr. Wayne C. Webster, Project Manager for Roland Hall
        renovation
        Facilities Design & Construction Center Atlantic
        Norfolk, Virginia
        Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

22.     Wanda Coresini, U.S. Coast Guard Academy
        Norfolk, Virginia
        Brief Description of Testimony – Coast Guard employee responsible for the issuance of the contract between the United States Coast Guard and Maron Construction for the renovation of Roland Hall.  Responsible for contract compliance.

23.    James Gerou
       Einhorn, Yaffee, Prescott Architecture & Engineering
       P.O. Box 617, Albany, NY  12201
       Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the architecture and engineering of the Roland Hall renovation project.

24.    Peter Gravel
       45 Hyvue Drive, Newburgh, NY  12550
       Brief Description of Testimony – Einhorn, Yaffee, Prescott employee responsible for the architecture and engineering of the Roland Hall renovation project.

25.    Dr. Peter Trafton, University Orthopedics
       P.O. Box 1119, Providence, RI  02901
       Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

26.    Dr. Christopher DiGiovanni
       P.O. Box 1119, Providence, RI  02901
       Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

27.    Dr. Michael Hulstyn
       P.O. Box 1119, Providence, RI  02901
       Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

28.    Dr. Arnold-Peter C. Weiss
       P.O. Box 1119, Providence, RI  02901
       Brief Description of Testimony – Physician associated with University Orthopedics who provided post injury treatment to Joseph Strychasz in Providence Rhode Island.

29.    Dr. Louis Sorrentino
       64 Pitman 119, Providence, RI  02901
       Brief Description of Testimony – Psychiatrist treating Joseph Strychasz post accident.

30.    Record keeper, Lawrence & Memorial Hospital
       P.O. Box 1471, New London, CT  06320
       Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

31.     Representative of Anesthesia Associates of New London
        P.O Box 390, New London, CT  06320
        Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

32.     Representative of Rhode Island Hospital
        2 Dudley Street, Providence, RI
        Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

33.     Representative of New England Sports Therapy & Fitness
        Oak Hill Place, 407 East Ave., Pawtucket, RI  02860
        Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

34.     Dr. Andrew J. Nelson
        University Orthopedics, Medical Office Center
        2 Dudley Street, Providence, RI  02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

35.     Representative of Therapists Feinberg & Snelgrove
        Occupational Therapy
        University Orthopedics, Providence, RI  02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

36.     Dr. Michael T. LeGeyt
        University Orthopedics, Medical Office Center
        2 Dudley Street, Providence, RI  02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

37.     Therapists Maher and Gannon
        University Orthopedics, Providence, RI  02905
        Brief Description of Testimony – Will establish the treatment and billing in the care of
Joseph Strychasz after his fall of May 12, 1997.

38.     Dr. Jonathan Bolton
        469 Angel Street, Providence, RI  02906
        Brief Description of Testimony – Psychiatrist treating Joseph Strychasz post accident.

39.    Therapist Cooper, OT and PT
       University Orthopedics, Providence, RI  02905
       Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

40.    Representative of the Dr. John E. Donley Rehabilitation Center
       249 Blackstone Boulevard, Providence, RI  02906-5899
       Brief Description of Testimony – Will establish the treatment and billing in the care of Joseph Strychasz after his fall of May 12, 1997.

41.    Dr. Gary Crakes, Ph.D.
       860 Ward Lane, Cheshire, Connecticut  06410
       Brief Description of Testimony – Dr. Crakes will render an expert opinion, a copy of which has previously been provided to defense counsel, in accordance with his report of August 20, 2002 establishing an economic loss of $1,876,794 as a result of the injuries sustained by Joseph Strychasz.


**PLAINTIFF'S RESPONSE**:

**§C5**:  The plaintiff does not have any disagreement regarding the list of proposed witnesses, but reserves the right to question their opinions and findings.  In addition, the defendants has named Commander Matthew Ruckert as well as other personnel and representatives of the United States Coast Guard Academy Public Works Department and Athletic Department.  The plaintiff has not been advised as to the identity of these individuals and has not deposed Commander Ruckert.  The plaintiff reserves the right to do so in regard to these witnesses.  The plaintiff does not adopt the proposed testimony of Dean Koutsoubis or Paul Murgo.


6.    **Plaintiff's Response to Proposed Evidence Likely to be Disputed**:

**DEFENDANTS' §B6 PROPOSED EVIDENCE LIKELY TO BE DISPUTED**

At this juncture, the defendants do not anticipate disputes needing rulings as to the admissibility of defendants' proposed evidence as has been identified in defendants' response to §B2, §B4 and §B5 to this Trial Preparation Order.

**Agreed**.

**PLAINTIFFS' RESPONSE TO SECTIONS 7 – 11 OF TRIAL PREPARATION ORDER**

7.    **Basis for Federal Jurisdiction**:

Given that the defendants have withdrawn their claims against the United States Coast Guard Academy, there is not a basis for continuing federal jurisdiction other than the Court's inherent supervisory powers given that this matter has been pending in the District for a substantial period of time.

8.    **Statement of the Nature of Each Cause of Action and Relief Sought**:

This is a basic one count Complaint alleging negligence against the defendants, Maron Construction Company, and its employee, Ronald DeFrancesco.  The allegations are contained within the Complaint, alleging in sum, that the defendants were negligent in directing Joseph Strychasz to work in an area where they knew, or should have known, that the floor was unstable.  As a result of the defendants' negligence, Mr. Strychasz fell approximately 30

feet suffering severe and permanent personal injuries.  The Second Count of the Complaint is a loss of consortium claim by his ex-wife, Sandra Strychasz.  Her claim is that the injuries sustained by her husband contributed to the deterioration of their marriage.

9.    **Proposed Voir Dire Questions**:

**Plaintiffs' Proposed Voir Dire Questions**

Are you affiliated with the defendants, or any construction companies?

Do you have any feelings about the law in Connecticut that a party controlling a property is required to keep it safe for visitors and guests?

Do you have any concern about holding a party controlling a property responsible for injuries sustained on the property?

Have you ever been injured in a traumatic fall, or do you know people who have been injured or otherwise involved in a fall?

Do you have a close relationship with anyone who is a construction contractor?

Does anyone here have any feelings about compensatory damages—monies that compensate the injured person for medicals, wages, disability, loss of health, pain and disfigurement?

Does anyone have any strong feelings about the jury deciding both liability and damages?

Does anyone feel that the jury system is not a valid or appropriate or best way to resolve civil cases?

Does anyone here believe that the system is out of control and favors either one side or the other at the outset?

Is there anyone here who believes that regardless as to how much damage has been suffered there ought to be an artificial cap or floor on the amount of allowable damage?

Is there anyone here who is angry about being asked to serve?

Is there anyone here who believes that they will not be a fair judge of this case either because of a natural prejudice or religious or philosophical or political beliefs?

Is there anyone here who believes that they will garner a financial benefit if they find for the plaintiff?  Or a financial hardship if they find against the defendant?

10.     **Written Statement, in Lieu of an Opening Statement, to Aid the Court**:

The plaintiff, Joseph Strychasz, date of birth 11/18/65, was an employee of the Midland Fire Protection Company of Coventry Rhode Island. Joe Strychasz was employed by Midland to install sprinkler heads and fire suppression equipment. Prior to his accident of May 12, 1997, Joe was employed in the construction trade for 11 years and was in excellent health. He was a married father of one son and resided in Pawtucket, Rhode Island.

The defendant, Maron Construction Company (the General Contractor) entered into a contract  with the U.S. Department of Transportation for remedial construction to the Roland Hall gymnasium located at the U.S. Coast Guard Academy in New London, Connecticut.  The major construction started November of 1996, and Midland Fire Protection Company commenced their work as a subcontractor to Maron Construction at the Academy in February of 1997.

Midland's job was to install the sprinkler system in Roland Hall, the Academy's athletic facility. The building had 5 levels. The gymnasium was located on the 4th floor.  The 5th floor consisted of an athletic track and tennis courts.  The installation of the sprinkler system was in the cell area between the 4th and  the 5th floor.  The cell area was approximately 5' in height and circled the whole building beneath the 5th floor and above the 4th floor.  This cell area was

designed for airflow as part of the ventilation system. This is the area where Joseph Strychasz fell from suffering serious permanent injuries.

Workers from various trades including plumbers, electricians, asbestos removers, and pipe fitters accessed the cell area through openings in the track floor on the fifth floor. The floor of the cell area was made of concrete. In addition there were openings in the floor of the cell area which was used for circulation and ventilation.  The openings on the cell floor had been originally covered with metal grills to keep out bats and birds.  Many of these grills had been removed over time prior to February, 1997 and were replaced by a pieces of transite or wallboard about ¼" thick. The transite was dark colored and gave the appearance of being concrete as it was the same color of the concrete flooring.

As of May 12, 1997 Joseph Strychasz had been assigned to work at the Roland Hall facility for about two weeks. Joe was one of five Midland employees working at the site boring holes in the concrete floor of the cell area for the installation of sprinkler heads.   Mr. Strychasz was standing in the cell area, in the process of handing up a drill to a co-worker  through the access way on the floor of the 5th floor.  He was standing on a metal chair, which, unknown to him, was on top of a transite panel covering an opening in the cell floor.  The transite gave way causing him to fall approximately 27' to the cement sidewalk below causing serious injuries. He sustained comminuted fractures of both heels, and a fracture of his right wrist. Joe' ankles were shattered.

The Plaintiff's claim is that Maron Construction Company  and its foreman Ronald DeFrancesco are liable for the injuries sustained by Mr. Strychasz due to their negligence. Under the contract with the Coast Guard, Maron Construction Company was to appoint a safety officer and file a safety plan.  They appointed Ronald DeFrancesco, as superintendent at the job site and also filed a safety plan as required under their contract.  Our claim is that Ronald DeFrancesco, as the Safety Officer on the job site, failed to adhere to a number of requirements under the safety plan, resulting in Mr. Strychasz's injuries. Mr. DeFrancesco failed to warn any of the workers that the cell floor area where they were working was subject to collapse without warning.

<u>The following are allegations of negligence for DeFrancesco as Superintendent and Safety Officer of the Maron Construction Company</u>.

As Safety Officer, Mr. DeFrancesco knew that the ventilation holes in the floor of the cell area had been replaced by transite boards which were incapable of holding an adult person's weight.

As Safety Officer, Mr. DeFrancesco failed to secure the coverings for the outside openings, when he knew that the plaintiff and other subcontractor employees would be working in that cell area.

As Safety Officer, Mr. DeFrancesco failed to conduct weekly meetings on safety with the employees of Maron, as required under contract.

As Safety Officer,  Mr. DeFrancesco failed to provide for a safe entrance and exit to the cell area from the gymnasium floor when he knew that Midland's employees and others were required to work in the cell area in the vicinity of these unsafe coverings on the ventilation holes.

As Safety Officer, Mr. DeFrancesco knew that during the remedial construction, Midland employees and other subcontractor employees used these openings in the gymnasium floor to enter and exit the cell area requiring them to stand on the transite coverings.

As Safety Officer, Mr. DeFrancesco failed to make periodic safety inspections of the job site everyday as required under contract and safety plans admitted by Maron.

As Safety Officer, Mr. DeFrancesco failed to give the plaintiff the safety orientation required under the agreement with the U.S. Coast Guard Academy.

As Safety Officer, Mr. DeFrancesco failed, during his inspection of work areas, to observe areas of all subcontractors and take appropriate action to correct the unsafe conditions as soon as possible pursuant to the agreement.

As Safety Officer, Mr. DeFrancesco failed to make regular and frequent inspections over the entire site at least daily and at least once each week, jointly with trade contractor representatives under the agreement.

As Safety Officer, Mr. DeFrancesco failed to acquaint the plaintiff with the possibility of a fall and the hazards that could be expected in the cell area.

As Safety Officer, Mr. DeFrancesco failed to provide sufficient ladders for entrance and exit into the cell area with safe coverings when he knew, in the exercise of reasonable care, should have known that the employees were unsafe and the various openings to the cell area were unsafe  for purposes of their work.

As Safety Officer, Mr. DeFrancesco failed to conduct weekly meetings with all employees on the job site to further educate them on the need for safety required under Maron's contract with the U.S. Coast Guard.

As Safety Officer, Mr. DeFrancesco failed to hold job start safety conference with each new trade contractor employee coming onto the job site, such as Strychasz, as required under the agreement.

As Safety Officer, he failed to conduct orientation with new employees coming onto the job site relating to hazards that they may be expected during the work; the safety equipment that must be used; and, work practices to minimize the possibility of an accident, including lift, falls, fire and housekeeping, as required under the agreement.

**DAMAGES**:

Joseph Strychasz has suffered permanent and lasting injuries as a result of his fall. He has undergone 9 complex surgeries to date and has basically lost his ability to walk. He has a life expectancy of 39 years. He is no longer able to pursue employment. He has incurred medical bills in excess of $85,000.00. The discounted economic loss alone in this case is in excess of $1,800,000.00 as evaluated by Gary M. Crakes, PhD.

These are the following injuries allegedly sustained by Joseph Strychasz as a result of the negligence of the defendants:

**INJURIES and PERMANENCY RATINGS**:

- 36% impairment of the lower left extremity;
- 41% impairment of the lower right extremity;
- 18% permanent partial disability of left upper extremity;
- Disfigurement and scarring of lower extremities;
- Fracture of both calcanei requiring open reduction and fixation and repair of right peroneal tendon retinaculum;
- Gait disturbance;
- Right knee meniscal tear requiring arthroscopic findings;
- Left wrist complete scapolunate ligament tear, partial triangular fibrocartilage complex tear, and partial lunar triquetral ligament tear requiring left wrist arthroscopy;
- Adjustment disorder with depressed mood;
- Plantar neuropathy;
- Sural neuropathy;
- Subtalar arthritis.
- Adjustment disorder with depressed mood.  Psychological factors affecting physical condition.  Financial and occupational disruption – Dr. Frederic Friedman

- Additional disfigurement with regard to his left lower extremity after his recent surgery which is now at an end result. He has a total of five additional scars measuring 5 cm in length. These are above and beyond what he already had at the base of his heel.

Joseph Strychasz also alleges damages for lost wages and lost earning capacity. His former wife, Sandra, also alleges damages for loss of consortium.

11.    **Proposed Jury Charge**:

**NEGLIGENCE CLAIM**:

1.    Negligence involves the breach of a legal duty of care. I instruct you that the defendant has an obligation under the law to exercise reasonable care. I will next discuss the concept of the "duty" which the defendant owed to the plaintiffs. The law says that a defendant has a duty to exercise reasonable care toward a plaintiff whenever the activities of the defendant and plaintiff come together in such a way, that the failure of the defendant to exercise reasonable care is likely to cause harm to the plaintiff. In other words, the test of the existence of a duty to use reasonable care is found in the foreseeability that harm may result if reasonable care is not exercised.

This does not mean that the defendant must be found actually to have foreseen the probability of harm to the plaintiffs or that the particular injury or way in which the plaintiffs were injured was foreseeable. Rather, the test is: Under all of the circumstances, would the ordinary, reasonably prudent person in the defendant's position, knowing what the defendant knew or should have known, reasonably anticipate that harm was likely to result from the

defendant's actions or failure to act?  You should understand that the law says a defendant is bound by what it ought to have known or seen just as much as by what it actually knew or saw.

It is further important for you to understand that the law recognizes that a defendant's conduct can still be negligent if it involves an unreasonable risk of harm to the plaintiff which occurs through the foreseeable action of the plaintiff himself, another party, or a force of nature.

**Botticelli v. Winters**, 125 Conn. 537, 542 (1939);

**Orlo v. Connecticut Co.**, 128 Conn. 231, 236 (1941);

**Borsoi v. Sparico**, 141 Conn. 366 (1954);

**Wright, Connecticut Jury Instructions, Section 523**.

2.      Reasonable care is that care which is proportionate to any given situation, considering all of the surrounding circumstances, peculiarities and hazards.  Reasonable care may and often does require extraordinary care.  Reasonable care is that care which is proportionate to the danger.  Where the danger may extend to the taking of life or the creation of serious injury, reasonable care is very great care.

**Reboni v. Case Bros., Inc.**, 137 Conn. 501, 505 (1951);

**Tower v. Camp**, 103 Conn. 41, 47 (1925);

**New England Iron Works Co. v. Connecticut Co.**, 98 Conn. 609, 610-11 (1923);

**Connecticut Jury Instructions § 522, p. 835**.

3.      In many instances it is not possible to establish facts with an absolute certainty, and the law does not require a party to do this.  If the evidence which you have heard produces in your

mind a reasonable belief of the probability of the existence of any fact, then you are to treat that fact as proven.  If you were looking at the scales of justice, all you need to find is that the scales tip ever so slightly in favor of the plaintiffs for you to find that they have prevailed.  Fifty one percent likelihood satisfies the burden of proof.

**Wright, Connecticut Jury Instructions, Section 597c**.

4.      You must not base findings on the number of witnesses for or against a particular party, whether expert or fact witnesses, the length of their testimony, or the quantity of other evidence presented by the party.  Quality counts.  Quantity does not.

**Adapted from Jury Charge of Sheldon, J in Foito v. Bridgeport Anesthesia Associates**, Docket No. X02-CV-92-0147186S, Judicial District of Waterbury (March 16, 1999).

5.      Let me remind you that the plaintiffs need not prove all of the claims of negligence.  They only need to prove one.  If that one claim of negligence was a substantial factor in bringing about the injuries to the plaintiffs, then your verdict must be for the plaintiffs.  Therefore, if you find one such defect, you need not consider all the others, but may move directly toward a consideration of the amount of damages to be awarded.

6.      Mortality Tables:  The length of time the plaintiff may live is an important question, and resort to mortality tables is the accepted method of supplying this information.

(a)  It has been testified that Joseph's age at the time of his injury was 31 years and it is agreed by the parties that the average expectancy shown by the mortality tables for a man of Joseph's years is 46.4 years.

(b)  Experience over a great many years and statistics show that a man of a certain age may reasonably be expected to live a certain period of years.  This is a certain average which statisticians arrive at from a great many cases.  That does not mean that he will live until that time indicated by the average, but that is the average.  He may die before, and he may live longer. But the average length of life which the statistics show the plaintiff is expected to live is to be considered by you together with all of the evidence before you as to his physical condition, and any physical impairment or infirmity he may have had, in arriving at his fair expectation of life.

7.    Damages for Injury:  The claims of Joseph and Sandra require consideration and compensation for the following elements of damage.  If you find the defendants liable, you must next determine the compensation which is owed to the plaintiffs.  If you find that the plaintiffs are entitled to recover damages, it will be your function to award the plaintiffs fair, just and reasonable compensation for all damages proximately caused by the defendants.

**Johnson v. Flammia**, 169 Conn. 491, 499 363 A.2d 1048 (1975);

**Wright, Connecticut Jury Instructions, Section 226(k) p.398.11**.

The rule is that so far as money can do it, the plaintiffs are to get fair and just compensation for the injuries they have suffered.  It is for you, in the exercise of your best judgment, to say what fair and just compensation is to them so far as money will compensate for the injuries which they have suffered.  There is no fixed rule which you can apply.  You have to apply sound, common sense in reaching the amount of your verdict.

You must compensate each of them for the injuries and damages which they have suffered from the day they were injured until today and from today until the end of their lives.

These damages include the following:  (1) compensation for their past and future disability, pain, loss of health and disability; (2) compensation for his past and future care needs, medical needs and related expenses.

You must consider all of these factors in attempting to give the plaintiffs full, fair and just compensation.  I will explain each of these factors in more detail in a few moments.

As for the future, you must, as best you can in your judgment, compensate the plaintiff for the damages which are reasonably probable that each will suffer in the future.  It is a question you must, as best you can, solve upon the basis of results which are reasonably probable to occur in the future.  And insofar as you find that it is reasonably probable in the future that each of them will suffer pain, will be restricted from carrying on his life's activities, will suffer physical or mental impairment, and will incur or require future expenditures for their care or medical needs, you will compensate them for those damages.

**Mather v. Griffin Hospital**, 207 Conn. 125 (1988).

I instruct you that the plaintiffs need not establish the amount of his damages to an exactness, but rather they need only provide sufficient evidence for a reasonable estimate to be made by you.

**Conway vs. Prestia**, 191 Conn. 484, 494, 464 A.2d 847 (1983); **Delott v. Roraback**, 179 Conn. 406, 411, 426 A.2d 791 (1980).

The mere fact that the damages may be difficult to assess, in itself, is insufficient reason for refusing to award them, once the right to damages has been established.

**Griffin v. Nationwide Moving & Storage Co.**, 187 Conn. 405, 420, 446 A.2d 799 (1982);

**Powers v. United States**, 589 F.Supp. 1084 (D.C. Conn. 1984);

**Delott v. Roraback**, 179 Conn. 406, 426 A.2d 791 (1980);

**Jerz v. Humphrey**, 160 Conn. 219, 276 A.2d 884 (1971);

**Davis v. Gambardella & Sons Cheese Corp.**, 147 Conn. 365, 161 A.2d 583 (1960);

**Sashin v. Corcoran**, 146 Conn. 512, 152 A.2d 639 (1959);

**Morger v. Connecticut Ice Cream Co.**, 146 Conn. 551, 152 A.2d 925 (1959);

**Thompson v. Lupone**, 135 Conn. 236, 62 A.2d 861 (1948).

8.    Past and Future Care Needs, Medical and Other Expenses:  The plaintiffs have alleged that they incurred and will continue to incur medical, hospital and other expenses as a result of their injuries.  All medical expenses are proper elements of damages for which they are entitled to recover.  Included in these expenses are all of those expenses that you find proven which they incurred as a result of their injuries such as costs of surgery, hospital bills, doctor bills, medication expenses, medical laboratory bills, costs of nursing or attendant care, therapeutic or required apparatus costs, office visits, physical therapy and any other costs of their care incurred as a result of injuries caused by the defendant.

**See, Powers v. United States**, 589 F. Supp. at 1104-1105;

**Wright and Ankerman, Section 234, 237**;

**Hansen v. Costello**, 125 Conn. 386, 389 (1939);

**Katz v. Cohn**, 122 Conn. 338, 341, (1937);

**Conn. Gen. Stat. Section 52-204**.

The plaintiffs have alleged that he has incurred a specific amount of medical expenses since they were injured on May 12, 1997 to today.  If you find that they have incurred these expense, then you may award all of these expenses to the plaintiffs.

As I have already instructed you, all future care needs and medical expenses and related expenses proximately caused by the defendants' negligence are proper elements of damages for which the plaintiffs are entitled to recover.  Future care needs and medical expenses include all of these expenses that you find reasonably necessary for the plaintiff for the remainder of their lives.  These include such things as hospital bills, doctor bills, medication expenses, medical laboratory bills, costs of nursing or attendant care, occupational and physical therapies, psychological or psychiatric care, therapeutic or required apparatus costs, home modifications, office visits, and any other similar expenses which you find likely to be incurred as a result of the injuries.

Adapted from charge of Flanagan, J., pages 33-34, **Stumpo v. Deponte**, Case No. 229761, Superior Court, Judicial District of New Haven at New Haven, December 6, 1988.

9.    Loss of Enjoyment of Life's Activities:  The plaintiffs also seek damages for past and future interference with their capacity to carry on and enjoy life's activities in a way they should have, had they not been injured.  If you find that they have suffered injuries and that these injuries have interfered or will interfere with their ability to lead a normal life, have normal relationships or carry on the normal activities of life, then you may properly award them damages for the destruction of their ability to enjoy and carry on life's activities.  This award is

in addition to other damages and is separate from and in addition to any award you make for pain and disability.

In this regard, you may consider the evidence presented concerning the effect of the injuries on their lives, activities and all of those aspects of daily life which make up a person's life. If you find that as a result of his injuries, they have in the past or will in the future not be unable to lead a normal life or unable to enjoy certain of life's activities, then you may award damages for the diminishment of their ability to enjoy life's activities.

In addition to compensation for economic damages such as medical bills and care needs, you must fully compensate the plaintiffs for the reduction of their ability to engage in and enjoy life's everyday activities, both past and future.

**Katsetos v. Nolan**, 170 Conn. 637, 658, 368 A.2d 172 (1976);

**Jerz v. Humphrey**, 160 Conn. 219, 222-223, 176 A.2d 884 (1971);

**Katsetos v. Nolan**, 170 Conn. at 637.

I further instruct you that not only must you consider their activities from the date of his injury until today, but you must also determine the activities which they would otherwise have been able to enjoy in the future, and compensate them for the reduction of their capacity to enjoy life for what would be the remainder of their normal life expectancy.

10.    <u>Past and Future Pain and Suffering</u>:  The last item of damages you must award for the plaintiffs are damages for pain that they have experienced up until today and that which they will experience for the remainder of their lives.  Again, I instruct you that these are proper elements of an injured party's damages that you are to consider.

**Powers v. United States**, 589 F.Supp. at 1106-1107;

**Delott v. Roraback**, 179 Conn. at 409;

**Thompson v. Lupone**, 135 Conn. 236, 239, 62 A.2d 861 (1948).

In deciding how much to award for this element of damages, you must consider the plaintiff's pain, disfigurement and loss of health from May 12, 1997 to today, and from today through the remainder of his lifetime. I instruct you that not only is the physical pain compensable, but also emotional anguish, suffering and psychological problems, such as depression and anxiety that accompany and arise out of the physical pain and injuries, must be considered.

**Power v. United States**, 589 F.Supp. at 1106-1107;

**Delott v. Roraback**, 179 Conn. at 409;

**Thompson v. Lupone**, 135 Conn. 236, 239, 62 A.2d 861 (1948).

In assessing such damages, you may consider such factors as your own experience with pain, the plaintiffs' physical limitations, the psychological problems that accompany these conditions such as depression, anxiety and fear, and the permanency of his condition. You may consider all of your life's experiences and any other factors you deem relevant in assessing a value for the plaintiffs' past and future pain.

In making an award for pain and disability, you should also consider whether it is reasonably probable that the plaintiff will suffer physical or emotional pain as a result of his injuries for the duration of his lifetime and, if you so conclude, then your award should reflect damages for the future as well as past and present pain and suffering. These are two

separate and distinct elements of an award of damages.  If you conclude that the plaintiff has suffered physical or emotional pain from the time of his injury until the present time, you may award money damages for this past.  If you conclude that Mr. Strychasz will suffer such pain in the future, you may award money damages for this future result.

Obviously, the amount of this compensation is a difficult matter to determine.  How can any one measure pain and suffering in terms of dollars and cents?  However, you as the jury will be responsible for determining the compensation to be awarded to the plaintiffs for the pain and suffering which they endured and will in the future endure.  You will determine its extent, its intensity, its duration and its character.  You will make an allowance which in your good judgment you deem fair and reasonable to compensate them.

11.    Functions:  First, ladies and gentlemen, I want you to understand that you, as the jury, and I, as the judge, have two very different functions in this trial.  It is my duty to explain to you the law that you must apply to this case.  It is your duty to determine the facts based on the evidence which has been presented to you during the trial.

First, let me discuss my duty to explain the law.  If what I state to be the law differs from claims of law which were made by counsel during the case in the course of argument or from what your idea of what the law is or what you think the law should be, you must nonetheless take the law from me.  If jurors were to go off on their own idea of what they thought the law was, or what they thought the law should be, the law would become meaningless and we would never get a verdict in any case because every juror would be going in a different direction.  Also, at stake is the right of the parties to appeal.  If I am wrong in explaining the

law, the parties can appeal because the court reporter is recording what I say.  My error can be corrected.  If you disregard my instructions concerning the law, nobody will ever know why or how the case was decided.  If you do not follow the law as I explain it, the parties will never know and will be unable to appeal your mistake.

The facts, however, are strictly within your province; it is your duty to determine what the facts are:  yours and yours alone.  In other words, you must sort out the testimony, the evidence, the exhibits and make a determination as to what happened.  You then apply your determination of the facts to the law as I give it to you.  That is how you arrive at your verdict.

If I comment on the facts as I go through my charge, by doing that I don't mean to imply that some facts are more important than others, or that I feel that some facts were proved and others were not.  The only reason I will comment on the facts at all, and I am going to keep that to the bare minimum, is to illustrate points of law or to explain issues to you.

Keep in mind that the determination of the facts is yours and entirely yours, not mine. My assessment of what the facts may be or what facts are important is really of no consequence.  It is your determination of what the facts are and of what facts are important that counts.  So if I do make mention of a piece of evidence and in your recollection it differs or disagrees with mine, it is your recollection that counts, not mine.

The same thing goes for argument of counsel.  During argument counsel mentioned the facts; they all mentioned the facts at one point or another.  Again, you are certainly entitled to listen and they are entitled to mention the facts.  It is your recollection of the facts that

determines what the facts are that counts, not the recollection of counsel.  I give you the law.

You must take the law from me.  The facts, however, are strictly yours.

12.    <u>Burden of Proof</u>:  You have heard me mention the term "burden of proof."  I will now

explain to you what that means.  The plaintiffs must prove the material allegations of their case

by a fair preponderance of evidence.  The defendant must prove his special defenses by a fair

preponderance of the evidence.

A fair preponderance of the evidence is different than the proof beyond a reasonable

doubt which you may have heard about in a criminal case.  A fair preponderance of the

evidence means the better evidence.  This is the evidence having the greater weight, the more

convincing force in your mind.  It does not depend on the number of witnesses, but rather upon

the quality or character of the evidence.

The better evidence in a case may come from only one witness as against the

testimony of a number of witnesses.  The better evidence is evidence which in your sound

judgment is more credible or more reasonable.

If it happens that the evidence as to any fact or issue is evenly balanced, there would be

no fair preponderance of the evidence as to that fact or issue, and you would not find it to have

been proven.

The best example is the scales of justice.  Before the evidence on a particular fact is

presented, we can imagine that the scales of justice are perfectly in balance.  As the evidence

is presented, the scales tilt either toward the plaintiffs or against the plaintiffs.  If, after hearing

all the evidence concerning a particular fact, the weight of the evidence tips the scales even

slightly in the plaintiffs' favor, then the plaintiffs have proven the fact by a fair preponderance of the evidence.

**Connecticut Jury Instructions, Wright and Ankerman, Section 311**.

The plaintiffs are not required to prove a fact to an absolute certainty. The plaintiffs are not required to prove a fact beyond a reasonable doubt. Rather, the plaintiffs must prove their case by only a preponderance of the evidence. The plaintiffs must merely prove that a fact is more likely to be true than not.

There is no magic formula for you to use in evaluating the evidence. You bring with you to this courtroom the experience and background of your everyday life. You should use your common sense and your knowledge of human nature in evaluating the evidence. Keep in mind that you are not allowed to speculate on facts which were not placed in evidence before you. You must base your decision on the facts which are proven by a fair preponderance of the evidence, rather than on what you speculate to be the facts.

**Cruz v. Drezek**, 175 Conn. 230 (1978);

**Darrow v. Fleischner**, 117 Conn. 518, 520 (1933).

13.    <u>Credibility of Witnesses</u>:  The credibility of witnesses and the weight to be given to their testimony are matters which are for you to determine.

One of the things which you must do is to pass upon the credibility of the various witnesses who have appeared before you. You may consider the appearance which the witness made when he or she was on the stand. Did the witness appear to be telling the truth? Did the witness appear to be honest? Did the witness appear to be a person who could have

observed accurately what he or she described to you; who would be likely to have remembered it accurately; and who was capable of reporting it to you accurately?

Another question for you to have in mind concerning each witness is whether the story the witness has told you is plausible. Does it ring true, or are there inconsistencies in it? How does it fit in with other evidence in the case which you believe and other facts you find to have existed? Is it consistent with that evidence and those facts?

You may well ask yourselves, in passing on the credibility of any witness, whether that witness has any bias or prejudice either for or against any party to the action, and if so, whether that bias or prejudice has colored the testimony of the witness. Of course, it does not follow simply from the fact that a witness does have a bias, prejudice, or interest in the outcome of the case that the witness's testimony is to be disbelieved. There are many people who, no matter what their interest in the outcome of the case might be, would not testify falsely.

Each witness must first stand or fall upon his or his own testimony. The testimony of the witness may be uncontradicted and the testimony may not even be adversely affected by any other evidence yet, you need not necessarily believe the testimony. On the other hand, you may accept testimony which is in conflict with that of another witness, if that is your judgment. You are at liberty to discredit any witness or a multitude of witnesses, if you believe you have reason to do so.

And again, one of your important functions is to determine the relative credit to be given to evidence. The jury's right to take into account its observations of the demeanor of a witness

is limited to the observation of the genuine and spontaneous reactions by the witness in the courtroom. However, you are not required to disregard all the evidence of a discredited witness. You may do so, however, if you find the witness to be unworthy of belief in all respects. You are the sole arbitrator of what testimony is to be believed and what testimony is to be rejected. And this includes the right to believe part of the testimony of a witness and reject the remainder.

You may properly apply to the testing of the testimony of any witness your own knowledge of human nature and of the motives which influence and control human action. You have the right to bring to bear upon testimony in court the same tests of veracity which would be used in the every day affairs of life. You are at liberty, within your own sound judgment, to choose what testimony you will believe and to discard in whole or in part the testimony of any others.

**Wright and Ankerman, Sections 640-641**.

14. <u>Direct and Circumstantial Evidence</u>: I should also say something to you about circumstantial evidence since you are being asked by the parties to draw certain inferences from the evidence. This involves our rule concerning circumstantial evidence.

Circumstantial evidence involves the offering of evidence of a fact or facts from which the jury is asked to infer the existence of, and so to find proven, another fact or facts. Such an inference may be made, provided two elements are satisfied. First, the fact or facts from which you are asked to draw an inference must itself be proven by a fair preponderance of the evidence. Second, the inference asked to be drawn is not only logical and reasonable, but is

strong enough so that you can find that it is more probable than not that the fact to be inferred is true.

I'm going to give you an example from ordinary life. Assume that while we are in this room, which has no windows, we heard from what our experiences in life would be considered to be very heavy claps of thunder. Then, twenty minutes later, we were to go outside, and find the sun is out very brightly, but that it is wet as far as the eye can see. Now, everything I've told you so far is what is known as direct evidence. That is, these are facts that we have seen and heard. However, you can also draw an inference from those facts, the inference being that it rained while we were in this room.

This is an example of circumstantial evidence. You take the direct evidence, and if it's proven to your satisfaction, you may draw any logical and reasonable inference therefrom. The law makes no distinction between direct evidence and circumstantial evidence. They both have the same quality and both can be used by you in deciding this case.

**Wright and Ankerman, Section 327**.

15.    Negligence:  The plaintiffs have brought this action because they claim that the defendants were negligent and that the defendants' negligence was a cause of the injuries suffered by Joseph Strychasz. Negligence is the doing of something which a reasonably prudent person would not do under the circumstances or failing to do what a reasonably prudent person would do under the circumstances. It is the breach of a legal duty owed by one person to another. Therefore, the defendants were negligent if they failed to exercise

reasonable care under the circumstances.  Likewise, the plaintiff would be negligent if he failed to exercise reasonable care under the circumstances.

**New England Iron Works Co. v. Connecticut Co.**, 98 Conn. 609, 610- 611 (1923);

**Wright and Ankerman,** Section 522.

 To determine whether the defendants were negligent in this case, you must understand what conduct the law requires of a landowner.  More specifically, you must understand the definition of the term "reasonable care" as it applies to the duties owed by a landowner to a person who is invited to come onto the landowner's property.  I will explain those duties in a moment.

 You should understand that the term "reasonable care" does not involve the care which you personally think the defendants ought to have used, nor does it refer to the care which the defendants felt they should use.  Rather, the law establishes that a landowner must use a certain level of care or caution when he invites a person to come to his property for a business purpose.

**Marfyak v. New England Transportation Co.**, 120 Conn. 46, 48 (1935);

**Wright and Ankerman,** Section 522.

16. <u>Duty Owed to Business Invitee</u>:  The plaintiffs, Joseph and Sandra Strychasz, allege that the defendants, Maron Construction and Ronald DeFrancesco, were negligent in that they did not exercise the reasonable care required.  Mr. Strychasz was a "business invitee" on the property controlled by the defendant.

**Rickey v. E.H. Jacobs Mfg.**, 142 Conn. 495, 496 (1955); **Mable v. Bass Transportation Company**, 40 Conn.Sup. 253, 256 (1983).

This simply means that Mr. Strychasz was present on the property in the furtherance of the business of the defendants and at the invitation of the defendants or their agents.  As a business invitee, Mr. Strychasz was owed a duty of care by  the defendants.  If you find that the defendants did not exercise the reasonable duty of care which they owed to Mr. Strychasz and that this caused the injuries to Mr. Strychasz, then you will find the defendants to have been negligent.

In general, the defendants owed a duty to Joseph Strychasz to inspect and maintain the property in a reasonably safe condition for the performance of his work.  **Warren v. Stancliff**, 157 Conn. 216, 218 (1968).  More specifically, the defendants owed at least three duties of reasonable care to Mr. Strychasz.  The breach of any one of these duties by the defendants, if it caused the injuries to Mr. Strychasz, is sufficient for you to find the defendants to have been negligent.  The duties of reasonable care owed by the defendants to Mr. Strychasz are:

1)  They had a duty to use reasonable care to inspect the premises and to erect safeguards, if necessary, to render the premises reasonably safe for the uses to which it would be put by Mr. Strychasz in furtherance of the defendants' business - In this case, for the installation of a fire suppression system chosen by the defendants.

2)  They had the duty to warn or guard Mr. Strychasz from being injured by reason of any defects or dangers in the property that the defendants could have discovered by a reasonable inspection.

3)  They had a duty to conduct their activities in such a way so as not to injure Mr. Strychasz.

If you find that the defendants breached any of these duties to Mr. Strychasz and that the breach of any one of these duties caused the injuries to Mr. Strychasz, then you must find that the defendants were negligent.

**Wright and Ankerman**, Section 552;

**Connecticut Law of Torts**, **Section 49**;

**Warren v. Stancliff**, 157 Conn. 216, 218 (1968);

**Mehri v. Becker**, 164 Conn. 516, 520 (1973);

**Morin v. Bell Court Condominium Association, Inc.**, 223 Conn. 323 (1992).

The fact that a condition or defect on the land is not apparent on visual inspection does not relieve the landowner from his duty to discover the defect by a reasonable inspection.  If you find that a reasonable inspection by the defendants should have discovered a defect in the land, that the defect had existed for a sufficient time that it should have been discovered by the defendants and that such defect caused injury to Mr. Strychasz, then you will find the defendants to have been negligent.

**Long v. Savin Rock Amusement Co.**, 141 Conn. 150 (1954).

17.   Agency:  In various relationships between two or more parties, the law imposes liability upon one party for the acts of another.  This is a doctrine called "agency."  An agent is a person who acts on behalf of another person or party and for the benefit of the other party.  Agency is the relationship which results from the manifestation of consent by one person to

another that the other shall act on his behalf and subject to his control, and consent by the other to so act.  <u>Restatement of Law of Agency</u>, Section 1.

A common situation in which an agency relationship exists involves employers and employees.  When an employee is acting within the scope of his employment, then an agency relationship exists, the employer is referred to as the "principal" or "master," and the employee is referred to as the "agent" or "servant."  When an agent acts on behalf of his principal, the principal is responsible for the negligent actions of the agent.

If you find that Ronald DeFrancesco was an agent of the Maron Construction, and if you find that the actions of the agent were negligent and that the negligence caused the injuries to Joseph Strychasz, then the defendants must be held responsible for this negligence.

**<u>Wright and Ankerman</u>, Section 21**.

18.    <u>Proximate Cause</u>:  If you find the defendants or their agents were negligent, in order for the plaintiffs to recover, the plaintiffs must further prove, also by a fair preponderance of the evidence, that the negligence of the defendants proximately caused the plaintiffs' damages. The test of "proximate" cause is this:  Was the defendants' negligence a substantial factor in producing those injuries?  When an event produces a result which follows in natural sequence, it may be said that the event is a cause of the result.  By natural sequence, I mean a sequence which proceeds in accordance with the common experiences in life.

In order to prevail against the defendants, the plaintiffs do not have to prove that the defendants' negligence was the only factor resulting in the plaintiffs' damages.  The law

requires only that the plaintiffs show that the defendants' negligence was a substantial factor, which acting alone or in conjunction with other factors, brought about the plaintiffs' damages.

The plaintiffs are entitled to recover for all damages proximately caused by the defendants' wrongful acts, whether or not the results could be anticipated at the time of the defendant's wrongful acts.

In proving causation, as in proving any other fact, you are entitled to draw all reasonable and logical inferences from facts which you find to be proven.

**Wright and Ankerman, Sections 110, 14(a)**;

**Wright, Connecticut Law of Torts (2nd), Section 33**;

**Monroe v. Hartford St. Ry, Co.**, 76 Conn. 201 (1903);

**Lombardi v. Wallad**, 98 Conn. 510 (1923);

**Mahoney v. Beatman**, 110 Conn. 184 (1929);

**Santini v. Levin**, 110 Conn. 248 (1929);

**Corey v. Phillips**, 126 Conn. 246 (1939);

**Mourison v. Hansen**, 128 Conn. 62 (1941);

**State v. Avcollie**, 178 Conn. 450 (1979).

19.    Proof of Only One Claim:  The plaintiffs have alleged that the defendants were negligent in more than one way.  The plaintiffs do not need to prove all of the claims of negligence, but need prove only one.  If even one act of negligence by the defendants was a substantial factor in causing the injuries to the plaintiffs, then your verdict must be for the plaintiffs.

20.    <u>Defendants' Burden of Proof on Special Damages</u>:  You will recall that the defendants have made certain allegations as what are called  "special defenses."  On these matters, the defendants have the burden of proof.  This means that the defendants must introduce evidence to you which proves to you that these allegations are true by a preponderance of the evidence.  Thus, unless you find that the defendants have proven the allegations of their special defense by a preponderance of the evidence, you must find that the defendants have failed to prove these allegations.  This claim of the defendants is that the plaintiff, Joseph Strychasz, was negligent in that he failed to act reasonably.  On this question, the defendants bear the burden of proving that Mr. Strychasz was negligent and that his negligence was the cause of the injuries.

21.    <u>Damages for Personal Injury</u>:  If you find that the negligence of the defendants was the proximate cause of injuries to the plaintiffs, you must next determine the compensation which is owed to the plaintiffs.  The rule is that insofar as money can do it, the plaintiffs are to get fair and just compensation for the injuries they have suffered.  It is for you, in the exercise of your best judgment, to say what is fair and just compensation to them insofar as money will compensate for the injuries which they have suffered.  There is no fixed rule which you can apply.  You have to apply sound, common sense in reaching the amount of your verdict.

You must compensate each plaintiff, Joseph and Sandra Strychasz, for the injuries and damages which each has suffered from the day of the fall until today and from today until the end of their lives.  For Sandra Strychasz, these damages involve her claim for loss of consortium which I will explain to you in a few moments.  For Joseph Strychasz, these

damages include compensation for lost wages from the date of the injury until today; for his future lost earning capacity; for his pain and suffering; for his past and future medical expenses; for his inability to undertake normal activities of daily life; and for his loss of enjoyment of life's activities as a result of his injuries.

You must consider all of these factors in attempting to give the plaintiffs full, fair and just compensation.  I will explain each of these factors in more detail in a few moments.

As for the future, you must, as best you can in your judgment, compensate each plaintiff for the damages which are reasonably probable that each will suffer in the future.  It is a question you must, as best you can, solve upon the basis of results which are reasonably probable to occur in the future.  And insofar as you find that it is reasonably probable in the future that Joseph Strychasz will suffer pain, will be restricted from carrying on his life's activities, will suffer physical or mental impairment, and will suffer an impairment of his earning capacity and incur future medical expenses, you will compensate him for those damages. Mather v. Griffin Hospital, 207 Conn. 125 (1988).

22.    Medical, Hospital and Other Expenses:  The plaintiff, Joseph Strychasz, has alleged that he has incurred and will incur medical, hospital and other expenses as a result of his injuries.  All medical expenses proximately caused by the defendants' negligence are proper elements of damages for which Joseph Strychasz is entitled to recover.  Medical expenses include all of those expenses that you find proven which Joseph Strychasz incurred as a result of his injuries such as costs of surgery, hospital bills, doctor bills, medication expenses, medical laboratory bills, costs of nursing or attendant care, therapeutic or required apparatus

costs, office visits, physical therapy and any other costs of his care incurred as a result of injuries caused by the defendants.

**See**, **Powers v. United States**, 589 F. Supp. at 1104-1105.

In addition, if you find that Joseph Strychasz obtained care or other services from his family members which could reasonably have been obtained by hiring home care attendants or others, this is an element of damages for which you must compensate Joseph Strychasz.  The law of our state allows compensation for such services because, although such services may have been provided free of charge by a friend, neighbor, parent or other relative, the defendants should not be permitted to benefit from the gift of such services to the plaintiffs. The gift of services was made to the plaintiffs; if you fail to compensate the plaintiffs for the value of these services, the gift will unfairly benefit the defendants rather than the plaintiffs.

**Wright and Ankerman**, **Section 234, 237**;

**Hansen v. Costello**, 125 Conn. 386, 389 (1939);

**Katz v. Cohn**, 122 Conn. 338, 341 (1937);

**Conn. Gen. Stat. Section 52-204**.

23.    Lost Wages:  The plaintiff, Joseph Strychasz, also seeks to recover damages for his lost earnings from the day of the incident until today.  If you find that, between the time of the incident and today, Joseph Strychasz has lost wages as a result of his injuries, you must compensate him for the full amount of those lost wages.  Lost wages can include salary, overtime, bonuses, commissions and all other forms of earned income which you find that Joseph Strychasz would have earned but for his injuries.

24.    <u>Loss of Earning Capacity</u>:  Joseph Strychasz also seeks damages for his future loss of earning capacity.  This differs from recovery for wages that have been lost before the time of trial.  If you find that the injuries suffered by Joseph Strychasz were a result of the defendants' negligence and that these injuries have caused an impairment of Mr. Strychasz's earning capacity in the future, he is entitled to recover full money damages to compensate for this loss.

Evidence of Mr. Strychasz's earnings before he was injured can be considered but this evidence does not necessarily answer the question of how much his future earning capacity has been reduced.  This measure of damages involves the reduction in Mr. Strychasz's earning power as a result of his injuries.  Therefore, you must determine what the future holds for Mr. Strychasz.  His past earnings and lost earnings may serve as a guide for you in determining the amount of his future losses but you may also decide that his future losses will be greater or lesser than his past losses.

You must also decide for what period of time Joseph Strychasz's earning capacity will be reduced as a result of his injuries.  If his earning capacity has been permanently reduced, then you must find that his lost earning capacity will last for the rest of his working life.  In that case, you must calculate his damages for each year which you find he would have worked.  If you determine that, at some time in the future, Joseph Strychasz will be fully recovered from the injuries which were caused by the defendants' negligence, and fully able to earn wages at the identical level at which he was capable before his injuries, then, as of the date of his full recovery, you would end your computation of his future lost earning capacity.

**<u>Wright and Ankerman</u>, Section 232**.

25.    <u>Past and Future Pain and Suffering</u>:  Joseph Strychasz is also entitled to recover damages for any physical pain and suffering he sustained or may in the future sustain as a result of injuries caused by the defendant.  You should consider all of the evidence as it bears on this issue in reference to determining Mr. Strychasz's past pain and suffering.

In making an award for physical pain and suffering, you should also consider whether it is reasonably probable that Mr. Strychasz will suffer physical pain as a result of his injuries for the duration of his lifetime and, if you so conclude, then your award should reflect damages for the future as well as past and present physical pain and suffering.  These are two separate and distinct elements of an award of damages.  If you conclude that Mr. Strychasz has suffered pain from the time of the collision until the present time, you may award money damages for this past pain and suffering.  If you conclude that Mr. Strychasz will suffer pain in the future, you may award money damages for this future pain and suffering.

Obviously, the amount of this compensation is a difficult matter to determine.  How can any one measure pain and suffering in terms of dollars and cents?  However, you as the jury will be responsible for determining the compensation to be awarded to Mr. Strychasz for the pain and suffering which he has endured and will in the future endure as a result of the negligence of the defendant.  You will determine its extent, its intensity, its duration and its character.  You will make an allowance which in your good judgment you deem fair and reasonable to compensate him for the pain and suffering which he has endured and for that which he will continue to suffer for part or all of the remainder of his life.

26.    <u>Interference with Life's Activities</u>:  Mr. Strychasz also seeks damages for past and future interference with his capacity to carry on and enjoy life's activities in a way he should have, had he not been injured.  If you find that Mr. Strychasz has suffered injuries and that these injuries have interfered or will interfere with his ability to lead a normal life, have normal relationships or carry on the normal activities of life, then you may properly award him damages for the destruction of his ability to enjoy and carry on life's activities.  This award is in addition to other damages and is separate from and in addition to any award you make for pain and suffering.  In this regard, you may consider the evidence presented concerning the effect of Mr. Strychasz's injuries on his life, activities and all of those aspects of daily life which make up a person's life.  If you find that as a result of his injuries, Mr. Strychasz was or will be unable to lead a normal life or unable to enjoy certain of life's activities, then you may award him damages for the destruction of his ability to enjoy life's activities.

27.    <u>Loss of Consortium</u>:  Sandra Strychasz, the ex-wife of Joseph Strychasz, has made a claim for loss of consortium.  Loss of consortium is a claim which includes such elements as loss of companionship, loss of affection, loss of sexual relations and loss of moral support.  In evaluating a claim for loss of consortium, you may consider each of these elements of damages.

The reason for awarding damages for loss of consortium is that a spouse suffers mental and emotional anguish as a result of seeing a healthy, loving, companionable mate changed by an injury.  These damages manifest themselves as changes in the quality of life which the spouses are able to share together after the injuries.  In Connecticut, our law recognizes this

as a real injury and permits you to award damages to Sandra Strychasz as a result of the losses which you find her to have suffered by reason of the changes in her husband which were caused by the defendants' negligence.

**Hopson v. St. Mary's Hospital**, 176 Conn. 485 (1979).

28.    <u>Permanent Injuries</u>:  If you find that it is reasonably probable that Joseph Strychasz has suffered a permanent injury, you will attempt to compensate him for such permanent injury or physical impairment which you find that he sustained and will suffer from in the future.  It is not a matter of guesswork or speculation.  You must be satisfied fairly, by a preponderance of the evidence, that the results you are attempting to compensate them for are reasonably probable. Mr. Strychasz is entitled to be compensated for what he would fairly be expected to suffer due to any permanent injuries or conditions which were caused by the defendants' negligence over the period of his life expectancy.

**Wright and Ankerman, Section 233**.

It is for you to decide the question of Joseph Strychasz's life expectancy.  One accepted method of resolving this question is through the use of what are called "mortality tables." Experience over a great many years and statistics show that a person of a certain age may reasonably be expected to live a certain period of years.  This is an average which statisticians arrive at from their study of the life expectancies of people from our population.  This average does not mean that a person will, with certainty, live until the age indicated by the average. She or he may die before that age or may live longer.  But the average length of life which the statistics show that the plaintiff should be expected to live may be considered by you together

with all of the evidence before you as to the plaintiff's physical condition in arriving at the life expectancy of the plaintiff.

**<u>Wright and Ankerman</u>, Section 245 (I)**;

Life Expectation Table, Am Jur 2d Desk Book.  Source: U.S. National Center for Health Statistics, <u>Vital Statistics of the United States</u>.

If you find that Joseph Strychasz is entitled to recover damages for injuries which you believe are permanent in nature, you must find that such permanent injuries will continue for the remaining years of his life, whatever you determine his life expectancies to be.

**JURY INTERROGATORIES**

**Joseph Strychasz**:

1.  Was the fall of Joseph Strychasz on May 12, 1997 proximately caused by the negligence of Ronald DeFrancesco?

Yes_____                    No_____

If your answer is "Yes," please continue on to the next question.  If you answer "No", please report that you have concluded your deliberations.

2.  Was the fall of Joseph Strychasz on May 12, 1997 proximately caused by the negligence of Maron  Construction  Company, Inc.?

Yes_____                    No_____

If your answer is "Yes,"  please continue on to the next question.  If you answer "No", please report that you have concluded your deliberations.

3.  What is the percentage of negligence of each party?  (Note: total must add up to 100%.)

Ronald DeFrancesco                _____%
Maron Construction Co., Inc.      _____%
Joseph Strychasz (if any)         _____%

                    TOTAL    100%

NOTE:  If the percentage of negligence which you assign to Joseph Strychasz is less than or equal to 50%, please proceed on to question 4.  If the percentage of negligence which

you assign to Joseph Strychasz is greater than 50%, please report that you have finished your deliberations.  Your verdict will be a defendant's verdict.


4.  Has the plaintiff, Joseph Strychasz, suffered damages as a result of the fall on May 12, 1997?

Yes_____                    No_____

If you answer "Yes," please continue on to question 5.  If you answer "No", please report that you have concluded your deliberations and that you have reached a defendant's verdict.


5.  What is the amount of damages suffered by Joseph Strychasz as a result of the fall on May 12, 1997?

Fill in amount:

Amount of Damages:

Past pain & suffering                                              $_____

Past loss of enjoyment of life's activities                       $_____

Future medical & related expenses                                 $_____

Future loss of earning capacity                                   $_____

Future pain & suffering                                           $_____

Future loss of enjoyment of life's activities                     $_____

TOTAL DAMAGES  $_____

a) Percentage of Negligence of Joseph Strychasz (If any)          _____%

b) Subtract:  100% - percent from (a) =                           _____%

c) Multiply percent in (b) x Total Damages for Joseph Strychasz =     $_____


**Sandra Strychasz**:

6.  Has the plaintiff, Sandra Strychasz, suffered damages as a result of the negligence of the defendant?

Yes_____                    No_____

If you answer "Yes," please continue on to question 7.  If you answer "No", please report that you have concluded your deliberations in regard to Sandra Strychasz.


7.  What is the amount of damages suffered by Sandra Strychasz?

Total:  $_____

THE PLAINTIFFS,
Joseph and Sandra Strychasz


BY: _____

    EDWARD J. GAVIN, ct08536
    MEEHAN, MEEHAN & GAVIN
    76 Lyon Terrace
    Bridgeport, Connecticut  06604
    (203) 333-1888


THE PLAINTIFF,
Midland Fire Protection Company


BY: _____

    GREGORY GOODSTEIN, ct1937
    Morrison, Mahoney & Miller
    One Constitution Plaza, 10th Floor
    Hartford, Connecticut  06103
    (860) 616-4441

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been mailed, this date, postage

prepaid, on this 15th day of December, 2003, to the following:

**For Defendants, Maron Construction**          **For Plaintiff, Midland Fire Protection**
**Co., Inc. and Ronald DeFrancesco**            **Company**
Gary C. Kaisen, Esq.                            Gregory Goodstein, Esq.
Milano & Wanat                                  Morrison, Mahoney & Miller
471 East Main Street                            One Constitution Plaza, 10th Floor
Branford, Connecticut  06405                    Hartford, Connecticut  06103


_____
EDWARD J. GAVIN
Attorney at Law